

**William Brown, Esq.**
Partner
260 Madison Avenue, 17th Floor
New York, NY 10016*
william.brown@parlatorelawgroup.com
Direct: 862-415-4880

March 25, 2026

**VIA CM/ECF**

The Honorable Julien Xavier Neals, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re: Brown v. McCarter & English LLP et al.**
**Case No. 2:26-cv-02808-JXN-AME**
**Plaintiff's Initial Letter to the Court Following Removal**

Dear Judge Neals:

Plaintiff William Brown Jr. respectfully submits this letter to introduce himself to the Court, advise the Court of the circumstances surrounding the removal of this action, and provide notice of motions Plaintiff intends to file.

## I.    **Introduction**

Plaintiff is a licensed New Jersey attorney (NJ Bar ID: NJ145932015) and a decorated Navy SEAL combat veteran of the Global War on Terror. Plaintiff appears pro se. This action was commenced in the Superior Court of New Jersey, Law Division, Essex County (Docket No. ESX-L-8932-24) on December 24, 2024. The case was removed to this Court on March 18, 2026 by the Port Authority Defendants (ECF Doc. 1) and Defendant McCarter & English LLP (ECF Doc. 2).

## II.    **Plaintiff Was Unable to Access CM/ECF from March 18 Through March 24**

Plaintiff respectfully advises the Court that he was unable to access PACER or CM/ECF from the date of removal, March 18, 2026, through this morning, March 24, 2026 — a period of six days. When Plaintiff attempted to register for a PACER account, the system indicated that an account already existed under his information. Plaintiff did not create that account and did not have login credentials. Despite multiple password reset attempts and emails to the PACER Service Center (March 18), the CM/ECF Registration Office (March 24), and the ECF Help Desk (March 24), Plaintiff was unable to gain access until this morning.

Licensed to Practice by the State of New Jersey

*Parlatore Law Group is a nationwide cloud-based firm. Please send all correspondence electronically. If physical mail is required, please use the central mailing address below.

www.parlatorelawgroup.com    1440 N Edgewood Street, Floor 4, Arlington, VA 22201

During this period, both sets of Defendants filed papers in this case, including two requests for extensions of time to respond to the Amended Complaint (ECF Docs. 12 and 13). Plaintiff was unable to view or respond to those filings through the CM/ECF system and learned of them only through courtesy copies.

III.   **The Circumstances of the Removal — Timing, Coordination, and What the Removal Was Designed to Evade**

The Court should understand the circumstances under which this case arrived in this forum, because those circumstances are directly relevant to the motion to remand Plaintiff intends to file.

**A. The Port Authority Used the Cedar Grove Police to Stop a Process Server — And the OPRA Records Prove It**

On February 28, 2026, Joshua T. Lee, a professional process server with NJNY Legal Process, attempted to effectuate lawful personal service of the Summons and First Amended Complaint on Defendant Kevin J. O'Toole at his residential address in Cedar Grove, New Jersey. Mr. Lee's sworn Affidavit of Non-Service, attached hereto as **Exhibit C,** documents what happened.

Process service is a foundational function of the legal system. It is the mechanism by which parties are brought before the Court and given notice of the claims against them. A professional process server performing lawful service of process is entitled to do his job without interference — and certainly without being stopped by police and told not to return.

Mr. Lee arrived at the residence and observed a Cadillac Escalade in the driveway. He knocked twice and rang the doorbell. A male came to the door. Mr. Lee initially asked for the wrong name — "Patrick Donovan" — because Donovan is also a defendant in this action. The male stated no one by that name lived there and that he had lived at the residence for twenty years. When the male closed the door, Mr. Lee realized his error and returned to the front door. No one answered. Mr. Lee called out: "Mr. O'Toole, I have important documents for you." No one answered. Mr. Lee then left the property.

