**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

WILLIAM BROWN JR.,

      Plaintiff,

    v.

MCCARTER & ENGLISH LLP *et al.*,

      Defendants.

Civil Action No.
2:26-cv-02808-JXN-AME

Motion Day: May 4, 2026

**BRIEF IN SUPPORT OF DEFENDANT MCCARTER & ENGLISH, LLP'S
MOTION TO PARTIALLY DISMISS THE COMPLAINT
PURSUANT TO RULE 12(b)(6)**

**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, New Jersey 07009
973-239-5700
*Attorneys for Defendant*
*McCarter & English, LLP*

Of Counsel and On the Brief:

    Thomas P. Scrivo, Esq. (029101989)
    Michael J. Dee, Esq. (042182006)

On the Brief:

    Joseph R. Marsico, Esq. (244192017)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PLAINTIFF'S ALLEGATIONS ............................................................................... 4

LEGAL ARGUMENT ............................................................................................... 9

I.   Plaintiff's NJLAD Claims Are Barred Because Veterans Were Not a Protected Class at the Relevant Time, and the Subsequent Statutory Amendment Is Not Retroactive (COUNTS 7–9) ..................................... 9

    A. The 2026 NJLAD Amendment that Extended Protections to Veterans Was Not Retroactive ........................................................... 10

    B. Plaintiff Has Not Pleaded Associational Discrimination Under the NJLAD ............................................................................ 13

II.  Plaintiff's USERRA Discrimination Claim Should Be Dismissed in Its Entirety Because Plaintiff Fails to Allege Any Cognizable Act of Anti-Veteran Discrimination (COUNT 1) ............................................... 14

    A. "Fair and Equal Compensation" ........................................................ 15

    B. "Promotion to Regular Associate Status" .......................................... 17

    C. "Professional Development Opportunities" and "Inclusion in the Firm's Annual Diversity Retreat" .................................................. 19

    D. "Work Assignments Consistent with [Plaintiff's] Role in the Bankruptcy Group" .......................................................................... 20

    E. "Retention in Employment" .............................................................. 22

III. Plaintiff's CEPA Claim Fails Because He Had No Reasonable Basis to Believe McCarter Was Doing Anything Unlawful (COUNT 4) ......... 23

    A. Plaintiff Knew That His Comparatively Lower Pay Was Based on His Comparatively Lower Job Position, Not His Veteran Status ............................................................................................. 25

    B. Plaintiff Could Not Reasonably Have Believed That Either of the Underlying Acts Alleged in His December 23, 2023, Email Was Unlawful ................................................................................ 26

IV.  Plaintiff's *Pierce* Claims Are Invalid Because They Do Not Rely on Any Public Policy Recognized Under the Law (COUNTS 5–6) ............ 29

i

A. The *Pierce* Claim Based on Veteran Status Undermines the NJLAD's Exclusive Purview as New Jersey's Anti-Discrimination Law ...........................................................................29

B. The *Pierce* Claim Based on Plaintiff's Speech Is Barred for Lack of State Action ..........................................................................30

V. There Can Be No Breach of the Implied Covenant of Good Faith and Fair Dealing Because Plaintiff Had No Contractual Relationship with McCarter (COUNT 11) ................................................................31

VI. Plaintiff Has Failed to Plead the Required "Extreme and Outrageous" Conduct or "Severe Emotional Distress" and, thus, His Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law (COUNT 10).............................................................................................33

A. Plaintiff Has Failed to Plead "Extreme and Outrageous" Conduct .........................................................................................34

B. Plaintiff Has Not Sufficiently Pleaded That He Suffered Severe Emotional Distress .............................................................37

VII. Plaintiff Fails to Allege Any Facts Suggesting that McCarter Participated in a Supposed Conspiracy (COUNTS 13 and 18)................38

CONCLUSION ....................................................................................................40

# TABLE OF AUTHORITIES

**Statutes**

38 U.S.C. § 4303 ..............................................................................................................19

38 U.S.C. § 4311 ....................................................................................................... 14, 25

N.J. P.L.2025, c.307 .................................................................................................. 10, 11

N.J.S.A. 10:5-12 ........................................................................................................ 10, 16

N.J.S.A. 10:5-5 .................................................................................................................10

N.J.S.A. 34:19-3 ........................................................................................................ 23, 25

**Legislative Materials**

N.J. Senate Military & Veterans' Affairs Comm.,
Statement to S.B. 3800 (Dec. 16, 2024) ...........................................................................12

**Rules**

D.N.J. Local Civ. Rule 401.1 ...........................................................................................27

**Cases**

*Aviles v. Big M, Inc.*,
Docket No. A-4980-09T4, 2011 N.J. Super. LEXIS 564 (App. Div. Mar. 8, 2011) ..........................................................................................................................33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 33, 38, 39

*Boston v. Graphic Packaging Int'l., LLC*,
No. 25-1698, 2026 U.S. App. LEXIS 8453 (3d. Cir. 2026) ............................................22

*Buckley v. Trenton Sav. Fund. Soc.*,
111 N.J. 355 (1988) ......................................................................................... 36, 37

*Burlington N. & Santa Fe Ry. v. White*,
548 U.S. 53 (2006) ...........................................................................................................21

*Calabotta v. Phibro Animal Health Corp.*,
460 N.J. Super. 38 (App. Div. 2019) ................................................................................14

*Carroll v. Del. River Port Auth.*,
843 F.3d 129 (3d Cir. 2016) ............................................................................................14

iii

*Carroll v. Del. River Port Auth.*,
No. 13-2833, 2013 U.S. Dist. LEXIS 96059 (D.N.J. July 9, 2013) ...................16

*Cody v. Fed. Express Corp.*,
Docket No. A-2054-19, 2023 N.J. Super. Unpub. LEXIS 867 (App. Div.
June 5, 2023) .................................................................................................33

*Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*,
816 F. App'x 670 (3d Cir. 2020) ..........................................................39

*D'Alessandro v. Variable Annuity Life Ins. Co.*,
No. 89-2052, 1990 U.S. Dist. LEXIS 16092 (D.N.J. Nov. 20, 1990)................32

*Desposito v. New Jersey*,
No. 14-1641, 2015 U.S. Dist. LEXIS 59159 (May 5, 2015).............................40

*Deuty v. Hewlett-Packard*,
No. 10-cv-00562, 2011 U.S. Dist. LEXIS 73387 (D. Col. May 23, 2011)........20

*Dzwonar v. McDevitt*,
177 N.J. 451 (2003) ........................................................................... 23, 24

*Estate of Roman v. City of Newark*,
914 F.3d 789 (3d Cir. 2019) ..............................................................5

*Griffin v. Tops Appliance City, Inc.*,
337 N.J. Super. 15 (App. Div. 2001)..................................... 34, 35, 37

*Hampton v. Armand Corp.*,
364 N.J. Super. 194 (App. Div. 2003)..........................................................30

*Harris v. Middlesex Cnty. College*,
353 N.J. Super. 31 (App. Div. 2002)..............................................................35

*Hart v. City of Jersey City*,
308 N.J. Super. 487 (App. Div. 1998)............................................................35

*Hitesman v. Bridgeway, Inc.*,
218 N.J. 8 (2014) ...............................................................................24

*Huertas v. Bayer US LLC*,
120 F.4th 1169 (3d Cir. 2024) ........................................................4

*Ingraham v. Ortho-McNeil Pharm.*,
422 N.J. Super. 12 (App. Div. 2011)..............................................................35

*Jarbough v. AG of the United States*,
483 F.3d 184 (3d Cir. 2007) ......................................................................21

iv

*Johnson v. Roselle EX Quick LLC*,
226 N.J. 370 (2016) ................................................................................ 10, 11, 13

*Juzwiak v. Doe*,
415 N.J. Super. 442 (App. Div. 2010) ..................................................................36

*Komis v. Sec'y of the U.S. DOL*,
918 F.3d 289 (3d Cir. 2019) ................................................................................15

*Lee v. ElectrifAi, LLC*,
No. 23-2239, 2024 U.S. Dist. LEXIS 165093 (D.N.J. Sep. 13, 2024)...............33

*Lisdahl v. Mayo Found. for Med. Educ. & Research*,
698 F. Supp. 2d 1081 (D. Minn. 2010).................................................................17

