

**William (SEAL) Brown, Esq.**
Partner
260 Madison Avenue, 17th Floor
New York, NY 10016*
william.brown@parlatorelawgroup.com
Direct: 862-415-4880

April 10, 2026

**VIA CM/ECF**

The Honorable Julien Xavier Neals, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re: Brown v. McCarter & English LLP et al., Case No. 2:26-cv-02808-JXN-AME**
**Response to Defendant O'Toole's April 9, 2026 Letter (ECF Doc. 29)**

Dear Judge Neals:

Plaintiff William Brown Jr., appearing pro se, respectfully submits this letter in response to the April 9, 2026 letter filed by Calcagni & Kanefsky LLP on behalf of Defendant Kevin J. O'Toole (ECF Doc. 29). O'Toole's letter opposes Plaintiff's request to stay the Motions to Dismiss pending resolution of the Motion to Disqualify, accuses Plaintiff of violating RPC 3.4(g), and characterizes Plaintiff's filings as "**baseless broadsides**." Each argument fails on the law and the facts.

I.    **O'TOOLE'S MOTION TO DISMISS CANNOT BE SEVERED FROM THE STAY**

O'Toole's counsel argues that the disqualification motion "**has no bearing**" on O'Toole's personal Motion to Dismiss because O'Toole is "**separately represented**" by Calcagni & Kanefsky. (ECF Doc. 29 at 1.) This argument is defeated by O'Toole's own filing.

O'Toole's Motion to Dismiss expressly "**adopts and incorporates by reference all arguments set forth in his co-defendants' motions to dismiss.**" (ECF Doc. 25-1 at 3 n.1.) McCarter's Motion to Dismiss was prepared and

Licensed to Practice by the State of New Jersey
*Parlatore Law Group is a nationwide cloud-based firm. Please send all correspondence electronically. If physical mail is required, please use the central mailing address below.

filed by O'Toole Scrivo — the very counsel whose authority to act is challenged in the pending Motion to Disqualify. O'Toole cannot claim his motion is independent of McCarter's while simultaneously adopting McCarter's arguments wholesale. If McCarter's motion was prepared by conflicted counsel, O'Toole's express adoption of those arguments imports the taint into his own motion.

O'Toole's counsel concedes this point implicitly. His letter states that the cases Plaintiff cited "**only involved requests to stay briefing or decision on dispositive motions 'filed by the very counsel alleged to be conflicted.'**" (ECF Doc. 29 at 1 (quoting Grimes v. District of Columbia, 794 F.3d 83, 90 (D.C. Cir. 2015)).) That is precisely the situation here: O'Toole's motion incorporates by reference the arguments of the challenged counsel. A motion that depends entirely on the work product of conflicted counsel is, for purposes of the sequencing analysis, a motion "**filed by**" that counsel.

Moreover, in Escordi v. Macomb Township, No. 21-10570, 2022 WL 1599436, at *4 (E.D. Mich. May 20, 2022), the court applied the sequencing doctrine to all pending motions — including dispositive motions filed by co-defendants — holding that it would "**decide the Motion for Disqualification before considering any other motions in this case because if [counsel] 'is disqualified, [this] court should not reach the other questions or motions presented to it through the disqualified counsel.'**" (quoting Bowers v. Ophthalmology Group, 733 F.3d 647, 654 (6th Cir. 2013)). The Escordi court did not carve out an exception for co-defendants' motions — it stayed all pending dispositive motions until the disqualification was resolved.

The Third Circuit's own practice confirms this approach. In Abulkhair v. New Century Financial Services, Inc., 467 F. App'x 151 (3d Cir. 2012), the district court followed the proper sequence: it first adjudicated and denied the motion to disqualify counsel, and only after deciding the disqualification issue did the court address the pending motion to dismiss. The procedural history demonstrates the accepted practice in this Circuit — resolve the disqualification first, then proceed to the dispositive motion.

II.    **O'TOOLE'S "EFFICIENCY" ARGUMENT INVERTS THE PROPER SEQUENCING**

O'Toole's counsel argues that "**logic and efficiency counsel in favor of deciding Chairman O'Toole's motion to dismiss on the same track as Plaintiff's motion to disqualify**" because "**[i]f Chairman O'Toole's motion to dismiss is granted (as it should be), any concerns about alleged conflicts fall away.**" (ECF Doc. 29 at 1-2.)

This argument asks the Court to decide the merits of claims prepared by conflicted counsel before determining whether that counsel should have been permitted to prepare them. That is precisely what the sequencing doctrine prohibits.

