**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM BROWN JR.,<br>Plaintiff,<br>v.<br>MCCARTER & ENGLISH LLP *et al.*,<br>Defendants. | Civil Action No. 2:26-cv-02808-JXN-AME<br><br>Motion Day: May 4, 2026 |

# REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT MCCARTER & ENGLISH, LLP'S MOTION TO PARTIALLY DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, New Jersey 07009
973-239-5700
*Attorneys for Defendant McCarter & English, LLP*

Of Counsel and On the Brief:

Thomas P. Scrivo, Esq. (029101989)
Michael J. Dee, Esq. (042182006)

On the Brief:

Joseph R. Marsico, Esq. (244192017)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... II

PRELIMINARY STATEMENT .......... 1

LEGAL ARGUMENT .......... 3

I. Plaintiff Effectively Concedes that the NJLAD Amendment Is Not Retroactive to the Time of His Employment with McCarter (COUNTS 7–9) .......... 3

II. Plaintiff's USERRA Discrimination Claim Lacks Any Sign of Discriminatory Acts Related to Plaintiff's Veteran Status (COUNT 1) .......... 4

III. Plaintiff Did Not Have an Objectively Reasonable Belief That He Was Being Subjected to Anti-Veteran Pay Discrimination as Required to State a CEPA Claim (COUNT 4) .......... 9

IV. The NJLAD Did Not Apply to Plaintiff and So Cannot Support His *Pierce* Discrimination Claim (COUNT 5) .......... 11

V. Plaintiff's Attempt to Recharacterize His *Pierce* Free Speech Claim is Ineffective (COUNT 6) .......... 12

VI. Plaintiff Has Failed to Plead the "Extremely Rare" Case That Could Support a Claim for Intentional Infliction of Emotional Distress (COUNT 10) .......... 13

VII. There Is No Contract Between Plaintiff and McCarter to Support His Implied-Covenant Claim (COUNT 11) .......... 14

VIII. Plaintiff's Conspiracy Claims Remain Inadequately Pled (COUNTS 13 and 18) .......... 15

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Statutes**

N.J.S.A. 2A:14-2 .......... 13

**Rules**

Local Civ. Rule 7.2 .......... 1

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 9

*Bonaffini v. City Univ. of N.Y.*,
751 F. Supp. 3d 67 (E.D.N.Y. 2024) .......... 8

*Boston v. Graphic Packaging Int'l, LLC*,
No. 25-1698, 2026 U.S. App. LEXIS 8453 (3d Cir. Mar. 20, 2026) .......... 7

*Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*,
837 F.3d 378 (3d Cir. 2016) .......... 14, 15

*Catalane v. Gilian Instr. Corp.*,
271 N.J. Super. 476 (App. Div. 1994) .......... 12

*DeJoy v. Comcast Cable Comms.*,
941 F. Supp. 468 (D.N.J. 1996) .......... 12

*Griffin v. Tops Appliance City, Inc.*,
337 N.J. Super. 15 (App. Div. 2001) .......... 13, 14

*Hamarneh v. United Airlines*,
No. 24-05962, 2025 U.S. Dist. LEXIS 60171 (D.N.J. Mar. 31, 2025) .......... 12

*Hampton v. Armand Corp.*,
364 N.J. Super. 194 (App. Div. 2003) .......... 11

*In re D.C.*,
146 N.J. 31 (1996) .......... 3

*Jones v. Fox Rothschild, LLP*,
No. 20-6312, 2020 U.S. Dist. LEXIS 195327 (D.N.J. Oct. 21, 2020) .......... 13

*Martinez v. Sun Life Assur. Co.*,
948 F.3d 62 (1st Cir. 2020) .......... 7

*McVey v. AtlantiCare Med. Sys. Inc.*,
472 N.J. Super. 278 (App. Div. 2022) .......... 13

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .......... 7

*O'Reilly v. Inst. for Cancer Research*,
No. 24-5315, 2025 U.S. Dist. LEXIS 195172 (E.D. Pa. Oct. 2, 2025) .......... 8

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
116 N.J. 739 (1989) .......... 9

*Qin v. Vertex, Inc.*,
100 F.4th 458 (3d Cir. 2024) .......... 4

*Scanlon v. Am. Airlines Group, Inc.*,
102 F.4th 164 (3d Cir. 2024) .......... 4

*Travers v. Fed. Express Corp.*,
8 F.4th 198 (3d Cir. 2024) .......... 6, 7

*Verdu v. Trs. of Princeton Univ.*,
No. 20-1724, 2022 U.S. App. LEXIS 27136 (3d Cir. Sept. 27, 2022) .......... 5

*Waste Conversion v. Sims*,
868 F. Supp. 643 (D.N.J. 1994) .......... 10

## PRELIMINARY STATEMENT

Plaintiff's overlength[1] opposition does nothing to cure the fatal deficiencies in his Complaint. The majority of his Complaint should, yet again, be dismissed.

