**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

WILLIAM BROWN JR.,

Plaintiff,

v.

MCCARTER & ENGLISH LLP, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, KEVIN J. O'TOOLE (in his personal and professional capacities), PATRICK DONOVAN (in his personal and professional capacities), JOHN DOES 1-10 (Fictitious Individuals or Entities Who Have Liability to Plaintiff For Any of the Causes of Action Contained Herein)

Defendants.

Docket No. 2:26-cv-02808

CIVIL ACTION

Motion Date: May 18, 2026

# THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY AND PATRICK DONOVAN'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Megan Lee, Esq.
Cheryl N. Alterman, Esq.
Port Authority Law Department
4 World Trade Center
150 Greenwich Street, 24th Floor
New York, New York 10007
Telephone No.: (212) 435-3435

# TABLE OF CONTENTS

**Cases** **Page Nos.**

PRELIMINARY STATEMENT ....................................................................1

LEGAL ARGUMENT..........................................................................................2

POINT I: Plaintiff's' First Amendment Retaliation Claim Under 42 U.S.C. Section 1983 and The NJCRA Fails....................................2

A. Plaintiff Failed To Sufficiently Plead a Causal Link Between The Text Message and His Protected Speech Against Defendant McCarter..........................................................................6

B. Plaintiff Failed To Allege a *Monell* Theory of Liability Against The Port Authority..........................................................7

C. Donovan is Entitled to Qualified Immunity.....................................8

POINT II: Plaintiff's Claim For Relief Under 42 U.S.C. Section 1983 —Conspiracy to Violate Civil Rights (Count XIII) and Civil Conspiracy Claim (Count XVIII) Fail as a Matter of Law ...............9

POINT III: Plaintiff's Tortious Interference Claims Are Insufficient ...............11

POINT IV: Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails ..........................................................................14

CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page Nos.**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....14

*Bayer Healthcare LLC v. Second Stone Enterprises LLC*,
No. 24-7618 (MAS). 2025 WL 1531237 (D.N.J., May 29, 2025)....12

*Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*,
518 U.S. 668 (1996)....3, 5

*Buckley v. Trenton Saving Fund Soc.*,
111 N.J. 355, 544 A.2d 857 (1988)....15

*Florentino v. City of Newark*,
No. 219CV21055BRMESK, 2021 WL 2177511 (D.N.J. May 28, 2021)....7

*Harvard v. Cesnalis*,
973 F.3d 190 (3d Cir. 2020)....10

*Jackson v. Gordon*,
145 F. App'x 774 (3d Cir. 2005)....11

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
480 F.3d 259 (3d Cir. 2007)....6

*Lighting Lube Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)....13

*Marra v. Philadelphia Hous. Auth.*
497 F.3d 286 (3d Cir. 2007)....5

*McLaughlin v. Watson*,
271 F.3d 566 (3d Cir. 2001)....4

*McTernan v. City of York, PA*,
564 F.3d 636 (3d Cir. 2009)....8

*Monteiro v. City of Elizabeth*,
436 F.3d 397 (3d Cir. 2006)....5

*Mylan Inc. v. SmithKline Beecham Corp.*,
723 F.3d 413 (3d Cir. 2013) ....................................................................13

*Nostrame v. Santiago*,
213 N.J. 109 (2013) ...............................................................................11

*O'Hare Truck Serv., Inc. v. City of Northlake*,
518 U.S. 712 (1996)..............................................................................3, 5

*Parkell v. Danberg*,
833 F.3d 313 (3rd Cir. 2016) ..................................................................8, 9

*Perry v. Sindermann*,
408 U.S. 593 (1972)..............................................................................3, 5

Schleig v. Borough of Nazareth,
695 F. App'x 26 (3d Cir. 2017).............................................................4, 5

*Trent v. Cnty. of Somerset*,
No. 22-2891, 2024 WL 4144403 (3d Cir. Sept. 11, 2024)..................................5

*Trump Taj Mahal Associates v. Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*,
761 F.Supp. 1143 (D.N.J., 1991)........................................................12, 13

*Wood v. Williams*,
568 F. App'x 100 (3d Cir. 2014) ...............................................................9

*Young v. Kann*,
926 F.2d 1396 (3d Cir.1991) ..................................................................10