After leaving the residence, at the intersection of ███████████ and ████████ ████████, Mr. Lee was stopped by Cedar Grove Police Lt. Jason Rivers, Badge #5748. Lt. Rivers asked Mr. Lee if he was the process server — demonstrating prior knowledge of the service attempt. Lt. Rivers stated that "**no one is there**" and instructed Mr. Lee not to return to the residence. Lt. Rivers directed Mr. Lee to serve Mr. O'Toole at "the legal department of the Port Authority at 1 World Trade Center." When Mr. Lee explained that as a process server he is required to make multiple attempts on different days, Lt. Rivers repeated that Mr. Lee should not go back to the residence.

**The Court should consider what happened here. A professional process server — a Black American man simply doing his job — was stopped by police on a public road and told not to perform his lawful professional duties.** Mr. Lee has communicated to Plaintiff that he believes part of the reason he was stopped and treated this way was because he is Black. Whether or not race was a factor, the fact remains: a police officer was deployed to stop a process server from serving legal papers in pending litigation. That does not happen to ordinary citizens. If any private person had called the Cedar Grove Police Department and asked them to tell a process server not to do his job and not to return to attempt service, the police would never have agreed. This happened because the call came from the Port Authority of New York and New Jersey — the bi-state governmental agency chaired by the very person being served.

On March 17, 2026, the Township of Cedar Grove produced records in response to Plaintiff's Open Public Records Act request, including a Cedar Grove Police Department incident report (Case #26-04573) and body-worn camera footage from Lt. Rivers. A copy of the incident report is attached hereto as **Exhibit A**.

**The incident report confirmed that the Port Authority called the Cedar Grove Police Chief and directed the police to respond. Lt. Rivers' narrative states: "I received a phone call from Chief Pumphrey who requested that I send a unit to [the address] for an unknown party**. **Chief Pumphrey advised me that he had received a call from the Port Authority of NY/NJ**, and it was reported that a process server was refusing to leave the property." The incident report further states: "the Port Authority of NY/NJ asked us to inform the process server that he should serve the paperwork through the legal department of their agency, which is headquartered in the World Trade Center."

**The Port Authority did not merely report a concern — it directed the Cedar Grove Police Department on what to tell the process server. A bi-state governmental agency used a local police department as its instrument to manage service of process in pending litigation. Kevin O'Toole is listed as Contact #1 in the police report**.

**The body-worn camera footage contradicts the stated justification for the police response.** The incident report claimed the process server was "refusing to leave the property." The footage shows the process server had already left the property, was in his vehicle on a public road, told the officer he had no intention of trespassing, and the officer acknowledged he was "**just passing it on**" — **acting as a messenger for the Port Authority, not responding to any criminal activity**. Notably, the incident report records the race of the resident, Kevin O'Toole, but leaves the race field blank for the process server, Joshua T. Lee — a Black American man.

Video footage recorded by the process server himself confirms that Defendant O'Toole personally answered the door and spoke with the process server, then refused to answer when the process server returned — while the Port Authority called the police to intercept the process server on a public street.

**The correct and proper way to handle service of process is well established: counsel for the party being served contacts the serving party and offers to accept service on the client's behalf**. That is exactly what the Port Authority's own General Counsel, Amy Fisher, Esq., did — on the very same day. Ms. Fisher emailed Plaintiff and stated that the Port Authority would accept service for O'Toole, Donovan, and the agency. A two-sentence email. That is how it should have been handled from the start. Instead, the **Port Authority called the Cedar Grove Police Chief, who dispatched an officer to stop a Black American process server on a public road and instruct him not to do his job. The police stop was not about service logistics. It was an unnecessary and deliberate exercise of governmental power — and it is entirely consistent with the pattern of conduct alleged in this case.**

**This incident is directly relevant to the ethical screen O'Toole Scrivo claims to have implemented on February 17, 2026 — one day after Plaintiff filed the Amended Complaint naming O'Toole as a defendant**. The screen was supposed to prevent O'Toole from influencing this litigation. Eleven days later, the Port Authority — the agency O'Toole chairs — called the Cedar Grove Police to stop a process server from serving the very lawsuit O'Toole Scrivo is defending. A screen that does not prevent the screened partner's agency from deploying local police to obstruct service of process is not a screen at all. It is a fiction.