*Maia v. IEW Const. Grp.*,
257 N.J. 330 (2024) ................................................................................ 11, 12, 13

*Major Tours, Inc. v. Colorel*,
720 F.Supp. 2d 587 (D.N.J. 2010)........................................................................38

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007)...................................................................28

*Mandel v. M&G Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013) .................................................................................16

*McDonnell v. Illinois*,
319 N.J. Super. 324 (App. Div. 1999)..................................................................36

*McKinnon v. Gonzales*,
642 F. Supp. 2d 410 (D.N.J. 2009).......................................................................21

*McVey v. AtlantiCare Med. Sys. Inc.*,
472 N.J. Super. 278 (App. Div. 2022)..................................................................31

*Murphy v. Radnor Twp.*,
542 Fed. Appx. 173 (3d Cir. 2013)......................................................................14

*Nolan v. Control Data Corp.*,
243 N.J. Super. 420 (App. Div. 1990 ..................................................................32

*Norton v. N.J. Dep't of Corr.*,
No. A-2851-20, 2022 N.J. Super. Unpub. LEXIS 2644 (App. Div. Dec. 28, 2022) ....................................................................................................................24

*O'Lone v. N.J. Dept. of Corr.*,
313 N.J. Super. 249 (App. Div. 1998)..................................................................14

*Phillips v. Curiale,*
    128 N.J. 608 (1992) ................................................................11

*Pierce v. Ortho Pharma. Corp.,*
    84 N.J. 58 (1980) ................................................................29

*Qin v. Vertex, Inc.,*
    100 F.4th 458 (3d Cir. 2024) ................................................ 16, 17

*Safarian v. Am. DG Energy, Inc.,*
    729 Fed. Appx. 168 (3d Cir. 2018) ................................................29

*Sons of Thunder v. Borden, Inc.,*
    148 N.J. 396 (1997) ................................................................32

*Tartaglia v. UBS Paine Webber, Inc.,*
    197 N.J. 81 (2008) ................................................................26

*Thomas v. U-Haul Co.,*
    No. 1:23-cv-21469, 2024 U.S. Dist. LEXIS 188083 (D.N.J. 2024) ..................37

*Travers v. Fed. Express Corp.,*
    8 F.4th 198 (3d Cir. 2021) ................................................................15

*Vega-Colon v. Wyeth Pharm.,*
    625 F.3d 22 (1st Cir. 2010) ................................................................18

*Verdu v. Trs. of Princeton Univ.,*
    No. 20-1724, 2022 U.S. App. LEXIS 27136 (3d Cir. Sep. 27, 2022) ................17

*Vincent v. Earthcam Inc.,*
    Docket No. BER-L-2166-23, 2023 N.J. Super. Unpub. LEXIS 4643 (Law Div. Oct. 13, 2023) ................................................................33

**Other Authorities**

Third Circuit Standing Order, "Cameras in the Courtroom" (Apr. 30, 1997).........28

## PRELIMINARY STATEMENT

After most of his original complaint was dismissed in the Superior Court, Plaintiff William Brown, now appearing *pro se*, has filed an Amended Complaint containing 500 paragraphs of allegations against his former firm, McCarter & English, LLP ("McCarter" or "Firm") and new defendants, the Port Authority of New York and New Jersey, Kevin J. O'Toole, and Patrick Donovan ("Port Authority Defendants"). As it relates to McCarter, Plaintiff asserts claims under laws that do not apply to him, relying on theories that no "objectively reasonable person" would believe, based on contracts that never existed and on conspiracies that exist only in the realm of "conspiracy theories." Accordingly, McCarter submits this brief in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff served as a Navy SEAL during the Global War on Terror. In 2017, after his military service concluded and shortly after his graduation from law school, McCarter hired him into the Firm's bankruptcy group as a Career Staff Attorney, a position below the traditional entry-level Associate role at McCarter. Plaintiff does not allege that this initial hiring decision was in any way discriminatory or unlawful.

Plaintiff remained with McCarter as a Career Staff Attorney for nearly seven years, until December 2023. That month, at his annual performance review, he received a $15,000 raise, and McCarter agreed to provide a roadmap of "specific steps" he could take if he wanted to become an Associate at the Firm. But a week

1

later, despite previous warnings about social media posts violating the Firm's Social Media Policy, he wrote a post on LinkedIn equating what he perceived to be two "radical culture[s]": Black American culture of the 1990s, which he claimed "promot[ed] . . . antisocial values and the glorification of violence and drugs," and "the Islamic world," which he claimed was "far from tolerant" and also "promot[ed] antisocial values and glorifie[d] violence." In other words, in 'one fell swoop,' Plaintiff publicly insulted an entire racial group and a world religion in direct violation of McCarter's Social Medial Policy. McCarter terminated Plaintiff's at-will employment immediately thereafter.

Instead of accepting responsibility for his offensive post or, at least, the fact that it violated McCarter's policy, Plaintiff has pursued this lawsuit which, now without the guidance of counsel, has grown to 18 counts (13 asserted against McCarter), three additional parties, and multiple conspiracy theories. As shown herein, multiple counts that he asserts against McCarter are ripe for dismissal.

First, Plaintiff asserts claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, despite his acknowledgement that at no time during his employment at McCarter did the NJLAD apply to his veteran status. Thus, his claims under the NJLAD fail as a matter of law and Counts 7, 8, and 9 of the Complaint should be dismissed.

Second, Plaintiff asserts three claims under USERRA: (1) discrimination; (2) retaliation; and (3) hostile work environment. While all three lack merit and will undoubtedly be dismissed at summary judgment, Plaintiff fails to adequately plead a discrimination claim because it relies on purported "benefits of employment" that do not fall within the statutory definition and facts and theories that have no tendency to prove that his past military service was a motivating factor in any of the actions he challenges. Count 1 should therefore be dismissed.

Third, Plaintiff's claim under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 39:19-1 *et seq.*, fails as there is no nexus, let alone a "substantial nexus," between his alleged complaints and the law he cites, confirming he did not have an objectively reasonable belief of unlawful activity.

Fourth, Plaintiff has failed to adequately plead a claim under *Pierce v. Ortho Pharmaceutical* because it relies on public policies that do not exist and that simply do not apply to Plaintiff.

Fifth, Plaintiff's common-law claims are ripe for dismissal because Plaintiff has not and cannot plead the elements of those claims. Plaintiff asserts a claim for intentional infliction of emotional distress, but he has not and cannot plead any facts that suggest that McCarter engaged in extreme or outrageous conduct or that he suffered the requisite severe emotional distress. Plaintiff also asserts a claim for breach of the covenant of good faith and fair dealing but, in doing so, does not plead

3

the existence of a valid contract between him and McCarter—a prerequisite for the claim. Finally, Plaintiff pleads conspiracy claims relating to a decision by non-party Navy Seal Foundation to cancel a contract with him, without pleading any factual basis to plausibly suggest it had anything to do with McCarter.

For these reasons and as set forth more fully below, Counts 1, 4 to 11, 13, and 18 of Plaintiff's Complaint asserting claims against McCarter should be dismissed.

## PLAINTIFF'S ALLEGATIONS[1]

### A. McCarter's Hiring of Plaintiff

Plaintiff is a veteran of the United States Armed Forces, having served as a Navy SEAL in the Global War on Terror. Compl. ¶ 1. Plaintiff describes himself as an "outspoken advocate for veterans' rights, and an individual with strongly held views on matters of public concern." *Id.* ¶ 62. Plaintiff alleges that McCarter had knowledge of his veteran advocacy before he was hired. *Id.* ¶¶ 62–63.

McCarter hired Plaintiff as a Career Staff Attorney in March 2017, after his military service ended. *Id.* ¶¶ 61–62. Plaintiff expressly acknowledges that the "position of Career Staff Associate to which Plaintiff was assigned was distinct from the position of 'regular Associate' at Defendant McCarter." *Id.* ¶ 65. Plaintiff alleges that he performed "substantially similar" work as "regular" Associates and even

---

[1] For purposes of this motion, McCarter is constrained to rely upon the allegations set forth in Plaintiff's Complaint, even when they are inaccurate, misleading, or false. *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

Equity Partners at McCarter, *id.* ¶ 66, but he does not include factual allegations regarding the particular work he performed or how it was "substantially similar" to the work of any other attorney at McCarter as he claims. Further, Plaintiff does not and cannot allege that the Career Staff Attorney position and the regular Associate position to which he compares himself had the same billable hours expectation, the same hiring criteria and qualifications, the same hourly billing rate, or the same level of responsibility. In other words, there are no allegations in the Complaint that the two distinct positions should have been treated the same.