The Sixth Circuit rejected this exact logic in Bowers, holding that "**[a] district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely.**" 733 F.3d at 654. The D.C. Circuit adopted the same mandatory rule: "**Once a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified.**" Grimes, 794 F.3d at 91. Critically, the Sixth Circuit in Bowers explicitly anticipated and rejected the argument that Rule 12(b)(6) motions are exempt from the sequencing doctrine:

> "**Perhaps this concern is not as great when a district court rules on a Rule 12(b)(6) motion to dismiss because, unlike a Rule 56 motion that relies on evidence, a Rule 12(b)(6) motion is based solely on the pleadings. Nonetheless, even when a Rule 12(b)(6) motion is involved, a district court should rule first on the motion to disqualify counsel to avoid any chance of infecting the proceedings.**" Bowers, 733 F.3d at 655 n.5.

The Third Circuit has acknowledged this doctrine. In Tymiak v. Commissioner Social Security, No. 19-3496 (3d Cir. Jan. 26, 2021) (non-precedential), the Third Circuit stated that a "**claim of . . . [a] conflict of interest calls into question the integrity of the process in which the allegedly conflicted counsel participates**" and that "**the court must resolve the motion to disqualify 'before it turns to the merits of any dispositive motion.**'" (quoting Grimes, 794 F.3d at 86). The Third Circuit carved out only a

narrow exception — where the court's dispositive ruling is based on a threshold, non-merits issue such as lack of jurisdiction or statute of limitations. That exception does not apply here. McCarter's Motion to Dismiss is a substantive Rule 12(b)(6) motion arguing failure to state a claim on the merits of USERRA, CEPA, Pierce, NJLAD, IIED, and conspiracy claims. It is not a jurisdictional motion.

Moreover, even if the claims against O'Toole were dismissed, the disqualification motion would not be moot. The conflict between O'Toole Scrivo and McCarter arises from O'Toole's personal interests — his law firm's income from the McCarter representation, his son's employment at McCarter, and his son's supervision by the partner whose conduct is at the center of Plaintiff's claims — materially limiting the firm's representation of McCarter. Those interests persist regardless of O'Toole's status as a co-defendant. The disqualification motion addresses the integrity of McCarter's representation — not merely O'Toole's party status.

III.    **McCARTER'S MOTION TO DISMISS IS ITSELF EVIDENCE OF THE CONFLICT**

McCarter's Motion to Dismiss (ECF Doc. 23), prepared and filed by O'Toole Scrivo, argues that there is no factual basis for the conspiracy claims at all. (ECF Doc. 23-1 at 38-40.) Specifically, O'Toole Scrivo argues that the only "facts" connecting McCarter to the Port Authority are O'Toole's partnership and his son's employment — and that these facts do not make it "**plausible**" that McCarter agreed with the Port Authority Defendants to cause the Navy SEAL Foundation to terminate its contract with Plaintiff. (ECF Doc. 23-1 at 39.)

This strategic choice illustrates the structural limitation on the firm's ability to exercise independent judgment on McCarter's behalf. An unconflicted counsel for McCarter — one whose managing partner did not face personal liability on seven counts in the same case — might conclude that McCarter's strongest defense to the post-termination retaliation claims is to argue that the Port Authority's conduct was O'Toole's independent action, not directed or coordinated by McCarter. O'Toole Scrivo chose instead to deny the existence of any retaliatory conduct — an argument that protects O'Toole by denying the conspiracy rather than distancing McCarter from it. O'Toole Scrivo will never advance the alternative defense because it would

expose its own managing partner to greater personal liability. The Court now has concrete, demonstrable proof — filed on the docket by the very counsel whose authority is challenged — that O'Toole's personal interests are materially limiting the firm's representation of McCarter. See Stahlberg v. Walter R. Earle Transit, LLC, No. A-2373-23, slip op. at 15 (N.J. App. Div. Oct. 2, 2024) (affirming disqualification where "**a lawyer representing [both] will have to make strategic determinations on how to present a defense and that will involve conflicts**").

O'Toole's counsel's letter — asking the Court to decide the MTD before the disqualification — is itself an exercise of the conflicted representation. Counsel whose managing partner faces personal liability has a structural incentive to seek dismissal of the claims that create the conflict before the Court can evaluate whether the conflict requires disqualification. See In re Congoleum Corp., 426 F.3d 675, 694-95 (3d Cir. 2005) ("**it was not a proper exercise of the bankruptcy court's discretion to fail to consider and appraise the conduct of the parties and counsel**").