First, Plaintiff's NJLAD claims in Counts 7, 8, and 9 fail because his veteran status was not covered by the NJLAD at any time during his employment at McCarter. His half-hearted effort to retroactively apply an amendment that was passed two years after his employment ended is meritless.

Second, Plaintiff's USERRA claim in Count 1 relies on alleged events that do not constitute an adverse employment action as a matter of law, and the events that could rise to that level—i.e., Plaintiff's termination—were not accompanied by any facts that would support a discrimination theory of liability under USERRA.

Third, Plaintiff's CEPA claim in Count 4 fails because he did not have an objectively reasonable belief that McCarter's pay practices violated USERRA. Plaintiff's opposition does not substantively engage with that dispositive flaw. Instead, he largely sidesteps the issue, making a series of arguments and claims that have no bearing on McCarter's motion. Those efforts fail, and Count 4 of the Complaint should be dismissed.

[1] Plaintiff's brief could be disregarded for far exceeding the 30-page limit for briefs in 12-point proportional font. Local Civ. Rule 7.2(d). It also fails on the merits.

Fourth, Plaintiff's *Pierce* theories of liability in Counts 5 and 6 fail because: (1) he cannot rely on a statute that never applied to him as a source of public policy; (2) his statutory claims preempt his duplicative state common-law claim for wrongful discharge under *Pierce*; and (3) his "free speech" theories do not apply to a private employer.

Fifth, Plaintiff's opposition confirms that he has failed to plead facts that suggest this is the "extremely rare" employment case where a claim for intentional infliction of emotional distress could be supported. Plaintiff's reliance on allegations that fall well outside the two-year statute of limitations, along with other "facts" not contained in the Complaint, cannot salvage this claim, and Count 10 should be dismissed.

Sixth, Plaintiff concedes that the implied covenant of good faith a fair dealing claim in Count 11 cannot stand without a valid contract. Plaintiff's familiar effort to rely on theories never pled should be rejected.

Seventh, Plaintiff's conspiracy claims relating to the Port Authority of New York and New Jersey (Counts 13 and 18) have now been distilled to a single allegation—a text message that does not reference McCarter or this lawsuit. The remaining extraneous allegations have nothing to do with McCarter.

# LEGAL ARGUMENT

## POINT I

## Plaintiff Effectively Concedes that the NJLAD Amendment Is Not Retroactive to the Time of His Employment with McCarter (COUNTS 7–9)

As shown in McCarter's moving brief, *see* ECF 23-1 at 16–20, the NJLAD did not include veteran status at any time during Plaintiff's employment, and there is no basis in law or fact for retroactive application of the 2026 amendment. Plaintiff all but concedes it is dispositive that the Legislature used statutory language that has repeatedly been held to negate retroactive application, *see* ECF 36 at 30–31, but he nonetheless argues that the Court can "infer[]" "retroactive intent" under *In re D.C.*, 146 N.J. 31, 54 (1996). However, *In re D.C.* concerned retroactive application of a "curative" statute that created no new substantive rights, *see id.* at 51, meaning that it fit squarely within the "ameliorative and curative" exception, unlike the NJLAD amendment. *See* ECF 23-1 at 18–19. Plaintiff does not and cannot argue otherwise and cites nothing at all for his "totality of the circumstances" argument.

McCarter's moving brief also showed that Plaintiff's alternative associational discrimination theory is not supported by any allegations in the Complaint, ECF 23-1 at 20–21, and Plaintiff has not opposed the dismissal of that theory. Accordingly, he has no valid claim under the NJLAD, and Counts 7 through 9 of the Complaint should be dismissed.