**Statutes**

42 U.S.C. Section 1983...........................................................2, 8, 9, 10

**Other Authorities**

Restatement (Second) of Torts § 766.....................................................11, 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................7

## PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint filed on February 26, 2026 ("Amended Complaint") claims that the Port Authority of New York and New Jersey and Patrick Donovan ("PA defendants") retaliated and conspired against him to stop him from pursuing his lawsuit against McCarter & English and making public statements regarding his treatment by the firm (Amended Complaint ¶¶ 4, 454, 455, 466, 471, 472). Yet, in plaintiff's opposition to the PA defendants' motion to dismiss, he focuses on unpled and irrelevant allegations focusing primarily on service of process, which plaintiff points out that the PA defendants did not address. *See*, Plaintiff's Opp. Brief, Doc. No. 42, ("Pl. Br."). The PA defendants did not address these allegations because they are not part of the Amended Complaint and they have nothing to do with the factually and legally deficient allegations the PA defendants seek to dismiss.

Since the filing of the Amended Complaint, plaintiff complains about service of process for the individually named defendants. Plaintiff is simply trying to revive the claims in his Amended Complaint by relying upon conspiracy theories for service of process. Plaintiff cannot dispute that the Port Authority informed him that it would accept service of process on behalf of Chairman O'Toole and Donovan, yet inexplicably plaintiff still attempted to serve Donovan at his home address the following day. None of plaintiff's complaints against the Township of Cedar Grove

have any bearing on his claims against the PA defendants and they are not a basis to defeat their motion to dismiss.

Equally curious is plaintiff's failure to produce the one document that could support his claim that the PA Defendants engaged in a "pattern of antagonism"—namely, the alleged agreement between plaintiff and the Navy SEAL Foundation ("the Foundation"). Plaintiff concedes the 2025 swim proceeded despite Donovan's text message to plaintiff. Moreover, the Port Authority had neither the authority nor any reason to interfere with a contract to which it was not a party, and plaintiff offers no meaningful allegation that the Port Authority withdrew its support for the swim because of plaintiff's lawsuit against defendant McCarter.

The Amended Complaint is devoid of allegations indicating that the PA defendants and Donovan were aware of plaintiff's lawsuit against McCarter & English, which is basis of his First Amendment claim; therefore, plaintiff's Amended Complaint should be dismissed.

## LEGAL ARGUMENT

## POINT I

### Plaintiff's' First Amendment Retaliation Claim Under 42 U.S.C. Section 1983 and The NJCRA Fails

The facts asserted against the Port Authority involve an undated text message from Donovan to plaintiff advising him not to make critical statements against Chairman Kevin O'Toole and made no reference to plaintiff's claims against

McCarter & English, which is the protected speech anchoring his First Amendment retaliation claim. (Amended Complaint, ¶ 454). Despite the plethora of emails and documents submitted by plaintiff, there are no documents linking the PA defendants to the protected speech alleged in the complaint.

Plaintiff erroneously claims that the unconstitutional conditions doctrine "defeats qualified immunity" based upon Donovan's text message. (Plf Br., 13-17). Yet, the cases that he relies upon do not discuss qualified immunity as a defense. In *Perry v. Sindermann*, 408 U.S. 593, 593 (1972), the Supreme Court reasoned the lack of a contractual or tenured right to employment did not defeat the professor's claim that the nonrenewal of his contract violated free speech without discussing qualified immunity.

Similarly, in *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996) the Supreme Court held that government officials may not discharge public employees for refusing to support a political party or its candidates without discussing the principle of qualified immunity. Equally unavailing is plaintiff's reliance on *Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 668 (1996), which held that the First Amendment protects independent contractors from the termination or prevention of automatic renewal of at-will government contracts in retaliation for the exercise of freedom of speech. Despite plaintiff's reliance on the Court's holding in *Bd. of Cnty. Commissioners,*

*Wabaunsee Cnty.*, *Kansas*, it did not discuss the standard to defeat the qualified immunity defense.