**And this is the same pattern of behavior — using governmental power for personal purposes — that led to the destruction of the NYC SEAL Swim**. The NYC SEAL Swim is a charity event Plaintiff founded and led for seven years at the World Trade Center, providing Adventure Therapy for 9/11 survivors, families of those lost on 9/11, Gold Star families, Navy SEALs, veterans, police officers, and firefighters. After McCarter retained O'Toole Scrivo, Port Authority employee Patrick Donovan sent Plaintiff a text message threatening to withdraw "**all Port Authority assets and access to the WTC**" unless Plaintiff stayed silent about O'Toole and his firm. The Port Authority followed through. The Navy SEAL Foundation terminated Plaintiff's contract. Plaintiff lost $40,000 in annual income. A charity event that brought together the best of America — SEALs and police

officers, 9/11 survivors and Gold Star families, firefighters and veterans — was destroyed because Kevin O'Toole used the governmental agency he chairs to punish a veteran who had the courage to file a lawsuit. A copy of Patrick Donovan's threatening text message is attached hereto as **Exhibit E**.

### B. The Reply Brief Filed Hours Before the Removal

On March 18, 2026, at 6:33 AM, Plaintiff filed his Reply Brief in Further Support of his Motion to Disqualify O'Toole Scrivo, LLC as counsel for McCarter (Trans ID: LCV2026702394 in the state court docket). The Reply Brief contained the OPRA records, the body-worn camera transcript, and the process server's video transcripts. The Reply Brief demonstrated that the conflict of interest the opposition had called "speculative" was proven — documented in a police incident report, corroborated by body-worn camera footage, and confirmed by the process server's own recordings.

### C. The Coordinated Removal Filed Twelve Hours Later

That same day — March 18, 2026, at approximately 6:19 PM — the Port Authority Defendants filed their Notice of Removal (ECF Doc. 1). McCarter filed its own Notice of Removal (ECF Doc. 2) and a consent letter (ECF Doc. 3) on the same day. The removal was filed approximately twelve hours after Plaintiff's Reply Brief.

The Port Authority was served on March 2, 2026. Under 28 U.S.C. § 1446(b), the Port Authority had thirty days — until April 1, 2026 — to file a notice of removal. Yet the Port Authority chose to file on March 18 — the very day the OPRA records were filed with the state court, and nine days before the March 27 hearing on the Motion to Disqualify.

The Motion to Disqualify was fully briefed and scheduled for hearing before the Honorable Kevin J. O'Connor, J.S.C. The removal eliminated that hearing.

### D. Captain Eileen O'Toole — Defendant O'Toole's Own Sister — Corroborates the Pattern

On March 23, 2026, Plaintiff received an unsolicited email from Captain Eileen O'Toole — Defendant Kevin J. O'Toole's own sister and a Captain in the Cedar Grove Police Department with over twenty years of service. A copy of Captain O'Toole's email (with personal contact information redacted) is attached hereto as **Exhibit B**.

Captain O'Toole is the plaintiff in O'Toole v. Township of Cedar Grove, Docket No. ESX-L-004164-22, an active lawsuit pending in the Superior Court of New Jersey, Essex County, in which she alleges that Kevin O'Toole used his influence over Cedar Grove officials to block her promotion to Chief of Police after a family dispute — through threatening text messages, demands for psychological examinations, and threats to investigate her partner. **Kevin O'Toole's threatening text is devastating because it proves he has threatened to weaponize and use governmental institutions to punish people who cross him**. A copy of Kevin O'Toole's threatening text message is attached hereto as **Exhibit D**.

Captain O'Toole's email states: "**The actions he took against you are his M.O. for many years against anyone who goes against him and his abuse of power is constant**." She further states: "He has used the police as personal protection many times, to the point of overnight postings outside of his house and law firm. This has been reported to the A.G. to no avail."

Captain O'Toole's corroboration — from a law enforcement officer with firsthand knowledge, from inside the O'Toole family — confirms that the Port Authority's use of the Cedar Grove Police to stop Plaintiff's process server is not an isolated incident but part of a documented, long-standing pattern of using governmental power for personal retaliation. It is the same pattern that destroyed the NYC SEAL Swim that the Plaintiff is now doing everything he can to continue.