**B.     McCarter's Social Media Policy**

McCarter maintains a Social Media Networking Policy (the "Policy") that governs employees and partners' use of social media. Certification of Adam N. Saravay ("Saravay Cert."), Ex. 1.[2] The Policy requires employees to follow various guidelines including, in relevant part:

> 3.     Do not express personal opinions about other people, especially other lawyers, judges, politicians, clients and firm personnel, or about potentially controversial topics such as *politics and religion*, or offer referrals, endorsements, or recommendations for or about

---

[2] Because the Complaint refers to the Firm's social media policy (Compl. ¶¶ 75, 76, 78, 182, 184, 263–64), the Court may consider it in connection with this motion to dismiss. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 797 (3d Cir. 2019) (on motion to dismiss, court may consider "documents that a defendant attaches as an exhibit . . . if they are undisputedly authentic and the plaintiff's claims are based on them") (cleaned up and citations omitted).

others. Take care not to criticize firm lawyers when discussing cases in which firm lawyers participated.

[*Id.* at 2 (emphasis added).]

Prior to December 2023, McCarter warned Plaintiff about making social media posts that violated the Policy. *See* Compl. ¶ 288.

**C.    Plaintiff's 2023 Employee Evaluation**

On December 14, 2023, Plaintiff attended his annual performance review. *Id.* ¶ 252. At the review, he received a $15,000 raise and received positive feedback regarding his performance. *Id.* ¶¶ 253–54. He alleges that at that review, he expressed his displeasure at being "discriminated against based on his veteran status" and that with the $15,000 raise, he was still being compensated at a rate that was less than a regular Associate at McCarter. *Id.* ¶ 255.

Plaintiff further alleges that he requested, for the first time, that McCarter "provide him with specific steps he could take to become a regular Associate . . ." and, presumably in the alternative, that McCarter provide a "severance package to help him evaluate his options and determine his next steps." *Id.* ¶¶ 257–58. McCarter agreed with those requests, provided Plaintiff with a severance package and committed to providing him with "specific steps" Plaintiff could take to become a regular Associate. *Id.* ¶ 259.

6

**D. Plaintiff's LinkedIn Post**

On December 22, 2023, Plaintiff made a post on LinkedIn, which he describes as discussing "jihadist terrorist violence" and "reflecting his lived experiences as a Navy SEAL combat veteran in Iraq" ("December 2023 Post"). *Id.* ¶¶ 273, 279. Specifically, Plaintiff referenced that, during his military service in Iraq, he responded to two suicide bombings. *Id.* ¶ 278. He stated: "the textual language within the Quran is far from tolerant." *Id.* Plaintiff then proceeded to compare the Quran and its influence on the "Islamic world" to 1990's "gangsta rap," which he described as promoting "antisocial values and the glorification of violence and drugs" and having "a huge negative influence" on "many young and easily impressionable American black youth." *Id.*[3]

On December 27, 2023, Plaintiff met with McCarter's Firmwide Deputy Managing Partner and the firm's Chief Human Resources Officer and was terminated. *Id.* ¶ 287–88. The Firmwide Deputy Managing Partner explained that Plaintiff was being terminated because his December 2023 Post "promoted negative stereotypes of Muslim and Black Americans" after previous warnings about making "controversial" posts on social media in violation of the Policy. *Id.* ¶ 288.

---

[3] The December 2023 Post as depicted in paragraph 278 of the Complaint identifies Plaintiff as "Partner at Parlatore Law Group LLP." At the time it was posted, it identified him as "Attorney at McCarter & English, LLP." *See* Saravay Cert., Ex. 3.

7

### E.  Plaintiff's Initial Lawsuit

On December 24, 2024, Plaintiff filed a complaint in State Court asserting two claims against McCarter, each premised on the notion that his termination was unlawful. *See* ECF 2-1 at 2–47. First, Plaintiff asserted a CEPA claim (Count I) focused on an alleged complaint he made during his annual review. *See id.* at 40–43. Second, Plaintiff asserted a *Pierce* unlawful termination claim (Count II), alleging, in the alternative, that McCarter violated public policy by terminating him for his December 2023 Post. *See id.* at 43–44. On July 11, 2025, the trial court dismissed most of Plaintiff's legal theories, including those based on the NJLAD and alleged public policies relating to the "free speech rights" of veterans in private sector employment. *See id.* at 51–82.

### F.  Plaintiff's Amended Complaint

On February 26, 2026, Plaintiff filed an amended complaint ("Complaint") *pro se*, adding the Port Authority Defendants and 16 counts, for a total of 18 counts against four parties. *See id.* at 84–202. Against McCarter, he asserts claims for discrimination, retaliation, and hostile work environment under USERRA in Counts 1, 2, and 3, respectively; retaliation in violation of CEPA in Count 4 and under *Pierce* in Counts 5 and 6; various alleged violations of the NJLAD in Counts 7 through 9; common-law claims for intentional infliction of emotional distress and breach of the covenant and good faith and fair dealing in Counts 10 and 11; and

8

conspiracy claims (against all Defendants) under 42 U.S.C. § 1983 and the common law in Counts 13 and 18.

Despite the litany of extraneous allegations in the 500 paragraphs of Plaintiff's Amended Complaint, Counts 1, 4, 5, 6, 7, 8, 9, 10, 11, 13, and 18 against McCarter fail to state a claim for which relief can be granted. This motion follows.

## LEGAL ARGUMENT

### POINT I

**Plaintiff's NJLAD Claims Are Barred Because Veterans Were Not a Protected Class at the Relevant Time, and the Subsequent Statutory Amendment Is Not Retroactive (COUNTS 7–9)**

Plaintiff asserts three claims under the NJLAD: (1) discrimination (Count 7); (2) hostile work environment (Count 8); and (3) unequal pay (Count 9). *See* Compl. ¶¶ 418–42. But, as Plaintiff now concedes, the NJLAD did not apply to him at any time during his employment with McCarter. *See id.* ¶ 420. Thus, each count fails as a matter of law. Although recognizing that dispositive fact, Plaintiff argues in his Complaint that a recent amendment to the NJLAD should apply retroactively, citing case law that does not remotely support that untenable proposition. Plaintiff also presents an alternative theory of NJLAD liability—"associational discrimination," *see* Compl. ¶ 420—but his allegations in that regard bear no resemblance to the elements necessary to plead associational discrimination under the NJLAD. For these reasons and as set forth below, Counts 7, 8, and 9 should be dismissed.

## A. The 2026 NJLAD Amendment that Extended Protections to Veterans Was Not Retroactive

At no time during Plaintiff's employment with McCarter was veteran status a protected category under the NJLAD, a fact that Plaintiff concedes. *See* N.J.S.A. 10:5-12(a); Compl. ¶ 420 (Plaintiff conceding that "veteran status and . . . outspoken advocacy for veterans' rights" were "not enumerated in the NJLAD during Plaintiff's employment"). Instead, as it related to military service, the NJLAD only protected those individuals who were "liab[le] for service in the Armed Forces of the United States," *see* N.J.S.A. 10:5-12(a) (amended 2025) (2024), which was defined as "subject to being ordered . . . into active service." N.J.S.A. 10:5-5(g) (amended 2025) (2024).

In January 2026, Governor Murphy signed S.B. 3800, which amended the NJLAD to add veterans as a protected class. *See* N.J. P.L.2025, c.307, § 7. Recognizing that the prior version of the NJLAD did not protect veterans generally during his employment at McCarter, Plaintiff submits that the 2025 amendment, signed more than two years after his employment ended, applies to him retroactively. *See* Compl. ¶¶ 421–23. Plaintiff is simply wrong.