## IV.   THE PORT AUTHORITY'S WITHDRAWAL CONFIRMS THE CONFLICT

On April 8, 2026, the Port Authority Law Department withdrew from Chairman O'Toole's defense. The Port Authority attorneys who had represented O'Toole — Cheryl Alterman and Megan Lee — were terminated as his counsel. (ECF Doc. 22.) O'Toole retained private personal counsel at Calcagni & Kanefsky LLP. (ECF Docs. 20, 21, 22.)

O'Toole's counsel states that the substitution "**does not mean that he, his counsel, or the Port Authority perceives there to be a conflict — we do not.**" (ECF Doc. 29 at 2.) The Court need not accept counsel's self-serving characterization. The Port Authority By-Laws, Art. XI, paragraph 4, provide that the Port Authority "**shall not indemnify and save harmless or pay under this Article XI where the injury or damage resulted from actual fraud, actual malice, willful misconduct or intentional wrongdoing.**" The Port Authority initially retained separate counsel for O'Toole rather than allowing O'Toole Scrivo to represent him — the first recognition of the conflict. Now, the Port Authority has withdrawn entirely — requiring O'Toole to retain private counsel at his own expense. The record does not reflect any alternative

explanation for why the Port Authority withdrew, and the Court may draw its own inference from the sequence of events. O'Toole's counsel's characterization of the OPRA records, body-worn camera footage, and Captain Eileen O'Toole's sworn Declaration as "**irrelevant**" (ECF Doc. 29 at 2 n.2) is itself an argument on the merits of the disqualification motion — precisely the type of substantive determination that the sequencing doctrine requires the Court to make before entertaining the Motions to Dismiss.

## V.    THE COORDINATION ARGUMENT IS ABOUT SUBSTANCE, NOT TIMING

O'Toole's counsel dismisses Plaintiff's coordination argument by stating that "**the defendants filed their motions yesterday because that is the day they were due.**" (ECF Doc. 29 at 2.) Plaintiff's argument is not about the filing date. It is about the substance: O'Toole's Motion to Dismiss expressly "**adopts and incorporates by reference all arguments set forth in his co-defendants' motions to dismiss.**" (ECF Doc. 25-1 at 3 n.1.) That substantive adoption — not the coincidence of timing — demonstrates the structural entanglement documented in the Motion to Disqualify. O'Toole retains influence over both sides of the defense because his law firm controls McCarter's defense strategy and the agency he chaired provided counsel for the Port Authority Defendants until the withdrawal on April 8.

## VI.    THE RPC 3.4(g) ACCUSATION IS MERITLESS

O'Toole's counsel accuses Plaintiff of violating RPC 3.4(g) "**in plain violation**" — twice — without citing a single case. (ECF Doc. 29 at 1, 2 n.2.) The accusation is contradicted by controlling New Jersey Supreme Court authority that counsel did not cite or address.

RPC 3.4(g) provides that a lawyer shall not "**present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter.**" In In re Helmer, 237 N.J. 70 (2019), the New Jersey Supreme Court dismissed disciplinary charges against an attorney who actively encouraged a criminal prosecution while a civil suit was pending. The Court held that "**to place primary responsibility on [the attorney] for what occurred overlooks the role and decision-making authority of the prosecution team**" and that "**[t]he ultimate decisions rested with the prosecutors.**" Id. at 84, 86. Plaintiff's FBI referral does not violate RPC 3.4(g) for four independent reasons.

**First,** Plaintiff did not "**threaten**" criminal charges — he submitted a referral to law enforcement requesting that the FBI investigate potential federal criminal violations. The decision whether to investigate, charge, or prosecute rests entirely with the FBI and the U.S. Attorney's Office — not with Plaintiff. See In re Helmer, 237 N.J. at 86 ("**Only [prosecutors] could authorize a grand jury presentation. Only they could petition the trial court for an arrest warrant and make a recommendation for bail.**").

**Second**, the referral was based on documented evidence of potential criminal conduct — not leverage. The Cedar Grove Police Department incident report contains a false justification contradicted by body-worn camera footage. The responding officer instructed a process server to falsify a sworn legal document. A 25-year law enforcement veteran — O'Toole's own sister — confirmed the pattern of abuse under oath. These are documented potential federal crimes — 18 U.S.C. §§ 242, 1512, 241, 1001, and 1519 — that exist independently of the civil case.

**Third**, the primary subjects of the FBI referral are non-parties — Lt. Jason Rivers, Chief Pumphrey, and an unidentified Port Authority "**Deputy Inspector.**" A referral targeting non-party law enforcement officers for their own independent misconduct cannot plausibly be characterized as a threat made to gain civil advantage.