## POINT II

**Plaintiff's USERRA Discrimination Claim Lacks Any Sign of Discriminatory Acts Related to Plaintiff's Veteran Status (COUNT 1)**

Count 1 of Plaintiff's Complaint fails to plead a viable claim for discrimination under USERRA. *See* ECF 23-1 at 21–29. Specifically, his USERRA discrimination claim fails to plead any facts that support an inference that veteran status played a role in a legally cognizable adverse action. Plaintiff's opposition relies on inapplicable law and a distortion of the Supreme Court's decision in *Muldrow*, neither of which can salvage his claim.

*First*, regarding his pay disparity claim, Plaintiff argues that "whether two positions are comparable for USERRA purposes 'is a question of fact . . . unless no reasonable jury could find the types of leave to be similar,'" ECF 36 at 24, relying on *Scanlon v. Am. Airlines Group, Inc.*, 102 F.4th 164 (3d Cir. 2024). As the very quote upon which Plaintiff relies confirms, *Scanlon* concerned the similarity between different types of *leave* offered by an employer, not the separate and dispositive legal principle that an employer has the right to pay different compensation for different positions—a principle Plaintiff does not and cannot dispute. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024) ("[C]omparator employees need not be identical but must be similarly situated in *all material respects*.") (citations omitted) (emphasis added). Contrary to his claim in opposition,

the fact that Plaintiff's Complaint fails to identify a single comparator to support his claim for pay discrimination is fatal on a motion to dismiss. *Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 U.S. App. LEXIS 27136, *11 (3d Cir. Sept. 27, 2022) (affirming Rule 12(b)(6) dismissal of Title VII claim for failure to identify a similarly situated employee treated more favorably).

And, while Plaintiff alleges that the positions were "substantially similar" (a phrase that has no meaning under USERRA, *see* ECF 23-1 at 23 n.6), his Complaint is devoid of a single factual allegation supporting that conclusion. In fact, untethered to any facts, the Complaint goes so far as to claim he was performing the same work as (and presumably should have been paid the same as) every single attorney at the Firm, including equity partners. ECF 2-1 at 103 ¶ 66.[2] That type of conclusory statement carries no weight under *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).[3]

*Second*, McCarter's moving brief showed that Plaintiff could not state a USERRA discrimination claim based on the alleged denial of business development

---

[2] Plaintiff also refers to remarks made by the Superior Court in its decision partially dismissing the original complaint. *See* ECF 36 at 24. As discussed below, *see* Point III *infra*, that previous ruling carries little weight here.

[3] Plaintiff argues that the state trial court already decided this issue. ECF 36 at 24. However, there was no USERRA claim before the trial court; instead, the quote referenced by Plaintiff was extracted from the state court's discussion about the viability of Plaintiff's claim under *Pierce*. *See* ECF 2-1 at 74. In any event, as shown in Point III, the Court is not obligated and, respectfully, should not, defer to that aspect of the state court's opinion.

opportunities and his not being invited to the diversity retreat because neither was a "benefit of employment" under the law. ECF 23-1 at 26–27. Plaintiff wrongly claims that McCarter's position was "rejected" by the Court of Appeals in *Travers v. Fed. Express Corp.*, 8 F.4th 198 (3d Cir. 2024). ECF 36 at 24–25. The issue in *Travers* was whether "paid leave" was a benefit of employment under USERRA. In finding that it was, the Court of Appeals reasoned, in part: "Naturally, pay is an 'increase in resources' and a 'valuable return' for nonmilitary employees." 8 F.4th at 205. That noncontroversial conclusion has no bearing on whether the vague references to professional development opportunities and a diversity retreat constitute "valuable" benefits in a manner similar to *compensation* as in *Travers*.

Furthermore, as *Travers* makes clear, the only "benefits" relevant under the law are those that are "generally" provided by the employer but withheld from servicemembers. *See id.* at 202–03 ("That is how we measure [claims for denial of] the rights and benefits [under USERRA]: does Group 2 [non-military] get something that Group 1 [military] does not?"). Here, Plaintiff's Complaint contains no allegations that the retreat or (undescribed) developmental opportunities were benefits provided generally to McCarter employees but withheld from veterans.[4]

[4] The Complaint does not allege, nor could it, that the Diversity Committee excluded veterans. In fact, one of the Committee members listed in the Complaint is a veteran, a fact that Plaintiff disingenuously omits. *See* ECF 2-1 at 116 ¶ 133.