Brown failed to meet the clearly established standard of a First Amendment retaliation claim. In *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001) the Third Circuit held, "the District Court must go one step further and determine whether the facts alleged by plaintiffs violated a "clearly established right." Plaintiff specifically alleges that he "engaged in protected speech by filing this lawsuit and making public statements regarding his treatment by Defendant McCarter" (Amended Complaint, ¶454). Despite plaintiff's attempt to rely on Donovan's text message to show the PA defendants retaliated against him for engaging in this protected speech, he fails to show any connection between the PA defendants and his claims against McCarter. That is, Brown has failed to allege that Donovan's text message rose to the level of an "unconstitutional condition" for his protected speech against McCarter as he cannot show that the PA defendants knew about his lawsuit or had any interest in its outcome.

Second, plaintiff's argument that non precedential Third Circuit decisions defeat qualified immunity is without merit. In *Schleig v. Borough of Nazareth*, a police officer claimed that a colleague threatened him with termination, physical violence and even death in retaliation for his involvement in a police union. The court held that "[Schleig's] Amended Complaint is sufficient to plead a claim for

retaliation," (App. at 9), and that Troxell's qualified immunity defense failed because "[i]t is clearly established that a public employee has the constitutional right to speak as a citizen on matters of public concern without fear of retaliation." 695 F. App'x 26, 29 (3d Cir. 2017). Plaintiff's reliance on *Schleig* and *Trent v. County of Somerset*, another non-precedential case, is misplaced. In *Trent*, the issue concerned Somerset County's practice of preferentially hiring people from outside the county and state rather than local people, and the authority to terminate employment. *Trent v. Cnty. of Somerset*, No. 22-2891, 2024 WL 4144403, at *3 (3d Cir. Sept. 11, 2024). Donovan neither threatened Brown nor addressed matters of public concern, and, unlike *Schleig*, there is no allegation here that anyone's life was at stake—the central issue underlying that decision.

Likewise, Brown's reliance on *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) does not defeat qualified immunity. In *Marra*, the jury was presented with ample evidence that Marra's termination was not "unusually suggestive" of a retaliatory motive based upon a pattern of conduct, including reassignment of his position and an involuntary demotion. As in the decisions in *Perry, O'Hare Truck Service,* and *Board of County Commissioners*, none of these cases discuss qualified immunity of the individuals.

Similarly, plaintiff's reliance on *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006), is misplaced. In *Monteiro*, the court explained that "though qualified

immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." 436 F.3d 397, 405 (3d Cir. 2006). Here, plaintiff failed to raise disputed facts to defeat qualified immunity.

In his opposition, plaintiff failed to include the complete text exchange between himself and Donovan yet selectively relies on a single message in an attempt to overcome qualified immunity. While there are no dates referenced in the amended complaint, Brown's text messages to Donovan occurred prior to the August 2025 NYC SEAL Swim. (Complaint, ¶341-342).

**A. Plaintiff Failed To Sufficiently Plead a Causal Link Between The Text Message and His Protected Speech Against Defendant McCarter**

Plaintiff erroneously relies on *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) for the proposition that Donovan's text message constituted an "escalating pattern of antagonism". (Plf. Br., 19). In *Lauren W. ex rel. Jean W.*, the court did not address the question of whether appellants engaged in a protected activity or whether the district engaged in the conduct that the appellants ascribe to it (*i.e.* failing to provide tuition reimbursement based upon a refusal to sign a waiver) but rather whether there was a causal relationship between the two. Here, plaintiff failed to present direct evidence or a showing of any involvement or relationship between McCarter and the PA defendants.

Neither the Amended Complaint nor plaintiff's subsequent filings allege facts sufficient to support a retaliation claim based on the theory that, because of Brown's statements against McCarter, the Port Authority withdrew its support for the swim. Plaintiff also has not alleged that the Port Authority has refused to participate in the 2026 event. Plaintiff's reliance on emails from Battery Park City Authority are not only outside the Amended Complaint, but plaintiff has come forth with no evidence linking Battery Park City Authority's decision to not participate in the 2026 event due to construction, to the Port Authority.