4

**E. McCarter's Fourteen-Month Pattern of Delay — Now Continuing in This Forum**

McCarter & English LLP has never filed an Answer or any responsive pleading in over fourteen months of litigation. The following is a complete chronology of McCarter's delay, as reflected on the state court docket:

- **July 11, 2025:** The Superior Court entered an Order partially denying McCarter's Motion to Dismiss. Plaintiff's CEPA and Pierce claims as to USERRA survived. McCarter was required to file an Answer.

- **August 15, 2025:** McCarter's counsel, Joseph R. Marsico, Esq. of O'Toole Scrivo, LLC, filed a Consent Order extending McCarter's time to answer. Judge Sanders granted the order. The Clerk confirmed that "defendant McCarter & English LLP has been temporarily removed from the lack of prosecution dismissal list per Judge Sanders' 8/15/25 Order."

- **August 20, 2025:** McCarter's counsel filed a second Consent Order extending McCarter's time to answer.

- **October 4, 2025:** The Superior Court entered a Lack of Prosecution Dismissal Order — triggered by McCarter's failure to file an Answer.

- **October 8, 2025:** McCarter's counsel filed a third Consent Order on behalf of McCarter.

- **October 23, 2025:** The Superior Court entered an Order Vacating Default and Extending Time to Answer, granted by Judge Little — necessitated by McCarter's failure to answer.

- **December 27, 2025:** The Superior Court issued yet another Lack of Prosecution Dismissal Warning.

- **January 9, 2026:** McCarter's counsel filed a fourth Consent Order extending McCarter's time to answer.

- **February 28, 2026:** The Superior Court entered a second Lack of Prosecution Dismissal Order — again triggered by McCarter's failure to file an Answer.

Every consent order on the state court docket was initiated and filed by McCarter's counsel. The case was dismissed for lack of prosecution twice — on October 4, 2025 and February 28, 2026 — both times because McCarter failed to file an Answer. In the more than seven months between the Court's July 11, 2025 Order and the February 28, 2026 dismissal, McCarter never filed a single responsive pleading.

Now, having coordinated with the Port Authority to remove the case to this Court, McCarter's first act in this forum was to request yet another extension of time (ECF Doc. 12, filed March 23, 2026), seeking to push the answer deadline from March 25 to April 8, 2026. **The strategy is clear: delay in state court for seven months, coordinate removal to federal court to evade the disqualification hearing and then request more time in the new forum.**

**F. Kevin O'Toole's Conflict of Interest, His Motivation for the Removal, and His Continuing Control Over Both Sides of the Defense**

The Court should understand why the removal happened when it did and who benefits from it — because the answer to both questions is the same person: Kevin J. O'Toole.

**Kevin J. O'Toole occupies a unique and irreconcilable position in this litigation. He is simultaneously:**

- The **founder and managing partner** of O'Toole Scrivo, LLC — the law firm representing Defendant McCarter & English LLP in this action;

- A **named co-defendant** in this action, sued in his personal and professional capacities on seven counts (Counts XII–XVIII), including First Amendment retaliation under 42 U.S.C. § 1983, conspiracy to violate civil rights, the New Jersey Civil Rights Act, tortious interference with contract, tortious interference with prospective economic advantage, intentional infliction of emotional distress, and civil conspiracy — facing compensatory and punitive damages in his individual capacity; and

- The **Chairman of the Board of Commissioners** of the Port Authority of New York and New Jersey — the governmental agency that filed the Notice of Removal (ECF Doc. 1), that called the Cedar Grove Police to stop Plaintiff's process server, and that is providing O'Toole's defense in this action through its in-house Law Department.