Contrary to the arguments in the Complaint, generally new laws apply only prospectively unless the Legislature "clearly expresses a contrary intent." *Johnson v. Roselle EX Quick LLC*, 226 N.J. 370, 388 (2016) (citation omitted). Because of the strong presumption of prospective application, retroactive application may be

10

justified only when: (1) the Legislature expresses "an intent that a law be retroactive"; (2) an amendment is "ameliorative or curative"; or (3) the "parties' expectations warrant retroactive application." *Maia v. IEW Const. Grp.*, 257 N.J. 330, 350 (2024) (citation omitted). None of those criteria applies here.

As confirmed by the very cases cited by Plaintiff, "a statute [that] changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent." *Johnson*, 226 N.J. at 388 (*citing Phillips v. Curiale*, 128 N.J. 608, 617 (1992)). Here, the Legislature did not mention, let alone mandate, retroactive application, and thus the amendment creating new substantive law cannot be retroactive. Furthermore, the plain language of the amendment confirms that it would "take effect immediately," N.J. P.L.2025, c.307, § 7, which the New Jersey Supreme Court recognizes to be nearly conclusive evidence of the Legislature's intent for prospective application, *see Maia*, 257 N.J. at 352 (citing cases and noting that "New Jersey courts have repeatedly construed language stating that a provision is to be 'effective immediately,' or 'effective immediately on a given date,' to signal *prospective* application." (emphasis in original)).

Second, since the amendment at issue created new substantive rights, it was not "ameliorative or curative." To be considered curative, an amendment must be "designed merely to carry out or explain the intent of the original statute" or to

"remedy a perceived imperfection in or misapplication of a statute." *Id.* at 351 (citations omitted). An amendment is not considered curative if it "alter[s] the intended scope or purposes of the original act." *Id.* (citations omitted). Here, the Legislature confirmed its intention to alter the scope of the NJLAD (i.e., expand its coverage) when discussing the bill:

> Currently, the LAD bars discrimination based on "liability for service in the Armed Forces of the United States." The bill **broadens this provision** to specifically bar discrimination against . . . military veterans. The bill defines this **additional protected class** of persons as those . . . who have been discharged or released from active service in any branch of the Armed Forces of the United States or National Guard.
>
> [N.J. Senate Military & Veterans' Affairs Comm., Statement to S.B. 3800 (Dec. 16, 2024) (emphasis added).]

Thus, the "ameliorative or curative" exception cannot apply. *Maia*, 26 N.J. at 351.

Finally, there is no basis to conclude that the "expectations of the parties" were for retroactive application of the amendment, the exception upon which Plaintiff principally relies in his Complaint. Compl. ¶ 423. Indeed, courts will not even reach this factor unless the statute itself is ambiguous. *See id.* ("expectation" analysis is performed only "if there is no clear expression of legislative intent concerning retroactivity") (citation omitted). As shown above, that is not the case here. But regardless, before a court will apply a statute retroactively under this exception, it must have been "*strongly apparent* to the *parties*" to the litigation that

12

they were consenting to the retroactive application of the law. *Id.* (emphasis added). Ignoring McCarter's expectations, Plaintiff improperly focuses on *his* expectations and the *Legislature's* alleged knowledge of his pending lawsuit, *see* Compl. ¶ 423. That is not the relevant analysis. In fact, in the very case upon which Plaintiff relies, the New Jersey Supreme Court confirmed that even if legislation is amended directly in response to a court's decision, it is not a basis for retroactive application of the amendment. *Johnson*, 226 N.J. at 393 ("The language used in the official sponsor and committee statements, providing that the amendment was 'in response' to, and meant to 'reverse' the *Fernandez* decisions, also cannot support retroactivity."). As there is no basis to apply the amendments to the NJLAD retroactively, Plaintiff's NJLAD claims should be dismissed.

## B. Plaintiff Has Not Pleaded Associational Discrimination Under the NJLAD

Plaintiff offers in the alternative that if the NJLAD amendment was not retroactive, he fell under the protection of the NJLAD anyway because he "was the functional equivalent of a protected class"—namely, his veteran advocacy was "so closely associated with [his] identity that discrimination based on those characteristics constituted associational discrimination actionable under the NJLAD." Compl. ¶ 420. Even assuming those facts were true, which they are not, they do not constitute associational discrimination. Associational discrimination applies when a person who does not belong to a protected class suffers

13

discrimination because of his association with a person who *is* a member of a protected class. *See Calabotta v. Phibro Animal Health Corp.*, 460 N.J. Super. 38, 58 (App. Div. 2019). For example, in *O'Lone v. N.J. Dept. of Corr.*, the plaintiff—who did not belong to any protected class—stated an NJLAD claim when his employer fired him for dating a Black woman. 313 N.J. Super. 249, 255 (App. Div. 1998). Plaintiff is not alleging anything of the sort here.

### POINT II

**Plaintiff's USERRA Discrimination Claim Should Be Dismissed in Its Entirety Because Plaintiff Fails to Allege Any Cognizable Act of Anti-Veteran Discrimination (COUNT 1)**

In Count 1, Plaintiff asserts a claim for discrimination under USERRA. *See* Compl. ¶¶ 371–79. USERRA provides that an employer cannot terminate, refuse to promote, or deny a veteran "any benefit of employment" because of his military service. 38 U.S.C. § 4311(a). To proceed with his claim, Plaintiff must plausibly allege that he suffered an adverse employment action that was motivated by his veteran status. *See Carroll v. Del. River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (confirming that a plaintiff asserting a discrimination claim must plead and prove that his military service was "a motivating factor" in the adverse employment action) (*citing Murphy v. Radnor Twp.*, 542 Fed. Appx. 173, 176 (3d Cir. 2013)).

Plaintiff identifies several "benefits" that McCarter supposedly denied him during his employment due to his veteran status. *See* Compl. ¶ 376. But even

14

accepting the allegations as true, they cannot support a cause of action for discrimination under USERRA, either because they were unaccompanied by a meaningful adverse action or because they logically cannot be traced to any veteran animus. Count 1 should therefore be dismissed in its entirety.[4]

### A. "Fair and Equal Compensation"

Plaintiff claims that McCarter denied him "fair and equal compensation" based on his veteran status but pleads no facts to suggest that his compensation was different at any time from a "similarly situated" McCarter attorney—a requirement to state a USERRA discrimination claim. Instead, Plaintiff compares his compensation as a Career Staff Attorney to that of a regular Associate, while conceding that they are "distinct" positions. *See id.* ¶¶ 66–67, 256. USERRA guarantees equal treatment only between service members and their *similarly situated* non-servicemember colleagues. *See Travers v. Fed. Express Corp.*, 8 F.4th 198, 204 n.13 (3d Cir. 2021) ("[U]nder USERRA, those serving in the military are entitled to the same benefits as similarly situated coworkers who are not serving.").

---

[4] One of the "benefits" Plaintiff identifies in Count 1 is the right to a workplace free from harassment. Compl. ¶ 376. That is no different from his claim for hostile work environment in Count 3, which is not before the Court on this motion. No basis exists for Plaintiff to maintain a separate count for discrimination under USERRA based on the same legal theory of hostile work environment. *See Komis v. Sec'y of the U.S. DOL*, 918 F.3d 289, 293 (3d Cir. 2019) (gravamen of Title VII hostile work environment claim is a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult") (citation omitted).

Of course, USERRA does not prohibit an employer's decision to compensate two different positions differently. Compl. ¶ 65; *see Mandel v. M&G Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) (stating in a Title VII[5] case that "an employee who holds a different job in a different department is not similarly situated").

Plaintiff tries to gloss over the requirement to plead that he was compensated differently from a "similarly situated" employee by making conclusory allegations that he was doing "substantially similar work" to other (unidentified) attorneys at the Firm (even including Equity Partners).[6] *See* Compl. ¶¶ 3, 66, 67, 251, 256. Regardless, a pay discrimination claim requires a showing that the two positions being compared are similar in "all material respects." *Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024). This includes not just Plaintiff's singular focus on "similar job responsibilities," but also such factors as whether the employees "dealt with the same supervisor" and "were subject to the same standards." *Id.* Critically, "[a]n employee who holds a different job title or works in a different department is not

---

[5] "Given the similarity of USERRA's antidiscrimination provision to Title VII's antidiscrimination provision, Title VII pleading requirements are instructive as to what a USERRA plaintiff must allege." *Carroll v. Del. River Port Auth.*, No. 13-2833, 2013 U.S. Dist. LEXIS 96059, at *5 (D.N.J. July 9, 2013).