**Fourth**, Plaintiff notified the Court of the referral — as candor requires — rather than communicating it to opposing counsel as leverage. In every disciplinary case finding an RPC 3.4(g) violation, the attorney communicated the threat of criminal prosecution directly to the opposing party or counsel as a bargaining chip. See Ruberton v. Gabage, 280 N.J. Super. 125, 128 (App. Div. 1995) (attorney stated during settlement conference that client was "**contemplating filing criminal charges**"). Plaintiff did nothing of the sort.

## VII.    PLAINTIFF'S LETTER APPLICATION IS PROCEDURALLY PROPER

O'Toole's counsel argues that Plaintiff's stay request is "**procedurally improper**" under Local Rule 7.1(b). (ECF Doc. 29 at 1 n.1.) O'Toole's counsel filed his own two-page letter opposition (ECF Doc. 29) without complying with Local Rule 7.1(b), demonstrating that counsel understands letter applications are

appropriate for this type of scheduling relief. Moreover, the Court's Individual Rules and Procedures expressly exempt pro se parties from the pre-motion conference letter exchange requirement.

## VIII.    THE HARM FROM DELAY IS TO PLAINTIFF, NOT O'TOOLE

O'Toole's counsel claims that "**the harm from the delay Plaintiff seeks is to Chairman O'Toole.**" (ECF Doc. 29 at 2.) The opposite is true. O'Toole's proposed order seeks dismissal with prejudice. (ECF Doc. 25-2.) If the Court grants the MTD before resolving the disqualification motion, Plaintiff permanently loses his claims against O'Toole — the very claims at the center of the conflict. If the Court later determines O'Toole Scrivo should have been disqualified, the ruling would need to be vacated. As the D.C. Circuit held, resolving the conflict first "**assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel.**" Grimes, 794 F.3d at 91.

By contrast, a brief stay causes O'Toole no cognizable harm. McCarter has never filed an Answer in over fifteen months of litigation. If the disqualification is denied, the Motions to Dismiss proceed on the existing schedule. If granted, new counsel for McCarter may withdraw or substantially revise the Motion to Dismiss — saving the Court and all parties significant resources.

## IX.    CONCLUSION

O'Toole's Motion to Dismiss expressly adopts McCarter's arguments — arguments prepared by the very counsel whose authority is challenged. The sequencing doctrine established in Bowers and Grimes, acknowledged by the Third Circuit in Tymiak, demonstrated in the Third Circuit's procedural practice in Abulkhair, and applied to co-defendants' motions in Escordi, requires the Court to resolve the disqualification motion before entertaining dispositive motions filed by or dependent upon the challenged counsel. Bowers explicitly held that this rule applies even to Rule 12(b)(6) motions. 733 F.3d at 655 n.5. The Port Authority's withdrawal from O'Toole's defense confirms the conflict. McCarter's own Motion to Dismiss demonstrates the structural limitation on O'Toole Scrivo's ability to exercise independent judgment. And the RPC 3.4(g) accusation is contradicted by the controlling authority that counsel did not cite.

Plaintiff respectfully requests that the Court stay the briefing schedule on all three Motions to Dismiss and resolve the Motion to Disqualify first, consistent with <u>Bowers v. Ophthalmology Group</u>, 733 F.3d 647, 654 (6th Cir. 2013), <u>Grimes v. District of Columbia</u>, 794 F.3d 83, 86 (D.C. Cir. 2015), and <u>Tymiak v. Commissioner Social Security</u>, No. 19-3496 (3d Cir. Jan. 26, 2021). Plaintiff further incorporates by reference the <u>In re Revel AC, Inc</u>. four-factor analysis set forth in his April 9, 2026 letter (ECF Doc. 26 at 5-6), all four factors of which favor a stay.

`

Respectfully submitted,
/s/ William Brown
William (SEAL) Brown Jr., Esq.
Plaintiff Pro Se
william.brown@parlatorelawgroup.com

cc: Thomas P. Scrivo, Esq. / Michael J. Dee, Esq. / Joseph R. Marsico, Esq.
O'Toole Scrivo, LLC — via CM/ECF

Thomas R. Calcagni, Esq. / Walter R. Krzastek, Esq. / Luke J. O'Brien, Esq.
Calcagni & Kanefsky LLP — via CM/ECF

Cheryl Alterman, Esq. / Megan Lee, Esq.
Port Authority— via CM/ECF