Instead, Plaintiff seems to contend that his veteran status itself is what *entitled* him to be invited to these Firm functions—i.e., he should have received *preferential* treatment compared to non-veteran employees. That is not what USERRA provides. *See Travers*, 8 F.4th at 204 n.13 ("[T]hose serving in the military are entitled to the same benefits as similarly situated coworkers who are not serving."); *Martinez v. Sun Life Assur. Co.*, 948 F.3d 62, 74 (1st Cir. 2020) (purpose of USERRA's anti-discrimination provision "is to root out unlawful discrimination on the basis of uniformed service, not provide preferential treatment to servicemembers.").

*Third*, Plaintiff argues that under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), his subjectively undesirable work assignments constitute an adverse employment action. ECF 36 at 25–26. *Muldrow* stands for no such proposition. *Muldrow* rejected a line of cases in certain Circuit Courts of Appeals requiring that a plaintiff show "substantial harm" in order for an employment action to a constitute a legally cognizable "adverse action" under Title VII. The authorities cited in McCarter's opening brief did not rely on that impermissibsle standard, as the recent, post-*Muldrow* Third Circuit Court of Appeals decision in *Boston v. Graphic Packaging Int'l, LLC* confirms. No. 25-1698, 2026 U.S. App. LEXIS 8453, at *2–3 (3d Cir. Mar. 20, 2026) (holding that a reassignment is not an adverse action when it is "neither disciplinary nor harmful to [the employee's] career"). Simply put, *Muldrow* did nothing to disturb the long-standing principle that a claimed adverse

action still must have been objectively negative. *See O'Reilly v. Inst. for Cancer Research*, No. 24-5315, 2025 U.S. Dist. LEXIS 195172, at *41–42 (E.D. Pa. Oct. 2, 2025); *Bonaffini v. City Univ. of N.Y.*, 751 F. Supp. 3d 67, 75–76 (E.D.N.Y. 2024) ("At least, there must be an objective component . . . ."). Plaintiff's subjective feeling that particular assignments were, in his view, "morally repugnant" because he is the father of a young daughter is irrelevant; he acknowledges that it was legitimate work for a legitimate Firm client, just one that he did not personally support. *See* ECF 2-1 at 139 ¶ 233 ("[W]hile he acknowledged the constitutional right of accused parties to a vigorous defense, he struggled with the moral dilemma of defending child sexual abuse matters.").

*Fourth*, Plaintiff argues that McCarter is "essentially conceding that the termination was retaliatory." ECF 36 at 26. That is obviously not the case but, in any event, has no bearing on the fact that his USERRA *discrimination* claim is ripe for dismissal.

*Fifth*, Plaintiff asserts that his USERRA discrimination claim is "confirm[ed]" to be "plausib[le]" by the 2026 NJLAD amendment adding veterans as a protected class. ECF 36 at 26–27. Plaintiff's logic is not apparent; there is no connection between amending the NJLAD to add a protected category and what constitutes a "benefit of employment" under USERRA, a separate federal statute.

*Sixth*, Plaintiff states that the "cat's paw" theory could be a basis to impute liability from McCarter's partners to the Firm itself. ECF 36 at 27. That theory of liability relating to the question of discriminatory intent was never pled and, more importantly, does not implicate any of the grounds upon which McCarter has moved to dismiss Count 1 of Plaintiff's Complaint.

## POINT III

### Plaintiff Did Not Have an Objectively Reasonable Belief That He Was Being Subjected to Anti-Veteran Pay Discrimination as Required to State a CEPA Claim (COUNT 4)

Plaintiff first argues that the state trial court already denied McCarter's prior motion to dismiss regarding his CEPA claim and, while acknowledging that the Court "is not bound by the state court ruling," he claims the prior decision is "highly persuasive." ECF 36 at 28. But in reality, the state court's analysis has no persuasive effect here because it applied a different standard—namely, New Jersey's *Printing Mart* pleading standard rather than the more stringent *Twombly*/*Iqbal* pleading standard. *Compare Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 746 (1989) (court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim") *with Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (pleading must contain sufficient factual matter to "state a claim to relief that is plausible on its face," and "threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements do not suffice"). And beyond that critical difference, the issues on this motion are limited to questions of law to which no particular deference would be warranted. *Waste Conversion v. Sims*, 868 F. Supp. 643, 650 n.4 (D.N.J. 1994) (law of the case doctrine "must be exercised less rigidly when pure questions of law are at issue.").