**B. Plaintiff Failed To Allege a *Monell* Theory of Liability Against The Port Authority**

Likewise, plaintiff's filings post the Amended Complaint are outside the four corners of the complaint and cannot defeat a motion to dismiss. *See, Florentino v. City of Newark*, No. 219CV21055BRMESK, 2021 WL 2177511, at *3 (D.N.J. May 28, 2021) (as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6)). Plaintiff now asks this Court to infer that he pled a *Monell* claim against the Port Authority showing that its policy or custom caused the alleged constitutional violation. (Plf. Br. 23). Plaintiff's Amended Complaint is devoid of any facts supporting this claim nor can he plausibly allege that Donovan is a decisionmaker with authority to withdraw the Port Authority's resources in support of the Navy Seal Swim. The courts are clear that "[F]ormulaic recitation of the elements of a cause of action will

not do." *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009). The Third Circuit reasoned that in order to defeat a motion to dismiss a complaint simply by paraphrasing § 1983 (*i.e.*, "All of the acts of the Defendants and their agents, as alleged herein, were conducted under color and pretense of the statutes, ordinances, regulations, customs, or usages of the City of York or the Commonwealth of Pennsylvania") will not suffice. *McTernan*, 564 F.3d at 659.

**C. Donovan is Entitled to Qualified Immunity**

Plaintiff's Section 1983 and NJCRA claims against Donovan in his individual capacity should be dismissed as he enjoys qualified immunity in connection with carrying out his duties as a Port Authority employee. Donovan is not liable for exercising discretion in making decisions and carrying out activities as a government employee. Plaintiff's reliance on facts outside the Amended Complaint in an attempt to establish that he "personally coordinated the swim for seven years" (Plf. Br. 24) does not bear any rational connection to plaintiff's discrimination complaint. Plaintiff's reliance on *Parkell v.* Danberg, 833 F.3d 313, 330 (3rd Cir. 2016) is misplaced as this case involved an issue of whether supervisors could be held liable for officers' failure to properly conduct body-cavity searches under the Fourth Amendment. Despite Parkell's lack of relevance to the issues presented here, the decision actually supports the Port Authority's position, as the court found that Parkell's evidence was weak and failed to establish that the supervisors had

knowledge of the searches, and therefore affirmed the district court's order granting summary judgment. *Parkell*, 833 F.3d at 332.

Here, plaintiff admits that he did not speak out publicly against the PA defendants until after the Foundation terminated his alleged agreement. Therefore, plaintiff has failed to sufficiently plead a First Amendment claim for retaliation as a matter of law.

## POINT II

### Plaintiff's Claim For Relief Under 42 U.S.C. Section 1983 —Conspiracy to Violate Civil Rights (Count XIII) and Civil Conspiracy Claim (Count XVIII) Fail as a Matter of Law

The Court should dismiss plaintiff's claim alleging a violation under 42 U.S.C. Section 1983 (Count XIII) and civil conspiracy (Count XVIII) based upon the fact plaintiff's conclusory allegations of an alleged conspiracy fail as they contain no specific factual allegations of "combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014). Plaintiff's opposition is silent as to the alleged "agreement" that is the crux of his conspiracy claim. Plaintiff has submitted voluminous briefs and documents to the Court yet there is no evidence that an agreement actually existed between him and the Foundation. In fact, plaintiff's Amended Complaint does not allege any facts that Donovan knew that an agreement was in place at the time he sent the text message to plaintiff.

Plaintiff concedes in his opposition that in order to sufficiently allege a claim under Section 1983, the conspiracy claim requires "both an underlying constitutional violation and an *actual agreement*". *See, Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (This requires that the state actors took "concerted action" based on an "agreement" to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights"); (Plf. Br. 25). For the reasons stated above, plaintiff has failed to allege an underlying constitutional violation under the First Amendment.

Plaintiff's conclusory allegation of a civil rights conspiracy between the PA defendants and McCarter is devoid of factual detail. Plaintiff fails to allege with the required particularity (i) how the alleged conspirators came to an agreement, (ii) when the agreement was made, (iii) who were the specific parties to the agreement, (iv) how long the agreement was in effect, or even (v) what precisely the agreement's object was. Moreover, plaintiff's reliance on post filing incidents involving service of process and Battery Park City's denial of a permit bears no relation to the allegations in the Amended Complaint. (Plf. Br. 26-27). Nothing is alleged about the claimed conspiracy other than "Defendants reached an understanding to deprive Plaintiff of his constitutional rights through coordinated action." Amended Complaint, ¶ 465. "Civil rights conspiracy claims that are based only on suspicion and speculation instead of fact do not state a claim." *See, Young v. Kann,* 926 F.2d

1396, 1405 (3d Cir. 1991); *Jackson v. Gordon*, 145 F. App'x 774, 778 (3d Cir. 2005). Similarly, plaintiff's suspicion that the "Port Authority's withdrawal from O'Toole's defense is additional evidence supporting the conspiracy claim" is based upon fallacy and conjecture. (Plf. Br. 28)

Accordingly, plaintiff's allegations of conspiracy are too conclusory to state a plausible claim for relief and must be dismissed.