**O'Toole's personal motivation for the removal is clear.** On March 18, 2026, the state court was nine days away from ruling on a motion to disqualify his law firm — a motion that, as of that morning, was supported by a police incident report proving his agency called the police on a process server, body-worn camera footage contradicting the stated justification, and video recordings showing O'Toole personally answered the door and then hid. The removal eliminated that hearing and forces Plaintiff to re-file the Motion to Disqualify in this Court — buying O'Toole Scrivo additional time and requiring Plaintiff to start the disqualification process over in a new forum.

**O'Toole's ethical screen — implemented on February 17, 2026, one day after Plaintiff filed the Amended Complaint naming O'Toole as a defendant — has demonstrably failed**. Eleven days after the screen was supposedly in place, the Port Authority called the Cedar Grove Police to stop Plaintiff's process server — deploying a police officer to stop a Black American man from performing his lawful professional duties on a public road, when the proper course of action was a two-sentence email from counsel. And on March 18, the Port Authority and O'Toole Scrivo coordinated to remove the case to federal court on the same day the most damaging evidence against them was filed. A screen that does not prevent the screened partner's agency from using local police to obstruct service of process — and does not prevent the screened partner's agency from coordinating with the firm to change the forum — is not a screen at all.

**The structural problem is this: O'Toole retains influence over both sides of the defense**. His law firm, O'Toole Scrivo, represents McCarter. The Port Authority — the agency he chairs — represents the Port Authority Defendants, including O'Toole himself. O'Toole's son, Kevin O'Toole Jr., is an attorney employed by McCarter and supervised by William D. Wallach, an Equity Partner whom Plaintiff complained about four days before his termination. O'Toole Scrivo derives substantial income from representing McCarter. O'Toole has personal, familial, and financial interests in protecting McCarter from liability.

**This creates an irreconcilable conflict that affects both defendants' ability to mount independent defenses.** McCarter's strongest defense to the post-termination retaliation claims (Counts XII–XVIII) is to argue that the Port Authority's retaliatory conduct — including Donovan's threatening text message, the destruction of the NYC SEAL Swim, and the use of Cedar Grove police to stop the process server — was O'Toole's independent action, not directed or coordinated by McCarter. But O'Toole Scrivo cannot advance that defense because it would expose its own managing partner to greater personal liability. And the Port Authority — the agency O'Toole chairs — cannot independently defend O'Toole's conduct without implicating the very coordination that the OPRA records have now documented.

The result is that neither McCarter nor the Port Authority Defendants can receive the independent, unconflicted representation they are entitled to — because Kevin O'Toole's personal interests are driving the litigation strategy for both sides of the defense, including the decision to remove this case to federal court.

## IV.    Procedural Background in the Superior Court

This case has a substantial procedural history. The Honorable Joshua D. Sanders, J.S.C. issued a detailed written opinion on Defendants' Motion to Dismiss on July 11, 2025, granting the motion in part and denying it in part. Plaintiff's claims under the New Jersey Conscientious Employee Protection Act (CEPA) and for wrongful discharge under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980), as to violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA), survived the motion.

On February 16, 2026, Plaintiff filed an eighteen-count First Amended Complaint adding the Port Authority of New York and New Jersey, Kevin J. O'Toole (Chairman of the Port Authority and managing partner of O'Toole Scrivo, LLC, McCarter's defense counsel), and Patrick Donovan as defendants. The Amended Complaint asserts claims under USERRA, CEPA, Pierce, the New Jersey Law Against Discrimination, the New Jersey Equal Pay Act, 42 U.S.C. § 1983, the New Jersey Civil Rights Act, and common law causes of action.

On March 2, 2026, Plaintiff filed a Motion to Disqualify O'Toole Scrivo, LLC as counsel for McCarter based on an irreconcilable conflict of interest under N.J. R. Prof'l Conduct 1.7. That motion was fully briefed — including the opposition filed by O'Toole Scrivo on March 17 and Plaintiff's Reply Brief with the OPRA records filed on March 18 — and was scheduled for hearing on March 27, 2026. The removal eliminated that hearing, and Plaintiff must now re-file the Motion to Disqualify in this Court.