[6] The term "substantially similar work" that Plaintiff uses throughout his Complaint has no connection to the protections afforded under USERRA. Instead, it is a term introduced through the Diane B. Allen Equal Pay Act, *see* N.J.S.A. 10:5-12(t), a 2019 amendment to the NJLAD. Of course, as shown above, the NJLAD does not apply to Plaintiff and, thus, his claim of having performed "substantially similar work" as others is meaningless to his claims.

16

similarly situated." *Id.* As such, Plaintiff's bare allegation that he, as a Career Staff Attorney, performed "substantially similar" work to essentially all attorneys from Associate-level to Equity Partners, is insufficient to state a claim of pay disparity under USERRA. *See Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 U.S. App. LEXIS 27136, at *11 (3d Cir. Sep. 27, 2022) (affirming dismissal of Title VII claim when plaintiff, a male professor, "never identifie[d] a female professor at Princeton as a comparator" in his complaint; he identified only a female graduate student, who "h[e]ld unquestionably different roles and levels of authority" from his own).

## B. "Promotion to Regular Associate Status"

Plaintiff also alleges that he was denied a promotion to the position of Associate because he is a veteran. *See* Compl. ¶ 376. But he does not allege that he ever applied for the position of Associate or even expressed interest in it until two weeks prior to his termination. Of course, absent evidence that there was an available position to which he applied and was rejected, there can be no failure to promote claim under USERRA. *Lisdahl v. Mayo Found. for Med. Educ. & Research*, 698 F. Supp. 2d 1081, 1106 n.20 (D. Minn. 2010), *aff'd* 633 F.3d 712 (8th Cir. 2011) (rejecting plaintiff's failure-to-promote claim because he "did not apply for" the higher position and "[w]e are aware of no decision, under the USERRA, that requires the employer to pursue a veteran, who has returned to work, so as to pressure that veteran to seek a promotion that is not automatic based upon the veteran's

17

seniority"). And, beyond that dispositive flaw, Plaintiff certainly makes no claim that a non-veteran was promoted to a position that he sought or any other basis upon which one could conclude that veteran animus was a motivating factor in the (non-existent) denial of promotion.[7] *Cf. Vega-Colon v. Wyeth Pharm.*, 625 F.3d 22, 28 (1st Cir. 2010) (dismissing failure-to-promote claim under USERRA because the plaintiff's personal opinion that he was more qualified than the non-service member selected for the position was insufficient to establish that his military service was a motivating factor in the decision).

The closest Plaintiff comes to pleading that he applied for a promotion is the allegation that at his December 14, 2023, performance review, he requested "steps" for becoming an Associate. *See id.* ¶¶ 252, 257. Even then, Plaintiff did not communicate to McCarter that he was actively seeking a promotion; he simply asked the Firm about the "steps he could take" to eventually progress in that direction, which McCarter agreed to provide. *See id.* ¶ 257. He was terminated less than two weeks later due to his LinkedIn post. *See id.* ¶ 262. Thus, even in requesting the "steps" to become an Associate (acknowledging there were steps he would need to take), McCarter still never denied him anything.

---

[7] Nor could Plaintiff allege that McCarter did not hire veterans as Regular Associates during his employment, because, as he well knows, McCarter hired several veterans as Regular Associates during his employment.

Because the allegations in the Complaint fail to establish that Plaintiff was denied a promotion that he sought and certainly fail to create an inference that his veteran status was a motivating factor in that non-existent action, any discrimination claim based on a failure to promote fails as a matter of law.

## C. "Professional Development Opportunities" and "Inclusion in the Firm's Annual Diversity Retreat"

Plaintiff claims he was denied "professional development opportunities" and "inclusion in the Firm's annual diversity retreat." *See id.* ¶ 376. The Complaint provides no explanation of what "professional development opportunities" he was denied. Indeed, that term appears only twice in his Complaint, in paragraphs 3 and 376, with no substantive allegations.

Regarding the diversity retreat, Plaintiff's Complaint provides scant details. Beyond conclusory assertions that he was "excluded" from the retreat for six years, the only "facts" he pleads are from a LinkedIn post from McCarter, on which he sarcastically commented, "Maybe next time they'll consider including veteran attorneys at the firm because we're far underrepresented in all aspects of the legal community and could use the support." *Id.* ¶ 119. No further details are alleged.

USERRA defines the phrase "benefits of employment" to include, in relevant part, "any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of an employment contract or agreement," 38 U.S.C. § 4303(2). As noted, the Complaint provides no explanation of what "development

19

opportunities" he was denied, let alone factual allegations that would establish that any such opportunity constituted a "benefit of employment" under the law. Plaintiff's Complaint also lacks any allegation explaining the diversity retreat, how many people attended, how they were selected and invited, whether he requested to participate (beyond making sarcastic public comments on social media), and anything that would remotely suggest that attendance would amount to a "benefit" of employment under the law. Simply put, Plaintiff has not pled a discrimination claim in connection with the alleged denial of development opportunities or exclusion from the diversity retreat. *Cf. Deuty v. Hewlett-Packard*, No. 10-cv-00562, 2011 U.S. Dist. LEXIS 73387, at *29–30 (D. Col. May 23, 2011) (collecting cases for the proposition that the employer's "decision not to send Plaintiff to [an external conference] is insufficient, as a matter of law, to support a Title VII claim" because it does not "rise to the level of an adverse employment action").

## D. "Work Assignments Consistent with [Plaintiff's] Role in the Bankruptcy Group"

Next, Plaintiff claims that McCarter discriminated against him by denying him "work assignments consistent with his role in the Bankruptcy Group," Compl. ¶ 276—namely, by assigning him an excessive number of child sexual abuse defense cases, *see id.* ¶¶ 229-50. As a preliminary matter, Plaintiff does not allege that his military status was a motivating factor in these work assignments, but claims he was given them in "retaliation" for "publicly advocating for fair pay and equal

20

opportunities for veterans." *See id.* ¶ 229; *see also id.* ¶ 243 (assignment was made after Plaintiff "had recently complained publicly after pay inequality for veterans at Defendant McCarter"). His attempt to shoehorn his allegations relating to "retaliatory" work assignments into a discrimination claim should be rejected. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006) (regarding Title VII, "The [anti-discrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct."); *see also Jarbough v. AG of the United States*, 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim.").

Regardless, Plaintiff's claim about his work assignments is not actionable even if it were analyzed as a discrimination claim, because giving an employee a task that he dislikes is not an adverse employment action. *See McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 435 (D.N.J. 2009) (citation omitted). Here, Plaintiff only alleges that the assignments caused him to feel morally conflicted, *see id.* ¶¶ 238, 239, but that is not enough to support a discrimination claim. *See, e.g., McKinnon*, 642 F. Supp. 2d at 435–36 (plaintiff did not establish an adverse employment action under Title VII when she was "transfer[red] to the most challenging unit" but without any reduction in pay or benefits, any "demotion in

21

form or substance," or any effect on her "future career prospects"); *see also Boston v. Graphic Packaging Int'l., LLC*, No. 25-1698, 2026 U.S. App. LEXIS 8453, at *2–3 (3d. Cir. 2026) (confirming that an "adverse employment action" must "cause some harm," finding that the employee's transfer did not qualify since it "was neither disciplinary nor harmful to his career")

### E. "Retention in Employment"

Finally, Plaintiff claims that he suffered veteran discrimination when McCarter terminated his employment. *See* Compl. ¶ 376. But Plaintiff pleads no facts to suggest that his veteran status was a motivating factor in McCarter's decision to terminate him. To the contrary, as alleged by Plaintiff, as of December 14, 2023, McCarter had given him a $15,000 raise and advised him that they would provide him "with specific steps he could take to become a regular Associate"—*i.e.*, to be promoted. *Id.* ¶¶ 255–57. Plaintiff alleges that the sequence of events from December 14, 2023, through his termination "establish[ed] that Defendant terminated Plaintiff in retaliation for his protected complaints." *Id.* ¶ 264. In fact, throughout Plaintiff's Complaint, he repeatedly characterizes the termination decision as "retaliatory." *Id.* ¶¶ 289, 291, 292. Taking Plaintiff's allegations as true, at most Plaintiff has pled a retaliation claim under USERRA relating to his termination—not a claim for discrimination. Count 1 is, therefore, ripe for dismissal.