As to the merits, McCarter has moved to dismiss Plaintiff's CEPA claim on a single ground: he did not have an "objectively reasonable belief" that McCarter's long-standing practice of compensating Career Staff Associates differently from regular Associates violated the law. ECF 23-1 at 30–35.[5] Plaintiff's opposition fails to engage that issue, instead dedicating several pages to whether he has pled sufficient facts on the issues of causation and pretext—neither of which was implicated by McCarter's motion. On the core issue for which dismissal is warranted at this stage, Plaintiff simply states, without authority, that McCarter's practice of compensating two different positions differently was a violation of USERRA. ECF 36 at 28. That is simply not the case. *See* ECF 23-1 at 22–24.

[5] Although not entirely clear from the Complaint, it seems that Plaintiff's CEPA claim is also based on a theory that his case assignments and a partner's concerns over a LinkedIn post were unlawful. *See* ECF 23-1 at 33–35. Beyond conclusory assertions, Plaintiff fails to address how either allegation would support an "objectively reasonable belief" of unlawful activity. *See* ECF 36 at 31–32 (addressing only the LinkedIn post, but failing to identify any facts that would support an objectively reasonable belief of unlawful activity given that his post plainly was prohibited by Local Court Rules).

While Plaintiff is correct that CEPA does not require a showing that the "employer . . . actually violated the law," the law must apply to the facts alleged; absent that, Plaintiff cannot have an objectively reasonable belief of unlawful activity as required under CEPA. ECF 36 at 29–31.[6] Given Plaintiff's concessions in his Complaint that he held a position that was distinct from the position of Associate at McCarter, his CEPA claim fails as a matter of law.

## POINT IV

### The NJLAD Did Not Apply to Plaintiff and So Cannot Support His *Pierce* Discrimination Claim (COUNT 5)

Plaintiff pleads that "New Jersey has a clear mandate of public policy protecting veterans," relying principally on the 2026 NJLAD amendment that added veteran status as a protected class. ECF 36 at 32–33. But when Plaintiff was terminated, he was not covered by the NJLAD. He now tacitly concedes that under *Hampton v. Armand Corp.*, 364 N.J. Super. 194 (App. Div. 2003), he cannot rely on the NJLAD as the source of public policy since "he was ineligible for the underlying statute's protection." ECF 36 at 33. Accordingly, it does not appear disputed that his *Pierce* claim relying on the NJLAD as the "source of public policy" cannot stand.

[6] Plaintiff also accuses McCarter of failing to "address—or even mention" his December 23, 2023 email, again relating to the issue of causation. ECF 36 at 32. Apparently, he has overlooked the entire point heading that McCarter devoted to this subject. *See* ECF 23-1 at 33–35.

Perhaps recognizing that dispositive flaw, Plaintiff appears to now rely solely on USERRA as the source of public policy. Plaintiff provides no explanation in his Complaint or brief as to what particular public policy established by USERRA was violated and how. Regardless, his *Pierce* claim is no broader or different from the USERRA and NJLAD claims he asserts in Counts 1, 2, 3, 7, 8, and 9. Courts have consistently held that a *Pierce* claim should be dismissed when it is duplicative of "the same alleged wrongs for which he seeks recovered under Federal and State statutes in the prior counts." *DeJoy v. Comcast Cable Comms.*, 941 F. Supp. 468 (D.N.J. 1996) (dismissing *Pierce* claim at pleading stage as duplicative of various state and federal causes of action, relying on *Catalane v. Gilian Instr. Corp.*, 271 N.J. Super. 476 (App. Div. 1994)); *see Hamarneh v. United Airlines*, No. 24-05962, 2025 U.S. Dist. LEXIS 60171, at *19 (D.N.J. Mar. 31, 2025) (Neals, J.) ("Plaintiff appears to be barred from raising a *Pierce* claim, as courts have consistently held the NJLAD to preempt duplicative common law discrimination claims.") (citations omitted).