**POINT III**

**Plaintiff's Tortious Interference Claims Are Insufficient**

While plaintiff maintains he had a contractual relationship with the Foundation as documented by payments in 2023, 2024 and 2025, he has yet to come forward with evidentiary support for this claim despite the many emails he attached to his declaration concerning his relationship with the Foundation. *See e.g.*, Brown Dec. Doc. No. 37-1, Ex. A. Instead, he points to an email exchange with the Foundation in which the term "agreement" was used and argues this is proof of the contract's existence. Pl Br. 32. If anything, this email indicates that the purported contract was terminable at will and it was terminated. Therefore, plaintiff's claim must be analyzed in accordance with the principles governing tortious interference with a prospective contractual relationship rather than tortious interference with a contract. *Nostrame v. Santiago*, 213 N.J. 109, 121 (2013) *citing Restatement (Second) of Torts* § 766 and 766B.

In asserting such a claim, a plaintiff must still allege facts to support his claim that the defendant had knowledge of his prospective contracts and benefits. *Bayer Healthcare LLC v. Second Stone Enterprises LLC*, No. 24-7618 (MAS). 2025 WL 1531237, at *10 (D.N.J., May 29, 2025). It is a simple proposition that a person cannot intentionally interfere with a contract that he knows nothing about. In order to subject someone to liability under this tort, the individual must have knowledge of the contract with which he has allegedly interfered. *Trump Taj Mahal Associates v. Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*, 761 F.Supp. 1143, 1164 (D.N.J., 1991) *citing* Restatement of Torts (Second) § 766, comment i (1977).

Plaintiff attempts to skirt this requirement by equating Donovan's knowledge of the Foundation's participation in the event with knowledge of a financial arrangement between plaintiff and the Foundation. (Pl. Br. 30). This is nothing more than speculation without any factual support. Plaintiff seems to be operating under the premise that because of Donovan's "deep involvement" in the event, it was logical for him to assume that the "founder and lead organizer" was compensated. However, that is not what the Amended Complaint says. It simply alleges plaintiff had a contractual relationship with the Foundation and was compensated, but not that Donovan had any knowledge of this relationship. (Amended Comp. ¶¶ 338-339). While the swim event is clearly important to plaintiff, the same cannot be said of Donovan, who is employed by the Port

Authority in a position having nothing to do with a charitable event. His only involvement was to coordinate use of the World Trade Center site and work with other agencies coordinating resources. This does not constitute a "regular interaction with plaintiff's business" as is necessary to infer knowledge of the contract on Donovan's part. As such, plaintiff's reliance on *Lighting Lube Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) is misplaced since the employee who the Court inferred had knowledge of Lighting Lube's contractual relationship was Witco's district manager, who directly solicited plaintiff's customers. Donovan's isolated meetings with stakeholders concerning the event cannot be equated with the actions of a district manager directly involved in soliciting business from a business franchisee. Similarly, *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013) acknowledges that actual knowledge of the contract with which a defendant supposedly interfered is a prerequisite to making out a claim for tortious interference and knowledge may be satisfied if the plaintiff can show defendant's deliberate indifference to the terms of the contract. Here, no such knowledge on Donovan's part may be interfered.

Plaintiff also cannot refute the fact that the Amended Complaint is devoid of specific allegations of malice, such as illegality or fraud, necessary to support the tortious interference with contract claims. *See, Trump Taj Mahal Associates* 761 F.Supp. at 1164 (Dismissing complaint which contained statement of general malice,

instead of allegations specific to the contract.) While plaintiff claims that the text message cited in the complaint constitutes a wrongful act because Donovan was retaliating against him for exercising his constitutional rights, the constitutional right he was allegedly exercising had nothing whatsoever to do with the Port Authority. Accordingly, he has failed to show that the PA defendants maliciously interfered with his contractual relationship with the Foundation.