## V.    Plaintiff Intends to File the Following Motions

Pursuant to Judge Neals' Individual Rules and Procedures, Plaintiff respectfully requests a pre-motion conference before filing the Motion to Remand and the Motion to Disqualify. This letter is intended to serve as Plaintiff's pre-motion letter for both motions.

Plaintiff respectfully submits that there is little prospect of resolving these disputes without judicial intervention. The parties have already attempted formal mediation and it failed. On September 30, 2025, the parties entered into a Mediation Agreement and retained mediator Michael F. O'Neill. A joint mediation session was held on December 10, 2025. The mediation did not result in a resolution. Since that failed mediation, the case has only become more contentious and more complex — Plaintiff filed an eighteen-count Amended Complaint adding three new defendants, the Port Authority used the Cedar Grove Police to stop Plaintiff's process server, the Port Authority's retaliation destroyed a charity event for 9/11 survivors and veterans, and the Port Authority and McCarter coordinated to remove the case to federal court to evade the state court's ruling on the disqualification motion.

The parties' positions are fundamentally opposed. Defendant McCarter has not filed an Answer or any responsive pleading in over fourteen months of litigation — obtaining four extensions and causing two dismissals for lack of prosecution. The opposition to the Motion to Disqualify denied any conflict exists despite OPRA records proving the Port Authority called the Cedar Grove Police to stop Plaintiff's process server. The Port Authority and McCarter coordinated to remove this case to federal court twelve hours after the most damaging evidence was filed — eliminating the state court hearing on the disqualification motion. And the Port Authority used governmental power to destroy a charity event for 9/11 survivors, families of those lost on 9/11, Gold Star families, Navy SEALs, veterans, police officers, and firefighters rather than allow Plaintiff to exercise his constitutional rights. These are not parties who are amenable to resolution.

Plaintiff nonetheless complies with the Court's pre-motion conference requirement and requests that the conference be scheduled at the Court's earliest convenience. Plaintiff anticipates filing both motions promptly after the pre-motion conference and requests that no substantive deadlines or case management orders be entered until the motion to remand has been decided, as the case may be returned to the Superior Court.

> Respectfully submitted,
> /s/ William Brown
> William Brown Jr., Esq.
> Plaintiff Pro Se
> 134 Main Street
> South Bound Brook, New Jersey 08880
> (862) 415-4880
> william.brown@parlatorelawgroup.com
> NJ Bar ID: NJ145932015

**Enclosures:**

**Exhibit A** — Cedar Grove Police Department Incident Report, Case #26-04573, dated February 28, 2026 (produced pursuant to OPRA by the Township of Cedar Grove on March 17, 2026) (residential address redacted)

**Exhibit B** — Email from Captain Eileen O'Toole dated March 23, 2026 (personal contact information redacted)

**Exhibit C** — Affidavit of Non-Service of Joshua T. Lee, NJNY Legal Process, dated March 4, 2026 (residential address redacted)

**Exhibit D** — Kevin O'Toole's Threatening Text Message where he Threatens to Weaponize and Use Governmental Institutions to Punish Family Members

**Exhibit E** - Patrick Donovan's Threatening Text Message where he Threatens to Weaponize unless Plaintiff stayed silent about O'Toole and his firm

cc: Thomas P. Scrivo, Esq. / Michael J. Dee, Esq. / Joseph R. Marsico, Esq.
O'Toole Scrivo, LLC — via CM/ECF

Megan Lee, Esq. / Cheryl Alterman, Esq.
Port Authority Law Department — via CM/ECF

**Exhibit A** — Cedar Grove Police Department Incident Report, Case #26-04573, dated February 28, 2026 (produced pursuant to OPRA by the Township of Cedar Grove on March 17, 2026)

.