22

## POINT III

**Plaintiff's CEPA Claim Fails Because He Had No Reasonable Basis to Believe McCarter Was Doing Anything Unlawful (COUNT 4)**

CEPA bars an employer from retaliating against an employee for, among other things, objecting to an action by the employer that he "reasonably believes" is unlawful. *See* N.J.S.A. 34:19-3(c)(1). Where, as here, a "plaintiff brings an action pursuant to N.J.S.A. 34:19-3(c), the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct. The trial court can and should enter judgment for a defendant when no such law or policy is forthcoming." *Dzwonar v. McDevitt*, 177 N.J. 451, 463 (2003). While "CEPA does not require that [the] plaintiff set forth facts that, if true, would constitute a violation of" the law identified, CEPA "does require a *close relationship* between" the claims and the statute. *Id.* at 67 (emphasis added).

"[W]hen a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." *Id.* at 464. "To establish a substantial nexus, the law or policy identified must 'provide[] a standard against which the conduct of the defendant may be measured.'" *Norton v. N.J. Dep't of Corr.*, No. A-2851-20, 2022 N.J. Super. Unpub. LEXIS 2644, at *13

23

(App. Div. Dec. 28, 2022) (alteration in original) (quoting *Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 33 (2014)). There can be no substantial nexus where the standard against which the conduct is measured does not apply to the facts alleged. *Hitesman*, 218 N.J. at 37 (finding CEPA claim unsustainable where identified authority did not govern employer's conduct); *see also Dzwonar*, 177 N.J. at 467–68 (finding plaintiff did not have an objectively reasonable belief of violations of the provisions of Labor-Management Reporting and Disclosure Act where the "thrust of [plaintiff's] case" involved allegations of the refusal of union officers to distribute meeting minutes and to disclose financial actions that were not covered by the law cited).

Plaintiff identifies two whistleblowing acts that he allegedly performed: (1) a verbal complaint he made at his year-end review on December 14, 2023, accusing McCarter of pay discrimination based on his veteran status and (2) an email he sent on December 23, 2023, complaining that he had been assigned a "disproportionate volume of child sexual abuse defense cases" and had been asked to remove a LinkedIn post containing photographs of a federal courtroom. *See* Compl. ¶¶ 255–56, 282–86, 400. Even granting, for sake of argument, that Plaintiff voiced each of these complaints, the irreparable flaw in his CEPA claim is that he could not have held an objectively reasonable belief that McCarter was doing anything unlawful.

24

**A. Plaintiff Knew That His Comparatively Lower Pay Was Based on His Comparatively Lower Job Position, Not His Veteran Status**

Plaintiff alleges that he engaged in a "protected act" on December 14, 2023, when he allegedly "expressed his displeasure" to Ms. Calello, Mr. Saravay, and Ms. Lydon that he was "being discriminated against . . . based on his status as a veteran." *See* Compl. ¶ 255. The basis for his alleged belief of unlawful action was that his salary as a Career Staff Attorney was lower than the salary for a newly hired regular Associate. *See id.* Although the Complaint does not explicitly specify any "law, . . . rule[,] or regulation" that Plaintiff believed McCarter was violating by this pay discrepancy, *see* N.J.S.A. 34:19-3(c)(1), only one might plausibly apply: USERRA, which prohibits pay discrimination based on veteran status.[8] *See* 38 U.S.C. § 4311(a).

But Plaintiff's own Complaint confirms that he could not have held an objectively "reasonable belief" that McCarter's pay practices violated USERRA. As shown above in regard to Plaintiff's separate USERRA discrimination claim, the substance of Plaintiff's "displeasure" expressed to McCarter on December 14, 2023, was that other employees in a different, *higher-level* job title earned more than he

---

[8] While the NJLAD prohibits pay discrimination, it did not apply to veterans at the time of Plaintiff's employment at McCarter. *See* Point I *supra*.

25

did. *See* Point II(A) *supra*.[9] USERRA has no bearing on pay disparities between different positions. *Id.* As such, an employee (a lawyer, no less), cannot reasonably assert that he believed his employer was breaking the law by paying him less than a colleague in a different, higher position. *Cf. Tartaglia v. UBS Paine Webber, Inc.*, 197 N.J. 81, 112 (2008) (applying a "higher standard" on an attorney's alleged belief that her company had violated the Rules of Professional Conduct to assert a *Pierce* claim). Because the alleged complaint has no nexus, let alone a "substantial nexus," to the only law that could remotely apply to his compensation, he did not have an "objectively reasonable belief" that McCarter's pay practices were unlawful and, thus, this aspect of his CEPA claim fails.

### B. Plaintiff Could Not Reasonably Have Believed That Either of the Underlying Acts Alleged in His December 23, 2023, Email Was Unlawful

Plaintiff alleges that his other "protected act" was a December 23, 2023, email to Mr. Lubertazzi, Ms. Calello, Mr. Saravay, and Ms. Lydon. He claims that this email contained two complaints of veteran discrimination: that McCarter was assigning him a "disproportionate volume" of child sexual abuse defense cases, and that a Firm attorney had, a year earlier, requested that he remove a LinkedIn post about the Third Circuit while permitting a similar post by a different, non-veteran McCarter attorney. *See* Compl. ¶¶ 173–174, 282–84. While the Complaint again

---

[9] In addition, as noted above, several individuals in that very position were veterans, and Plaintiff does not, and could not, allege otherwise.

fails to expressly cite any underlying statute or regulation that McCarter supposedly violated, Plaintiff presumably is alleging that he was complaining about perceived violations of USERRA.

As shown, *see* Point II(D) *supra*, Plaintiff's concerns regarding work assignments do not implicate USERRA. He may have felt "conflict[ed]" about the assignments, Compl. ¶¶ 238, 239, but they do not implicate any "benefit of employment" as defined under USERRA. In other words, distilled to its essence, what occurred is that an employee (Plaintiff) was given work tasks by his employer (McCarter) that were completely lawful but that he did not like doing. To state a CEPA claim, Plaintiff would need to show that he had some objectively reasonable basis to believe that this was a USERRA violation. Nothing in USERRA remotely suggests that its definition of "benefits of employment" includes individual work assignments, and so there is no nexus to any law that could apply.

The portion of Plaintiff's CEPA claim based on the LinkedIn post should also be rejected. Plaintiff posted two photographs on social media showing the interior of a federal courthouse, including one photograph of the interior of a courtroom during a court proceeding, in direct violation of the Local Rules of this Court and a longstanding order of the Third Circuit Court of Appeals. *See* D.N.J. Local Civ. Rule 401.1(a); Third Circuit Standing Order, "Cameras in the Courtroom" (Apr. 30, 1997)

27

("Third Circuit Order").[10] Another Firm attorney, Mr. Artiles, posted photographs of the same courtroom, but showing Judge Padin's investiture ceremony,[11] which is specifically permitted as an exception to that Rule and order. *See* D.N.J. Local Civ. Rule 401.1(b); Third Circuit Order ¶ 3. Of course, any belief that McCarter was engaged in unlawful activity because it requested that Plaintiff remove a photograph that violated the Court's Local Rules but did not require the removal of a photograph expressly permitted by the same Rules, is not objectively reasonable. *See* Compl. ¶¶ 181-82 (claiming that McCarter enforced its social media policy "inconsistent[ly] as an "act of illegal, bias-based harassment . . . based on military veteran status"). Yet again, Plaintiff could not have had an objectively reasonable belief that these two examples—one that expressly violated the Court's Local Rules and the other expressly permitted by it—represented selective enforcement of a policy and, in turn, a violation of the law, or a denial of a benefit of employment under USERRA.[12]

---

[10] Accessible at https://www.ca3.uscourts.gov/standing-orders-0.

[11] A complete copy of Mr. Artiles's post, which was truncated in the Complaint, is attached as Exhibit 2 to the Certification of Adam N. Saravay. *See* Compl. ¶ 179; *see also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 131 (D. Conn. 2007) ("Courts have routinely held that when a complaint quotes documents only in part and omits critical portions of the documents, it is permissible for the court ruling on a motion to dismiss to consider the full texts of the quoted documents.") (citing cases).