## POINT V

### Plaintiff's Attempt to Recharacterize His *Pierce* Free Speech Claim is Ineffective (COUNT 6)

Plaintiff attempts to salvage his *Pierce* claim in Count 6 by explaining that the applicable public policy is not free speech *per se*, but rather "protecting veterans who share their combat experiences." ECF 36 at 33. That is a distinction without a

difference. As confirmed in *McVey v. AtlantiCare Med. Sys. Inc.*, constitutional principles of free speech simply do not apply to a private employer like McCarter. 472 N.J. Super. 278 (App. Div. 2022). As such, Plaintiff's claims of viewpoint discrimination and the supposed "chilling effect" of McCarter's decision to terminate his employment have no place in this case.

## POINT VI

### Plaintiff Has Failed to Plead the "Extremely Rare" Case That Could Support a Claim for Intentional Infliction of Emotional Distress (COUNT 10)

In employment cases, "it is extremely rare to find conduct . . . that will rise to the level of outrageousness necessary to provide a basis for recovery" in an IIED claim. *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23–24 (App. Div. 2001). As a preliminary matter, in his efforts to identify facts that could (but do not) support this claim, Plaintiff refers to a series of alleged events over a six-year period. ECF 36 at 37. Yet his claim is subject to a two-year statute of limitations. N.J.S.A. 2A:14-2(a); *see also Jones v. Fox Rothschild, LLP*, No. 20-6312, 2020 U.S. Dist. LEXIS 195327, *8 (D.N.J. Oct. 21, 2020). Of the five examples of "outrageous" conduct Plaintiff could muster in his opposition, ECF 36 at 37, the only ones that occurred during the limitations period were (1) an attorney at the Firm sent him a New York Times article and (2) he was not invited to the diversity retreat. As the authorities cited in McCarter's moving brief confirm, neither of those incidents

remotely approaches the extreme and outrageous conduct necessary to state a claim for IIED. ECF 23-1 at 41–44. The only other conduct that forms the basis of his IIED claim is his termination. *See* ECF 36 at 37. But it is well settled that termination of employment is not enough. *See Griffin*, 337 N.J. Super. at 24 ("While loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for infliction of emotional distress.") (citations and quotation marks omitted).

Plaintiff's alleged injuries also remain insufficient to support an IIED claim. He seeks to supplement the Complaint through his brief, adding reference to therapies or treatments that were not pled. *See* ECF 36 at 40. That is not permitted. *See Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

## POINT VII

## There Is No Contract Between Plaintiff and McCarter to Support His Implied-Covenant Claim (COUNT 11)

Nowhere in Plaintiff's Complaint is there an allegation that Plaintiff was a party to a contract with McCarter. The absence of any such allegation sinks his claim for breach of the implied covenant of good faith and fair dealing. *See* ECF 23-1 at 38–40. Plaintiff does not dispute that, but seems to claim that the Firm's social media policy (which contains no promise of progressive discipline) and its statement that

it was "working on ways" he could seek to become a regular Associate somehow created a contractual obligation. The Complaint contains no such claim of an implied contract and, thus, these unpled theories should be rejected out of hand. *Carpenters*, 837 F.3d at 383; *see also* ECF 23-1 at 39–40 (confirming that when an employee is at-will, there can be no claim for the breach of the covenant of good faith and fair dealing).

## POINT VIII

### Plaintiff's Conspiracy Claims Remain Inadequately Pled (COUNTS 13 and 18)

Finally, Plaintiff opposes dismissal of his conspiracy claims by referring to various "circumstantial evidence" showing McCarter's involvement. *See* ECF 36 at 43–44 ¶¶ 1–10. Of this "evidence," the only piece pled in the Complaint is that Defendant Donovan sent Plaintiff a text message. *See* ECF 2-1 at 166–67 ¶¶ 340–42. McCarter was not mentioned in the text message. *See id*. Obviously, this does nothing to implicate McCarter in any supposed conspiracy. All the other "circumstantial evidence" raised by Plaintiff post-dated the filing of his Complaint and, consequently, was not pled therein and cannot be considered on this Rule 12(b)(6) motion. *See Carpenters Health*, *supra*.

# CONCLUSION

For the reasons stated above, McCarter respectfully submits that Counts 1, 4–11, 13, and 18 of Plaintiff's Complaint be dismissed.

**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, New Jersey 07009
973-239-5700
*Attorneys for Defendant*
*McCarter & English, LLP*

By: /s/ Thomas P. Scrivo
Thomas P. Scrivo
Michael J. Dee
Joseph R. Marsico

Dated: May 11, 2026