## POINT IV
## Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails

Plaintiff's opposition fails to allege sufficient facts to establish a claim of intentional infliction of emotional distress because he has failed to plead facts demonstrating that the PA defendants' conduct was (1) intended to cause emotional distress, (2) extreme and outrageous, and (3) caused him severe emotional distress and instead relies on a totality of the circumstances argument. (Plf. Br. 36).

Here, plaintiff's conclusory allegations that "Defendants used governmental power to punish Plaintiff, resulted in plaintiff allegedly being excluded from the swim, and that defendants' action were "coordinated with McCarter's defense counsel" are not supported by sufficient factual allegations (Amended Complaint, ¶490); *see, Iqbal*, 556 U.S. at 678. Plaintiff fails to adequately allege "severe" emotional distress and rather alleges symptoms of generic distress by stating he "sought treatment for the emotional distress caused by Defendant McCarter's discrimination and retaliation…" and suffered "humiliation and reputational harm

because of the Navy-Seal Foundation's withdrawal…" (Amended Complaint, 301, 357). Plaintiff's allegations do not rise to the conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc*., 111 N.J. 355, 366, 544 A.2d 857, 863 (1988).

Accordingly, plaintiff's intentional infliction of emotional distress claim fails and should be dismissed.

**CONCLUSION**

For all the foregoing reasons, the PA defendants respectfully request that the Amended Complaint be dismissed as against them.

Dated: New York, New York
May 15, 2026

Respectfully submitted,

THE PORT AUTHORITY LAW DEPARTMENT
*Attorney for Defendants*
The Port Authority of New York and New Jersey
and Patrick Donovan

By: /s/*Cheryl Alterman*

Cheryl N. Alterman, Esq.
Megan Lee, Esq.
4 World Trade Center, 24th Floor
150 Greenwich Street
New York, New York 10007
Telephone No.: (212) 435-3431
Email: calterman@panynj.gov

To: William Brown Jr., Esq.
*Plaintiff Pro Se*
134 Main Street
South Bound Brook, New Jersey 08880

Michael Dee, Esq.
O'Toole Scrivo, LLC
*Attorneys for Defendant, McCarter & English, LLP*

Thomas R. Calcagni
Walter R. Krzastek
Luke J. O'Brien
Calcagni & Kanefsky LLP
*Attorneys for Defendant Kevin J. O'Toole*

TO: All parties via ECF

## CERTIFICATE OF COMPLIANCE

## PURSUANT TO LOCAL CIVIL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, RULE 7.2(d)

I, **Cheryl Alterman**, an attorney duly admitted to practice law before the United States District Court for the District of New Jersey, hereby certify the total number of words in the foregoing Memorandum of Law in Further Support, exclusive of pages containing the caption, signature block, and certificate of compliance is 3,393, and meets the page limit requirements, which was calculated by the word-processing system used to prepare the document.

Dated: New York, New York
May 15, 2026

Respectfully submitted,

THE PORT AUTHORITY LAW DEPARTMENT
*Attorney for Defendants*
The Port Authority of New York and New Jersey and Patrick Donovan

By: /s/*Cheryl N. Alterman*
Cheryl N. Alterman, Esq.
Megan Lee, Esq.
4 World Trade Center, 24th Floor
150 Greenwich Street
New York, New York 10007
Telephone No.: (212) 435-3431
Email: mlee@panynj.gov

To: William Brown Jr., Esq.
*Plaintiff Pro Se*
134 Main Street
South Bound Brook, New Jersey 08880

Michael Dee, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
Tel: (973) 239-5700
Email: mdee@oslaw.com
*Attorneys for Defendant, McCarter & English, LLP*

Thomas R. Calcagni
Walter R. Krzastek
Luke J. O'Brien
Calcagni & Kanefsky LLP
1085 Raymond Boulevard, 18th Floor
Newark, New Jersey 07102
Tel: (862) 387-1796
Email: tcalcagni@ck-litigation.com
*Attorneys for Defendant Kevin J. O'Toole*