# Cedar Grove Police Department
525 Pompton Ave., Cedar Grove, NJ 07009
Phone: 973-239-4100  Fax: 973-239-7541  Mun. Code: 0705
## Incident Report



## Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed |
|---|---|---|---|---|---|---|---|---|---|
| 26-04573 | 14:44 | 02/28/26 | 14:44 | 02/28/26 | | | | | X |

## Incident Type:
Officer-Requested

## Incident Location:

| Street # | Street Name | Apt # | Intersection / Cross Street of: |
|---|---|---|---|
| ▇ | ▇ | | |

Business / Common Location Name

## Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 | MI | Suffix | Age | Sex | Race | DOB | | SSN |
|---|---|---|---|---|---|---|---|---|---|
| R | Otoole, Kevin | | | 61 | M | 1B | ▇1964 | | ▇ |

| Address | Phone / Email | Other Phone |
|---|---|---|
| ▇ Cedar Grove, NJ 07009-1321 | ▇ | |

| Code | Contact Name #2 | MI | Suffix | Age | Sex | Race | DOB | | SSN |
|---|---|---|---|---|---|---|---|---|---|
| Z1 | Lee, Joshua | T | | 45 | M | | ▇1980 | | ▇ |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| ▇ Iselin, NJ 08830-2037 | | |

| Code | Contact Name #3 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | | |

| Code | Contact Name #4 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | | |

| Code | Contact Name #5 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | | |

| Code | Contact Name #6 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email | Other Phone |
|---|---|---|
| | | |

| Code | Contact Name #7 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | | |

| Code | Contact Name #8 | MI | Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | | |

## Property Information:

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

## Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration | State | VIN | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Known | 23 | Kia | WAGON | SOR | Red | ▇ | NJ | ▇ | 76300 |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | BWC: | Case #: | Page 1 |
|---|---|---|---|---|---|
| Lt. Jason Rivers 5748 | 02/28/26 | jrivers | X | 26-04573 | |

 

# Cedar Grove Police Department

525 Pompton Ave., Cedar Grove, NJ 07009
Phone: 973-239-4100  Fax: 973-239-7541  Mun. Code: 0705

## Incident Report

On the reporting date and time I was the shift commander and actively involved in assisting Ptl. Antonuccio with a crash investigation on Reservoir Drive. I received a phone call from Chief Pumphrey who requested that I send a unit to ███████████ for an unknown party. Chief Pumphrey advised me that he had received a call from the Port Authority of NY/NJ, ████████████████████████████████ ███ and it was reported that a process server was refusing to leave the property. At the time the shift was at minimum and the other patrol unit was on a separate call so I elected to handle the call myself. It was relayed to me that the individual was operating a small red SUV which I observed on Skytop at the intersection of Fairview Avenue. I pulled onto ██████████, next to NJ Registration R49SDA, rolled my window down, and identified myself and told the driver why I was there. I advised the driver, whom I never identified because he admitted that he was a process server attempting a service at ██████████, that the resident did not want him on his property. The server responded by telling me that he was required to make three attempts at serving the documents and I reiterated that the resident does not want him on his property. Chief Pumphrey advised me that the Port Authority of NY/NJ asked us to inform the process server that he should serve the paperwork through the legal department of their agency, which is headquartered in the World Trade Center. I relayed the same to the process server and he advised me that he would not return to ██████████ The individual requested my name and badge number, which I provided. I left the scene. Note: A CAD entry was not made at the time due to me responding directly from the previous call which resulted in this incident report.

| Officer of Record: | Date: | Reviewed By: | BWC: | Case #: | Page 2 |
|---|---|---|---|---|---|
| Lt. Jason Rivers 5748 | 02/28/26 | jrivers | X | 26-04573 | |

11

**Exhibit B** — Email from Captain Eileen O'Toole dated March 23, 2026 (personal contact information redacted)

**From:** Eileen O'toole < ██████@aol.com>
**Date:** Monday, March 23, 2026 at 2:01 PM
**To:** William Brown <william.brown@parlatorelawgroup.com>
**Subject:** Eileen O'Toole

Good Afternoon,

I recently read the article regarding the complaint you filed against Kevin O'Toole and others.  The actions he took against you are his M.O. for many years against anyone who goes against him and his abuse of power is constant. As you referred to my case in your filing I wanted to reach out to offer support.  My husband, a Caldwell police officer, and I have been attacked by him since we had a family dispute and it has not stopped.  He has used the police as personal protection many times, to the point of overnight postings outside of his house and law firm. This has been reported to the A.G. to no avail.  Please feel free to reach out at any time.