[12] Plaintiff's original complaint alleged that these events violated a public policy of free speech for veterans, a theory which the State Court held did not state a claim. Plaintiff's amended Complaint still hints at that dismissed theory, Compl. ¶¶ 181, 184, which still fails for reasons explained below.

## POINT IV

**Plaintiff's *Pierce* Claims Are Invalid Because They Do Not Rely on Any Public Policy Recognized Under the Law (COUNTS 5–6)**

The *Pierce* doctrine creates a cause of action against an employer who retaliates, not necessarily in violation of a particular statute as with CEPA, but alternatively in violation of a "clear mandate of public policy." *Safarian v. Am. DG Energy, Inc.*, 729 Fed. Appx. 168, 170 n.1 (3d Cir. 2018) (citing *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58 (1980)). Plaintiff, in Counts 5 and 6 respectively, proposes two *Pierce* theories: McCarter fired him because he is a veteran, Compl. ¶¶ 404–11, or because he spoke on matters of public concern related to his military background, *id.* ¶¶ 414–17. Both of these claims are invalid as a matter of law.

### A. The *Pierce* Claim Based on Veteran Status Undermines the NJLAD's Exclusive Purview as New Jersey's Anti-Discrimination Law

Count 5 posits that there is a "clear mandate of New Jersey public policy" to "protect[] . . . veterans from employment discrimination." Compl. ¶ 408. But the hole in this premise is obvious: New Jersey already has a comprehensive anti-discrimination statute in the form of the NJLAD, and veterans were *not* protected at the time of Plaintiff's termination. To the contrary, the Legislature specifically protected only people then-liable for military service, not all veterans. This is manifest proof that there was no "clear mandate" to extend the NJLAD's protections to all veterans at that time. To permit Plaintiff to nonetheless plead anti-veteran

29

discrimination as a *Pierce* claim would, in practical effect, extend the coverage of the NJLAD beyond what the Legislature permitted. The *Pierce* doctrine does not allow Plaintiff to circumvent the law by re-labeling a statutory claim.

Plaintiff's tactic of using his *Pierce* claim to circumvent the undisputable fact that he was not covered by the NJLAD has been tried and rejected by the courts. In *Hampton v. Armand Corp.*, 364 N.J. Super. 194 (App. Div. 2003), the plaintiff was fired for taking medical leave about nine months into her employment. She sued her employer under the Family and Medical Leave Act ("FMLA") and *Pierce*, and the District Court dismissed her FMLA claim because she was not covered by the law. *See id.* at 198–99. The Law Division, upon remand, dismissed the remaining *Pierce* claim, and the Appellate Division affirmed, explaining that if a plaintiff who did not meet the statutory criteria of the FMLA could instead "indirectly achieve the same result by filing a *Pierce* claim," it would "undermine" the "clearly expressed legislative design." *Id.* at 201. That is exactly what Plaintiff attempts to do here. Plaintiff did not fall within an NJLAD-protected class, so he attempts to "undermine" the NJLAD's "clearly expressed legislative design" through a *Pierce* claim. Plaintiff cannot do that and, thus, Count 5 should be dismissed with prejudice.

## B. The *Pierce* Claim Based on Plaintiff's Speech Is Barred for Lack of State Action

Count 6 asserts that McCarter wrongfully terminated Plaintiff "for expressing his opinions on matters of public concern based on his lived experiences as a Navy

30

SEAL combat veteran," in violation of the "clear mandate of public policy protecting freedom of speech" as reflected in the New Jersey Constitution. Compl. ¶¶ 413–14. The error in this claim is patent on its face: there is no cause of action against a private entity for supposedly infringing on free-speech rights. The Appellate Division in *McVey v. AtlantiCare Med. Sys. Inc.*, 472 N.J. Super. 278 (App. Div. 2022), confirmed that fact in circumstances nearly identical to those presented here. In *McVey*, the employer fired a nurse for making controversial statements on Facebook. *See id.* at 283–84. She filed a one-count *Pierce* complaint alleging, just like Plaintiff here, that she was terminated for exercising her constitutional free-speech rights. *See id.* at 284. The court dismissed her *Pierce* claim with prejudice, observing that "[n]o New Jersey court has held that a private entity that encroaches upon a private individual's constitutional rights to free speech has violated a clear mandate of public policy," *id.* at 289. The same result is required here.

## POINT V

### There Can Be No Breach of the Implied Covenant of Good Faith and Fair Dealing Because Plaintiff Had No Contractual Relationship with McCarter (COUNT 11)

In Count 11, Plaintiff alleges that McCarter owed him an implied duty of good faith and fair dealing, and that it breached that contractual duty by allegedly mistreating and ultimately terminating him. *See* Compl. ¶¶ 448–50. But Plaintiff's

31

Complaint lacks a critical and fundamental requirement for a breach of the covenant of good faith and fair dealing: a valid contract between Plaintiff and McCarter.

The covenant of good faith and fair dealing requires a contractual party to refrain from any act that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997) (citation omitted). It is not a standalone legal right or duty, but rather a requirement of all contracts formed under New Jersey law. *See id.* As such, at its core, there must be a contract between the parties before the covenant is imposed. *See Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 429 (App. Div. 1990) ("In the absence of a contract, there is no implied covenant of good faith and fair dealing.") (citation omitted). Nowhere in the Complaint does Plaintiff allege that he had any contractual relationship with McCarter. *See generally* Compl. Instead, he claims that the covenant arose by virtue of the employment relationship, inaccurately claiming that the covenant exists in "every employment relationship" "[u]nder New Jersey law." *See* Compl. ¶ 449. But "New Jersey courts have uniformly rejected the proposition that there is an implied covenant of good faith and fair dealing between an employer and employee in an at-will situation." *D'Alessandro v. Variable Annuity Life Ins. Co.*, No. 89-2052, 1990 U.S. Dist. LEXIS 16092, at *14 (D.N.J. Nov. 20, 1990) (citing cases) (quotation marks omitted). In cases like this one, where the plaintiff was an at-will employee, his claim based on the breach of an implied

32

covenant will be dismissed. *See, e.g.*, *Lee v. ElectrifAi, LLC*, No. 23-2239, 2024 U.S. Dist. LEXIS 165093, at \*47 (D.N.J. Sep. 13, 2024); *Cody v. Fed. Express Corp.*, Docket No. A-2054-19, 2023 N.J. Super. Unpub. LEXIS 867, at \*13–14 (App. Div. June 5, 2023); *Vincent v. Earthcam Inc.*, Docket No. BER-L-2166-23, 2023 N.J. Super. Unpub. LEXIS 4643, at \*13–14 (Law Div. Oct. 13, 2023); *see also Aviles v. Big M, Inc.*, Docket No. A-4980-09T4, 2011 N.J. Super. LEXIS 564, at \*18–19 (App. Div. Mar. 8, 2011) (rejecting appellant employee's argument that "the covenant of good faith and fair dealing . . . arises from the employment relationship"). For these reasons, Count 11 should be dismissed.

## POINT VI

### Plaintiff Has Failed to Plead the Required "Extreme and Outrageous" Conduct or "Severe Emotional Distress" and, thus, His Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law (COUNT 10)

Plaintiff's claim for intentional infliction of emotional distress ("IIED") is rooted in the allegation that the Firm subjected him to "extreme and outrageous conduct" that caused him "severe emotional distress" during his employment. *See* Compl. ¶ 444–45. Beyond using those phrases, which have no legal significance on a motion to dismiss, Plaintiff's Complaint lacks any factual allegations to satisfy the "elevated" threshold courts require to state an IIED claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Although New Jersey courts have recognized a cause of action for IIED since the 1980s, it is subject to an "elevated threshold for liability" as compared to other torts. *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 22–23 (App. Div. 2001). To plead an IIED claim, the plaintiff must allege the following elements: (1) intentional or reckless conduct that was intended to cause severe emotional distress; (2) that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; (3) causation; and (4) emotional distress that is "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988) (internal citation omitted). Plaintiff cannot satisfy, as a matter of law, the second or fourth elements of the claim.

## A. Plaintiff Has Failed to Plead "Extreme and Outrageous" Conduct

The "extreme and outrageous" conduct required by the second element of an IIED claim is satisfied in only "extreme cases." *Griffin*, 337 N.J. Super. at 23. And, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." *Id.* at 23–24 (internal citations omitted). This is because "the workplace has too many personal

34

conflicts and too much behavior that might be perceived as uncivil for the courts to be used as the umpire for all but the most extreme workplace disputes." *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 23 (App. Div. 2011).