Eileen O'Toole

@aol.com



My son is a retired SWCC with a TBI so I also wanted to thank you for your servic

**Exhibit C** — Affidavit of Non-Service of Joshua T. Lee, NJNY Legal Process, dated March 4, 2026 (residential address redacted)

## AFFIDAVIT OF NON-SERVICE

| Case: | Court: | County: | Job: |
|---|---|---|---|
| ESX-L-8932-24 | Superior Court of New Jersey, Chancery Division: Family Part, Essex County | Essex | 15323036 |

| Plaintiff / Petitioner: | Defendant / Respondent: |
|---|---|
| William Brown | MCCARTER & ENGLISH LLP, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY; KEVIN J. O'TOOLE (IN HIS PERSONAL AND PROFESSIONAL CAPACITIES), PATRICK DONOVAN (IN HIS PERSONAL AND PROFESSIONAL CAPACITIES), JOHN DOES 1-10 (FICTITIOUS INDIVIDUALS OR ENTITIES WHO HAVE LIABILITY TO PLAINTIFF FOR ANY OF THE CAUSES OF ACTION CONTAINED HEREIN). |

| Received by: | For: |
|---|---|
| NJNY Legal Process | Parlatore Law Group |

**To be served upon:**
KEVIN J. O'TOOLE —

I, Joshua T. Lee, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**    KEVIN J. O'TOOLE — O'Toole Scrivo, LLC,,

**Manner of Service:**    Unsuccessful Attempt

**Documents:**    Summons, Amended Complaint

**Additional Comments:**

1) Unsuccessful Attempt: Feb 28, 2026, 2:33 pm EST a:  .

I arrived at the location, noticed a Cadillac Escalade in the driveway of the residence. I went to the front door, knocked 2 twice, and rang the ring doorbell. A male came to the door, and I asked the male for Patrick Donovan, and the male stated no one lives there by that name and he has live there for 20 years. When the male closed the door, I realize I asked for the wrong name, and I went back to the front door and attempted to knock on the front door again. No answer. I tried to ring the video doorbell, no answer. I said out loud, Mr O'toole, I have important documents for you. No one still answered. I then left from the residence, and at the intersection of ▮▮▮▮▮ and ▮▮▮ avenue, I was Stopped by Cedar Police, officer Rivers badge #5748, who asked me was I the process server. I said yes, and the officer stated that no one is there. I said to the officer that as a process server, I have to go back 3 times, on 3 different days, even if they don't answer. The officer repeated to say not to go back to the residence, and to serve Mr O' Toole at the legal department of the Port Authority at 1 World Trade Center, NY, NY. I informed the officer that I am leaving after I do my notes and the officer left.

Joshua T. Lee

Date  3/4/26

NJNY Legal Process
130 West Pleasant Avenue 305
Maywood, NJ 07607
862-777-1130, 973-910-1633

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date  3-4-26

Commission Expires  12/2/26

ZAKIYYAH E. SHEPARD
Commission # 50179233
Notary Public, State of New Jersey
My Commission Expires
December 02, 20_26

15

**<u>Exhibit D</u>** — Kevin O'Toole's Threatening Text Message where he Threatens to Weaponize and Use Governmental Institutions to Punish Family Members



**Exhibit E** - Patrick Donovan's Threatening Text Message where he Threatens to Weaponize unless Plaintiff stayed silent about O'Toole and his firm



Ok, we aren't sending anything out about him or posting anything

Very disappointed in the Chairman.

I am not going to blast him publicly with the swim but it's known as my boss Tim Parlatore is the attorney for Secretary of Defense.

Read 5:42 PM

I understand
Please be aware though that you cannot post, send or do anything else negative towards him or his firm. If you do I will be out of the event along with all Port Authority assets and access to the WTC

Understood. The event does to much good for Goldstars, SEALs, Veterans, Law Enforcement Officers and Firefighters for me to risk.

Delivered