Therefore, courts have dismissed IIED claims because the alleged conduct was neither extreme nor outrageous even where: a supervisor questioned whether the plaintiff actually had breast cancer and was "on the verge of physically bumping into [the plaintiff's] breast area to see if" she actually had a mastectomy, *Harris v. Middlesex Cnty. College*, 353 N.J. Super. 31, 36 (App. Div. 2002); the manager of an appliance store brought criminal theft charges against the plaintiff for selling a television to a family member below cost, *Griffin*, 337 N.J. Super. at 20–25; and a police department demanded that an officer undergo a "fitness for duty" examination, which included a psychological evaluation and drug testing, before being able to return to work following a domestic violence incident, *Hart v. City of Jersey City*, 308 N.J. Super. 487, 491–92 (App. Div. 1998). Plaintiff's claims here do not rise to the level of the foregoing cases, each of which was insufficient as a matter of law.

While Plaintiff asserts a litany of slights during his tenure at McCarter, the only conduct that occurred within the two-year period prior to the filing of his initial complaint includes: (1) the alleged disinvitation to a Rutgers Law School Event that Plaintiff ultimately attended, Compl. ¶¶ 185–99; (2) a counseling regarding a

35

LinkedIn Post relating to a movie that depicted violence, *id.* ¶¶ 202–15; (3) the sending of a New York Times article, *id.* ¶¶ 216–28; and (4) Plaintiff's termination for his offensive LinkedIn Post, *id.* ¶¶ 273–81, 287–88. Not one of those allegations comes close to the elevated threshold required to state a claim for IIED.

Critically, Plaintiff's efforts in his Complaint to recast some of these alleged events as "outrageous" is irrelevant, because whether conduct was "outrageous" enough to support an IIED claim is determined by an objective standard, not a subjective one. *Buckley v. Trenton Sav. Fund. Soc.*, 111 N.J. 355, 366 (1988); *see also Juzwiak v. Doe*, 415 N.J. Super. 442, 452 (App. Div. 2010) ("The defendant's conduct must be sufficiently severe to cause genuine and substantial distress or harm *to average persons*." (internal citation omitted) (emphasis added)).

Plaintiff's bald allegations that McCarter's conduct was motivated by unlawful animus also changes nothing. *See McDonnell v. Illinois*, 319 N.J. Super. 324, 342 (App. Div. 1999) (affirming dismissal of IIED claims because allegations that employer denied the plaintiff a promotion and terminated him because of his age failed to allege conduct that exceeded "all possible bounds of decency," while reversing dismissal of discrimination claim based on the same facts). In fact, it is well recognized that "[e]xcept for the kind of *aggravated* discriminatory conduct involved in *Taylor* [*v. Metzger*], 152 N.J. 490 (1998)"— where an African American plaintiff was referred to as a "jungle bunny"—"it is extremely rare to find conduct

36

in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." *Griffin*, 337 N.J. Super. at 23–24 (internal citations omitted) (emphasis added).

## B. Plaintiff Has Not Sufficiently Pleaded That He Suffered Severe Emotional Distress

As noted, the fourth element of an IIED claim requires pleading facts establishing that Plaintiff suffered severe emotional distress so intolerable that no person could be expected to endure it. *Buckley*, 111 N.J. at 366. As this Court has recognized, this requires more than "mere allegations of 'aggravation, embarrassment, an unspecified numbers of headaches, and loss of sleep.'" *Thomas v. U-Haul Co.*, No. 1:23-cv-21469, 2024 U.S. Dist. LEXIS 188083, at *13–15 (D.N.J. 2024). Instead, Plaintiff must plead the existence of a "severe and disabling emotional or mental condition(s) which may be generally recognized and diagnosed by trained professionals." *Id*. Plaintiff's Complaint contains zero allegations that would remotely satisfy these requirements. Instead, the most detailed account of the "severe emotional distress" Plaintiff suffered is contained in paragraph 297(d), which states in its entirety: "Severe emotional distress, humiliation, anxiety, and mental anguish." That is not even close.

Because no interpretation of Plaintiff's Complaint, no matter how generous, could establish the elements of an IIED claim, Count 10 should be dismissed.

## POINT VII

### Plaintiff Fails to Allege Any Facts Suggesting that McCarter Participated in a Supposed Conspiracy (COUNTS 13 and 18)

Finally, Counts 13 and 18 assert that McCarter engaged a conspiracy with the Port Authority Defendants to "silence" Plaintiff and "punish" him for filing suit. *See* Compl. ¶¶ 466, 497. Count 13 frames this allegation under Section 1983, while Count 18 alleges civil conspiracy. But no matter what Plaintiff calls it, his conspiracy allegation is legally deficient because he pleads no facts to support it.

Whether a plaintiff is alleging a conspiracy under Section 1983 or the common law, the elements are "similar." *Major Tours, Inc. v. Colorel*, 720 F.Supp. 2d 587, 610 (D.N.J. 2010). The essence of both claims is an agreement between the parties to inflict an injury upon the plaintiff, resulting in damages. *See id*. But it is not enough for the plaintiff to summarily allege that the defendants "conspired to perform the alleged conduct"; rather, he must plead enough factual material to support the plausibility that their supposed agreement existed. *See id*.; *see also Twombly*, 550 U.S. at 556–58 (finding that even allegations of "parallel business behavior" that suggest companies were acting in concert is insufficient to establish a "plausible" basis for pleading the existence of an "agreement" for purposes of establishing a conspiracy on a 12(b)(6) motion). In fact, "[i]f the scales are even" and Plaintiff's allegations amount to a "possibility of" a claim, he still did not satisfy

38

his burden and "dismissal is appropriate." *Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, 816 F. App'x 670, 674–75 (3d Cir. 2020); *see also Twombly*, 550 U.S. at 557 (confirming that a court is not required to accept conclusory terms "like 'conspiracy,' or even 'agreement' . . . as a sufficient basis for a complaint). The Complaint utterly fails to meet these established pleading standards.

Plaintiff's "conspiracy theory," in total, is that McCarter and one or more of the Port Authority Defendants "acted in concert to" punish him for this litigation, resulting in the termination of his contract with the Navy Seal Foundation. *See* Compl. ¶¶ 456 (as to Section 1983 conspiracy), 497 (as to civil conspiracy). But he has no factual basis to support that conclusion. The only "facts" pleaded to connect McCarter to anything having to do with the Port Authority are: (1) Defendant O'Toole is a partner at the firm representing McCarter in this matter, and (2) Defendant O'Toole's son is employed by McCarter and allegedly (though not actually) supervised by one of the attorneys about whom Plaintiff complained. *See id.* ¶¶ 462–63, 495. Neither fact makes it "plausible" (rather than merely "possible"), *Twombly*, 550 U.S. at 570, that McCarter made an agreement with the Port Authority Defendants to cause a third party, the Navy Seal Foundation, to terminate its contract with Plaintiff. Plaintiff does not even allege that McCarter had knowledge of his alleged contract, let alone that he agreed with the other defendants to cause the Navy Seal Foundation to breach it. Courts will reject a conspiracy claim, like Plaintiff's

39

two claims here, based not "in fact, but merely upon . . . suspicion and speculation." *Desposito v. New Jersey*, No. 14-1641, 2015 U.S. Dist. LEXIS 59159, at *36–37 (May 5, 2015) (citations omitted).

In the end, Plaintiff's allegations amount to nothing more than a baseless "conspiracy theory," but that is a far cry from a legally sufficient claim of conspiracy. Counts 13 and 18 are ripe for dismissal.

## **CONCLUSION**

For the reasons stated above, McCarter respectfully submits that Counts 1, 4–11, 13, and 18 of Plaintiff's Complaint should be dismissed.

> **O'TOOLE SCRIVO, LLC**
> 14 Village Park Road
> Cedar Grove, New Jersey 07009
> 973-239-5700
> *Attorneys for Defendant*
> *McCarter & English, LLP*

By: /s/ Thomas P. Scrivo
Thomas P. Scrivo
Michael J. Dee
Joseph R. Marsico

Dated: April 8, 2026

40