William (SEAL) Brown Jr., Esq.
Plaintiff *pro se*
134 Main Street
South Bound Brook, New Jersey 08880
(862) 415-4880
william.brown@parlatorelawgroup.com
NJ Bar ID: NJ145932015

November 2, 2026

**VIA ECF**

The Honorable Julien Xavier Neals
United States District Judge
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re: *Brown, Jr. v. McCarter & English, LLP, et al.***
**Civil Action No. 2:26-cv-02808 (JXN)(AME) Letter Bringing to the Court's Attention Quotation, Characterization, and Record Discrepancies in the October 30, 2026 Opinion (ECF No. 45)**

Dear Judge Neals:

I am the Plaintiff, and I am representing myself. I am writing about the Court's October 30, 2026 Opinion (ECF No. 45) and Order (ECF No. 46). The Opinion denied my motion to disqualify and granted the three motions to dismiss. In this letter, "Op." means the Opinion, and "Am. Compl." means my Amended Complaint (ECF No. 1-2).

This letter is not a motion. I am not asking the Court to reconsider its decision under Local Civil Rule 7.1(i). I am asking for no relief, so I did not attach a proposed order. I am pointing out places where the Opinion does not match the record or the cases it cites. This letter follows the path defense counsel took before this same Court in *In re CorMedix Inc. Securities Litigation*, No. 2:21-cv-14020 (D.N.J.). There, counsel sent the Court a letter, filed as ECF No. 123, about the Court's June 30, 2025 Opinion (ECF No. 114). Counsel said they did "not seek reconsideration of the Opinion pursuant to Federal Rule of Civil Procedure 59(e)." They said they were writing "so that the Court may consider whether amendment or any other action should be taken." (ECF No. 123 at 1.) I am doing the same thing here. I group the errors that letter reported into three kinds. I found similar errors in this Opinion, and two more kinds:

- **Quotes credited to me or to my Amended Complaint that do not match what I wrote**. In CorMedix, the Opinion "attributes two quotes to Defendants that they are not alleged to have made." (ECF No. 123 at 2.)

- **Statements that my Amended Complaint says nothing about a point when it does**.
- **Cases that ended differently, or said something different, than the Opinion describes**. In CorMedix, counsel reported "three instances in which the outcomes of cases cited in the Opinion were misstated." (Id. at 1.)
- **Quotes credited to a case that does not contain them, or to the wrong court**. In CorMedix, counsel reported "numerous instances in which quotes were mistakenly attributed to decisions that do not contain such quotes." (Id. at 1.)
- **Cases and arguments I raised that the Opinion does not mention**.

McCarter's motion to dismiss did not cover Counts II and III, and the Order does not dismiss them. (Op. at 12; see also id. at 28 (Count II); Order ¶¶ 3–4, ECF No. 46.) So the Opinion does not decide every claim in the case. In plain words, the Court can still change a ruling like that until the whole case is decided. The rule says such a ruling "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 (3d Cir. 2016) ("Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders.").

Here is how my letter and the CorMedix letter match. Both are letters to this Court, not motions. The CorMedix letter was filed on July 22, 2025, after the Court's June 30, 2025 Opinion. Neither asks for reconsideration: CorMedix counsel disclaimed Rule 59(e), and I disclaim Local Civil Rule 7.1(i). Both name specific errors and give page numbers. Both end by offering to discuss the matter further if the Court has questions. (ECF No. 123 at 3 ("available to discuss further should the Court have any questions").) The next day, this Court's text order in that case (ECF No. 126) said: "That Opinion and Order were entered in error." It added: "A subsequent Opinion and Order will follow." I do not say how this Opinion was prepared. I do not predict what the Court will do. I checked only the items listed in the attachment. I leave it to the Court to decide what, if anything, to do.

**First, the Opinion says I did not claim McCarter fired me because I am a veteran.** To support this, it quotes paragraph 291 of my Amended Complaint as saying I was fired in "retaliation for [his] protected complaints about discrimination, unequal pay, and hostile work environment." (Op. at 28.) The Opinion's quote stops there. Paragraph 291 actually says "retaliation for Plaintiff's protected complaints about discrimination, unequal pay, and hostile work environment based on his veteran status." The missing words say my complaints were based on my veteran status. Those words can be read as modifying only "hostile work environment," but paragraph 3 alleges that McCarter fired me in retaliation for my protected communications alleging unlawful discrimination against, and unequal pay for, military veterans.

(Am. Compl. ¶ 3.) The shorter quote helps the Opinion's conclusion about my firing in Count I. (Apps. D-1, E-6.)

**Second, when it denies my motion to disqualify, the Opinion says I hypothesized, without evidence, that O'Toole Scrivo's "optimal strategy" would be to argue that O'Toole acted without McCarter**. It cites page 23 of my moving brief, and its introductory citation covers pages 22–23. (Op. at 15–16.) The phrase "optimal strategy" is not in my brief. The word "optimal" appears once, at printed page 22: "Second, McCarter's optimal defense requires blaming O'Toole." (ECF No. 19-1 at 22.) The next paragraph of my brief does use the words "defense strategy." (Id. at 22.) But the Opinion's quoted phrase is in neither sentence. Printed page 23, the page the Opinion cites, lists my third through ninth reasons. The Opinion's introductory citation (ECF No. 19-1 at 22–23) also covers page 22, but the phrase is not on either page. This is the same kind of error the CorMedix letter reported: a quote credited to a party who is not alleged to have said it. (ECF No. 123 at 2; App. D-2.)

**Third, the Opinion says my December 23, 2023 email was not whistleblowing under CEPA, the New Jersey whistleblower law**. One reason it gives is that "a workplace social media policy is not a law, rule, regulation, or source of public policy." (Op. at 33 ("See Dzwonar, 177 N.J. at 469"); see *Dzwonar v. McDevitt*, 177 N.J. 451 (2003).) But page 469 of *Dzwonar* is about union bylaws**. It holds that union bylaws are not a law, rule, or regulation under CEPA. It says nothing about workplace social-media policies. The same page also finds no clear mandate of public policy in the union board's conduct, but that finding does not concern workplace policies. In my opposition, I based the CEPA claim on USERRA, a federal law. I also argued that McCarter's Social Media Policy was evidence of pretext**. "Pretext" means a cover story, not the real reason. (ECF No. 36 at 24, 26–27.) Paragraphs 283 through 286 of my Amended Complaint say the email complained that I, an Iraq veteran, was treated differently from a colleague. This ruling also affects timing. The Opinion did not treat the four days between my email and my firing as suspicious, because it found the email was not whistleblowing. (Op. at 34; Apps. C-8, E-13.) The CorMedix letter reported the same kind of error: cases cited for things they do not say. (ECF No. 123 at 2.)

**Fourth, the Opinion dismisses the claim against the Port Authority using this rule: a plaintiff cannot proceed "against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm."** (Op. at 46.) The ellipsis hides the words "in fact the jury has concluded that." Those words show that City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), depended on the jury's verdict for the officer, returned under instructions that required a negative finding on both claims. (App. D-3.)

**Fifth, the Opinion warns me about Rule 8, which requires a short and plain complaint**. The Opinion quotes Garrett v. Wexford Health as saying a court "acts within its discretion when it dismisses an excessively prolix and overlong complaint." (Op. at 51.) In Garrett, that sentence continues: "particularly where a plaintiff declines an express invitation to better tailor her pleading." 938 F.3d 69, 93 (3d Cir. 2019). In Garrett, the Third Circuit vacated the Rule 8 dismissal of the claims against the Corrections Defendants and remanded. It held that the claims in the 15-page amended complaint there were sufficiently "short" and "plain," and it affirmed the dismissal of the request for injunctive relief as moot because of the plaintiff's

release (n.12). (App. D-4.) The CorMedix letter also pointed to cases whose real outcomes differed from how the Opinion used them. (ECF No. 123 at 1–2.)

**Sixth, when it dismisses the claims against Donovan, the Opinion says:** "Nor does the Amended Complaint allege Plaintiff's exclusion from the meeting had any connection to his lawsuit." (Op. at 44.) But paragraph 332 says the exclusion was "in retaliation for Plaintiff's filing of this lawsuit against Defendant McCarter." Paragraphs 323 and 333 say Donovan's treatment of me changed only after I sued. The Opinion relied instead on the reasons Donovan gave, which paragraph 327 quotes. Whether my allegations are enough is for the Court to decide. But they are in the Amended Complaint. (App. E-7.)

**On the Donovan claims, the Opinion also calls the time between my lawsuit and Donovan's text a "year-long gap."** It says I identify "exactly one incident." (Op. at 44.) I filed my lawsuit on December 24, 2024. (Am. Compl. ¶ 303.) The Port Authority's own brief says the Court "may take judicial notice" that the 2025 NYC SEAL swim took place on August 16, 2025, while conceding that "there are no dates referenced in the amended complaint." It says the text came before that Swim, and that Donovan "did not initially include" me in a planning meeting "before the 2025 NYC SEAL swim." (ECF No. 24-1 at 7, 4 (printed pages).) The time from December 24, 2024 to August 16, 2025 is less than eight months. So the gap was shorter than a year. The Opinion's own background section also recounts two events in 2025: the call exclusion and Donovan's warning. (Op. at 10; App. E-1.)

**Seventh, I raised an argument that the Opinion does not answer in its CEPA ruling. I argued that McCarter used its Social Media Policy against me but not against others**. I said this showed that the reason McCarter gave for firing me was a pretext. I called it "powerful evidence of pretext." (ECF No. 36 at 24.) I also argued that the CEPA claim turns on whether I could reasonably believe the uneven enforcement was motivated by bias against veterans. (Id. at 26–27.) The Opinion's CEPA ruling (Op. at 28–34) never uses the word "pretext." It does not say whether the Court considered this argument. The Opinion talks about selective enforcement in only one place. That is footnote 17, and it is about my free-speech Pierce claim (Count VI). There, the Opinion says selective enforcement does not decide whether McCarter is a state actor. (Op. at 36 n.17.) Footnote 18 discusses the Policy only for my implied-contract claim. (Op. at 38 n.18; App. F-2.)

**Why these errors matter.** The errors do not cut both ways. Almost all of them go against me. They are bunched in the places where the Opinion decided how much detail my complaint had to include:

(1) **Count I: comparators and promotion**. The Opinion faulted me for not identifying similarly situated non-veteran employees. These are non-veteran coworkers in the same situation as me. It also required me to show that I applied for a promotion or tried to. (Op. at 24–26.) It supports this with *Phillips v. Starbucks* and *Golod v. Bank of America*. *Phillips* was decided on summary judgment, which comes after discovery. Its one statement about pleading comparator evidence quotes *Golod*. In a footnote, *Golod* says the plaintiff there "was not required to plead comparator evidence to support an inference of discrimination." Golod's same footnote begins by explaining that the court focused on the absence of comparator evidence because it appeared

the most obvious way to supplement a deficient complaint, and Golod affirmed the dismissal. (Apps. B-1, C-2, C-3.)

(2) **Count IV: the CEPA standard**. The Opinion measures my whistleblower claim with *Tartaglia v. UBS PaineWebber*, where a higher standard applies to a lawyer's common-law (*Pierce*) wrongful-discharge claim founded on a Rule of Professional Conduct. It cites *Dzwonar* at page 469, which is about union bylaws. It also relies on *Battaglia*, decided after a jury trial, and *Young*, decided on summary judgment. (Apps. C-6, C-7, C-8, C-9.)

(3) **Leeway for people who represent themselves (pro se***)*. The Opinion cites *Allen v. Aytch* as "declining to liberally construe complaint drafted by third-year law student pro se litigant." (Op. at 14.) The Opinion cites *Allen* last in a "see also" string, and it attributes the sentence that this leeway "does not extend to pro se litigants who are attorneys" to a different case, *Wong*. In *Allen*, a lawyer supervised the law student who drafted the amended complaint, and the court's footnote is carefully hedged. The court did not decide the question. It vacated and remanded. (App. C-1.)

(4) Rule 8. The Opinion warns that it could have dismissed my complaint under Rule 8, and it cites Garrett v. Wexford Health. In Garrett, the Third Circuit vacated the Rule 8 dismissal and remanded. (App. D-4.)

The same pattern shows up in what the Opinion says about my Amended Complaint. The Opinion says the Amended Complaint does not allege that Donovan's exclusion of me had any connection to my lawsuit. (Op. at 44.) But paragraph 332 says the exclusion was "in retaliation for Plaintiff's filing of this lawsuit against Defendant McCarter." The Opinion describes O'Toole's role as, "At most," one appearance with Donovan at a ceremony. (Op. at 42.) But paragraphs 346 through 350 allege more, and the Opinion never mentions paragraphs 344, 345, or 348 or the witness named in paragraph 347. The Opinion says the Amended Complaint has no allegation about the physical or psychological effects of the Port Authority defendants' conduct. (Op. at 48–49.) But paragraph 343 says Donovan's threat "was a cause of great concern and emotional distress," and paragraph 356 alleges "severe emotional distress, humiliation, and reputational harm." (Apps. E-7, E-8, E-15, and the other entries in Appendix E.)

* * *

The appendices are attached to this letter as Attachment 1. They list each item with the Opinion's text, the source, and how the item affects the ruling:

- **Appendix A** lists the main rulings in the Opinion and how they affect my claims.
- **Appendix B** lists quotes the Opinion credits to one court that really come from another court.
- **Appendix C** lists places where the Opinion describes a case differently from what the case says or did.
- **Appendix D** lists quotes that do not match their sources.

- **Appendix E** lists statements about my Amended Complaint that its text does not support, and places where the Opinion is inconsistent with itself.
- **Appendix F** lists cases and arguments from my three opposition briefs (ECF Nos. 36, 37, and 38) that the Opinion does not mention.

Each entry gives the Opinion's page whenever it can, as the CorMedix letter did, so the Court can check each item quickly. The CorMedix letter also reported quotes that are not in the pleading the Opinion cites. (ECF No. 123 at 2–3.)

I am available to discuss these matters should the Court have any questions.

Respectfully submitted,

/s/ William Brown
William (SEAL) Brown Jr., Esq.
Plaintiff *pro se*
134 Main Street
South Bound Brook, New Jersey 08880
(862) 415-4880
william.brown@parlatorelawgroup.com
NJ Bar ID: NJ145932015

cc: All counsel of record (via CM/ECF)
Thomas P. Scrivo, Michael J. Dee, and Joseph R. Marsico, O'Toole Scrivo, LLC, counsel for McCarter & English, LLP
Cheryl N. Alterman and Megan Lee, Port Authority Law Department, counsel for the Port Authority and Patrick Donovan
Thomas R. Calcagni, Walter R. Krzastek, and Luke J. O'Brien, Calcagni & Kanefsky LLP, counsel for Kevin J. O'Toole

## ATTACHMENT 1 (APPENDICES A THROUGH F)
## APPENDIX A
## THE OPINION'S RULINGS AND HOW THEY AFFECT MY CLAIMS

**How to read this attachment**: I cite each brief by the page number printed on the brief. "See C-1" means look at entry C-1. "Op." means the Court's Opinion (ECF No. 45). "Am. Compl." means my Amended Complaint (ECF No. 1-2). "ECF No." is the number the court's electronic filing system gives each document. The symbol ¶ means paragraph. A "Count" is one of the claims in my Amended Complaint. A "page cite" is the exact page of a case or filing. Most of the errors in this attachment cut against me. They bunch up where the Opinion set a pleading burden: Count I (comparators and promotion), Count IV (the CEPA standard), pro se leeway, and Rule 8.

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| A-1. Disqualification (ECF No. 19) | The motion is denied. The Opinion addresses nine reasons I gave and says none has merit, including the "optimal strategy" point and the point that no allegation concerns the firm's conduct. (Op. at 15–18.) | ECF No. 19-1 at 22; Am. Compl. ¶¶ 349, 353, 364. | O'Toole Scrivo is still McCarter's lawyer. **Three of the Court's reasons rest on: a quote that is not in my brief** (D-2); a statement about my Amended Complaint that its text does not support (E-9); and an incomplete account of the process-server incident (E-3). Also, the Opinion says I asked to disqualify O'Toole Scrivo (Op. at 18), but its Conclusion says I asked to disqualify McCarter (Op. at 52).<br><br>The result is that the firm O'Toole manages keeps controlling McCarter's defense, and the Court's reasons for allowing that do not rest on what my brief and my Amended Complaint actually say. |
| A-2. Leeway for attorney litigants | The Opinion holds that the greater leeway given to *pro se* litigants does not extend to attorneys. (Op. at 14.) | See C-1 (*Allen*). | The Court did not read my pleading generously. The Opinion cites Allen last in a "see also" string. Allen's footnote is tentative, and it was about an amended complaint a law student drafted under a lawyer's supervision (C-1).<br><br>The result is that my pleading was held to a lawyer's standard, without the leeway given to |

| | | | |
|---|---|---|---|
| | | | people who represent themselves, partly on the strength of a footnote that did not decide the question, even though I am representing myself in this case. |
| A-3. NJLAD (Counts VII–IX) | The counts are dismissed with prejudice. The Opinion holds that the 2026 amendment does not apply retroactively. (Op. at 18–22 & n.13.) | ECF No. 36 at 30–31. | The Opinion says I focus "exclusively" on "the reasonable expectations of the parties." (Op. at 21.)<br><br>My opposition argued mainly that the Legislature meant the 2026 law to reach my case. I relied on In re D.C., 146 N.J. 31, 50–51 (1996), and on Johnson v. Roselle EZ Quick LLC, 226 N.J. 370 (2016). Johnson recognizes retroactive application on express or implied legislative intent, a curative purpose, or the parties' expectations. 226 N.J. at 387–89.<br><br>I also asked, in the alternative, for dismissal without prejudice to replead if legislators submit declarations that they were aware of my case and the legislative history shows formal references to my case. (ECF No. 36 at 30–31.)<br><br>The Opinion never mentions *In re D.C.* or that request, and it dismisses these counts with prejudice. (Op. at 22 & n.13.) The result is that I lost three NJLAD claims, with prejudice, on a description of my argument that covers only part of what I argued. |
| A-4. USERRA discriminatio n (Count I) | The count is dismissed without prejudice on these grounds:<br>• pay: no similarly situated non-veteran | Am. Compl. ¶¶ 67–69, 109–120, 251, 256, 266–267, 291; ECF No. 36 at 18–22. | At the pleading stage, the Opinion wants detail about comparators (non-veteran coworkers in the same situation as me).<br><br>It also wants me to have applied for the promotion or shown interest. It reads my firing claim |

| | | | |
|---|---|---|---|
| | comparator;<br>• promotion: no comparator and no application;<br>• profession al opportunities and the Diversity Retreat: no adverse effect or connection to veteran status shown;<br>• work assignments and termination: not alleged to be because I am a veteran (the assignments are argued as retaliation);<br>• cat's paw theory (raised in my opposition): not pleaded (n.14).<br>(Op. at 22–28.) | | without the words in paragraph 291 about veteran status. Phillips (quoting Golod) and Golod itself each say a plaintiff does not have to plead comparator evidence.<br><br>The result is that my USERRA discrimination claim (Count I) is dismissed for missing comparator and application detail, although two of the cases the Opinion cites say comparator evidence need not be pleaded, and I must now replead it. See B-1, C-2 to C-5, D-1, E-2, E-5, E-6, E-10 to E-12, F-3, and F-4. |
| A-5. CEPA (Count IV) | The count is dismissed without prejudice. The Opinion says the five complaints I raised (9/11 emails, assignments, Rambo post, December 23 email, performance review), taken | *Dzwonar*, 177 N.J. at 462–64, 469; Am. Compl. ¶¶ 283–286; ECF No. 36 at 23–27. | The Opinion uses tests from common-law cases and jury trials on my pleading. Once it set the email aside, the four days between the email and my firing no longer counted.<br><br>The Opinion's main cases are: Tartaglia, where a higher standard applies to a lawyer's Pierce claim founded on a Rule of Professional Conduct; Dzwonar at 469, which is about union bylaws; Battaglia, |

| | | | |
|---|---|---|---|
| | individually or collectively, do not meet CEPA's requirements. (Op. at 31.) It assumes without deciding that I had an objectively reasonable belief and sufficiently expressed it in the performance review, and it finds no causal link. (Op. at 33–34 & n.15; see id. at 28–34.) | | decided after a jury trial; and Young, decided on summary judgment. The Opinion also does not answer my argument that uneven enforcement of the Policy showed pretext.<br><br>The result is that my CEPA claim (Count IV) is dismissed on tests drawn from other kinds of cases, and the Court does not say whether it weighed my pretext argument. See C-6, C-7, C-8, C-9, E-4, E-13, F-2, and F-5. |
| A-6. IIED against McCarter (Count X) | The count is dismissed without prejudice for three reasons: intent is pleaded only in conclusory terms; the conduct is not extreme or outrageous; and the distress is insufficient. (Op. at 38–40.) | Am. Compl. ¶ 300. | The Opinion says the symptoms in paragraph 300 (loss of sleep, weight gain and weight loss, headaches, and indigestion) are "exactly what Plaintiff claims he suffers from" (Op. at 40), but it does not mention paragraph 301, which alleges that I sought therapeutic treatment, including the Equine Immersion Project. Leaving out the treatment allegation lets the Opinion treat my distress as minor symptoms, and Count X is dismissed in part because the distress is called insufficient. See E-15. |
| A-7. First Amendment against O'Toole (Counts XII, XIV) | The Opinion says I do not allege "with any particularity" that O'Toole participated in the retaliation or knew of it, and that "the bare act of urging another party to retaliate" is not First Amendment retaliation. (Op. at | Am. Compl. ¶¶ 346–350; ECF No. 38 at 18–28. | The Opinion says I do not allege personal involvement "with any particularity," but it does not discuss paragraphs 346 through 350.<br><br>Those paragraphs allege that Donovan's threat was made with the knowledge and approval of Port Authority senior leadership, including O'Toole (¶ 346); that Donovan told a named former Port Authority employee he was |

| | | | |
|---|---|---|---|
| | 41–42.) | | receiving directions from senior leadership (¶ 347); and that O'Toole directed, ratified, or approved the threats (¶ 349).<br><br>The Opinion also applies a coercion rule it credits to R.C. Maxwell that is McLaughlin's own wording (C-10), and it does not address my argument that O'Toole, as Chairman, was part of the body that took the adverse action (F-7).<br><br>The result is that Counts XII and XIV are dismissed as to O'Toole as resting on one ceremony, and the specific allegations that point to him are never weighed. See C-10, E-8, and F-7. |
| A-8. First Amendment against Donovan (Counts XII, XIV) | The Opinion says the Amended Complaint does not identify how Donovan was involved in the Foundation's decision. On causation, it relies on a "year-long gap," "exactly one incident," Donovan's stated reasons, and the absence of an awareness allegation. Qualified immunity is not reached. (Op. at 43–45 & n.19.) | Am. Compl. ¶¶ 323, 332, 333, 340–345; ECF No. 37 at 18–21. | The Opinion relies on a "year-long gap," on "exactly one incident," and on the absence of an allegation that Donovan knew of the lawsuit. But paragraphs 332, 333, and 323 tie Donovan's conduct to my lawsuit, the Port Authority's own brief puts the 2025 Swim in August 2025, less than eight months after I sued, and paragraphs 340 through 345 connect Donovan's text to O'Toole's firm, which defends McCarter.<br><br>The Opinion also turns Marra's "may look" into "would need to show" (C-11).<br><br>The result is that Counts XII and XIV are dismissed as to Donovan on a time gap and an incident count that my pleading and the Port Authority's own brief do not support. See C-11, E-1, E-7, E-16, and F-6. |

| | | | |
|---|---|---|---|
| A-9. Tortious interference (Counts XV, XVI) | The counts fail for three reasons: no knowledge of the contract is alleged; the officials who acted are unnamed; and malice is alleged only in conclusory terms. (Op. at 46–48.) | Am. Compl. ¶¶ 321, 351, 476–477. | The Opinion says I do not allege that Donovan or O'Toole knew of my $40,000-per-year Foundation contract. But paragraph 477 alleges: "Defendants knew of Plaintiff's contractual relationship," and paragraph 321 alleges that Donovan has been involved with the SEAL Swim almost since the start of the event seven years ago.<br><br>The Opinion cites only paragraphs 40 and 332 on what Defendants knew. Knowledge is one of the Opinion's three reasons; the other two are the unnamed officials and conclusory malice. The result is that Counts XV and XVI are dismissed in part for lack of an allegation of knowledge that paragraph 477 supplies. See E-14. |
| A-10. IIED against the Port Authority, Donovan, and O'Toole (Count XVII) | The count fails for three reasons: no intent; the conduct is not outrageous; and no physical or psychological effects are alleged. (Op. at 48–49.) | Am. Compl. ¶ 343. | The Opinion says no allegation describes the effects of these defendants' conduct (Op. at 48–49), but paragraph 343 alleges that Donovan's threat "was a cause of great concern and emotional distress for Plaintiff," and paragraph 356 alleges "severe emotional distress, humiliation, and reputational harm."<br><br>The result is that one of the three reasons for dismissing Count XVII rests on a statement about my Amended Complaint that its text does not support. See E-15. |
| A-11. Rule 8 | The Opinion states that "the Court would have been well within its discretion to dismiss for failure to comply with Rule 8(a)." Any | *Garrett*, 938 F.3d at 93. | The Opinion cites Garrett for its Rule 8 warning but quotes only part of Garrett's sentence, and it does not say that Garrett vacated the Rule 8 dismissal of the claims against the Corrections Defendants, remanded, and held that the claims in a 15-page |

| | | | |
|---|---|---|---|
| | amended pleading must be short and plain. (Op. at 50–52.) | | amended complaint were sufficiently "short" and "plain."<br><br>The result is that I am told to shorten my pleading on authority that cuts the other way, while the Opinion also faults me for missing detail in several counts. See D-4. |
| A-12. Leave to amend | I have thirty days to file a second amended complaint. "Should Plaintiff fail to do so, dismissal may be with prejudice." (Op. at 52.) | Neither the Opinion nor the Order (ECF No. 46 ¶ 5) states when the thirty days begin, and the Order refers to "an amended pleading." | I asked for leave to amend any count the Court found insufficient. (ECF No. 36 at 39; ECF No. 38 at 39.)<br><br>The Opinion does not mention those requests, and it does not say whether the thirty days apply to Counts V through IX, which it dismissed with prejudice. Without a start date and without an answer on those counts, I cannot be sure what I must file, or when, to avoid dismissal with prejudice. |

**APPENDIX B**
**QUOTES CREDITED TO ONE COURT THAT REALLY COME FROM ANOTHER**

Often the Opinion adds "(citation omitted)," which tells the reader a source was left out but does not say whose words these are. I note where the Opinion did this.

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| B-1. *Phillips v. Starbucks* / *Darby*, *Mangold* | "To plead discrimination, a plaintiff may allege" followed by a quotation and "(citation omitted)." (Op. at 24.) | *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) (the page the Opinion cites), quotes *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016), and *Mangold v. PECO Energy*, Civ. No. 19-5912, 2021 | The Opinion presents a test as a rule for pleading. But the quoted words come from Darby, a motion-to-dismiss decision, as quoted in Phillips, which decided a summary-judgment motion.<br><br>"(citation omitted)" hides that Phillips is quoting Darby. As a result, Count I is tested against a rule that the quoted cases do not state for the pleading stage. See C-2. |

| | | | |
|---|---|---|---|
| | | WL 6072818, at *13 (E.D. Pa. Dec. 23, 2021). *Phillips* decided a summary judgment motion. | |

**APPENDIX C**
**PLACES WHERE THE OPINION DESCRIBES A CASE DIFFERENTLY FROM WHAT THE CASE SAYS OR DID**

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| C-1. *Allen v. Aytch* | "(declining to liberally construe complaint drafted by third-year law student *pro se* litigant)." (Op. at 14.) | A third-year law student drafted the amended complaint under a lawyer's supervision; Allen drafted the original complaint himself. The footnote says the Haines presumption "may not operate here" and that its rationale "may not apply" to a complaint prepared by someone with substantial legal training, "especially" where a lawyer supervised. The court did not decide the question. It vacated and remanded. *Allen v. Aytch*, 535 F.2d 817, 821 n.21 (3d Cir. 1976). | The Opinion uses a careful, qualified footnote about a complaint written under a lawyer's supervision to deny me leeway.<br><br>The Opinion's short description leaves out the supervising lawyer. The result is that I was denied the leeway given to people who represent themselves on a footnote that decided nothing. |

| | | | |
|---|---|---|---|
| C-2. *Phillips v. Starbucks* (stage) | The Opinion cites the case for pleading discrimination and for the rule that I did not allege a similarly situated non-veteran comparator. (Op. at 24–25.) | *Phillips* decided a summary judgment motion. Its one statement about pleading comparator evidence is a quotation of *Golod*: that a plaintiff is not required to plead comparator evidence. | A test applied after discovery on a full record (summary judgment) is used to measure my pleading.<br><br>The result is that Count I fails for not naming comparators that Phillips itself says need not be pleaded. |
| C-3. *Golod* | "(dismissing discrimination claim where Plaintiff 'did not provide any characteristics of those individuals who received the promotions to which she alleges she was entitled.')." (Op. at 24–25.) | The Third Circuit affirmed a district court dismissal (the Opinion's parenthetical says "dismissing"). Footnote 2 first says the court focused on the absence of comparator evidence because it appeared the most obvious way to supplement the deficient complaint, and then states: "But Golod was not required to plead comparator evidence to support an inference of discrimination." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 & n.2 (3d Cir. 2010) (nonprecedential). | The Opinion relies on a case whose own footnote says a plaintiff does not have to plead comparator evidence, and it uses that case to fault me for not describing comparators.<br><br>The result is that the promotion part of Count I rests partly on a case that says the opposite of what the Opinion needs. |

| | | | |
|---|---|---|---|
| C-4. *Khair* | The Opinion says failing to apply is "generally" fatal. (Op. at 25.) | The Opinion's word "generally" is outside its quotation marks, and Khair does not use it in this passage.<br><br>Khair says that "some courts have held" the failure fatal, but it adds that "many courts have overlooked this failure in certain cases." The Opinion quotes the "many courts" language too.<br>On summary judgment, Khair held that the plaintiff's failure to apply did not defeat his prima facie case, noting that there was no formal application process and that he had spoken to people at Campbell about his dissatisfaction with his career opportunities, and finding his allegations of a scheme more than sufficient for the "not onerous" prima facie burden. *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 331–32 (D.N.J. 1995). | The Opinion's added word "generally" makes a position Khair attributes to "some courts" sound like the general rule. The Opinion then uses it against my promotion claim.<br><br>The result is that my promotion theory in Count I is dismissed because I did not apply, although Khair says many courts overlook a failure to apply in certain cases, including where no formal application process exists. |

| | | | |
|---|---|---|---|
| C-5. *Gabriel* | Plaintiff does not allege "his job, salary, benefits, hours, perks, prestige, opportunities, or the like were tied to" attending the Diversity Retreat. (Op. at 27 (citing Gabriel v. DSM Biomedical, Inc., 187 F.4th 77, 81 (3d Cir. 2026)).) | In *Gabriel*, this was a summary-judgment finding under Title VII: "There is no evidence that his job, salary, benefits, hours, perks, prestige, opportunities, or the like were tied to getting the Factory off the top-ten list." *Gabriel v. DSM Biomedical, Inc.*, No. 25-2630 (3d Cir. Aug. 13, 2026), cited in the Opinion as 187 F.4th 77, 81 (3d Cir. 2026). The opinion is a precedential Third Circuit opinion, and the quoted sentence is in Part II.A. The page 81 pin is the Opinion's. | A finding made on the evidence, after discovery, is turned into a rule for what must be pleaded.<br><br>The result is that the Diversity Retreat exclusion is rejected for lacking facts that Gabriel required only as proof on a summary-judgment record. |
| C-6. *Battaglia* | "Therefore, 'it is critical to identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision.'" (Op. at 29.) | *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 559 (2013) (see also id. at 556, 558 (elements and sufficiency of the evidence)), reviewed a jury verdict after trial. The quoted sentence is Battaglia's own and sits at 559. The passage addresses the | A standard for proof at a jury trial is applied to my CEPA pleading.<br><br>The result is that my complaints are measured against what a plaintiff must prove to a jury, not what a complaint must allege, and Count IV is dismissed on that measure. |

| | | | |
|---|---|---|---|
| | | evidence needed to support a CEPA recovery. The opinion does not address pleading. | |
| C-7. *Tartaglia / Trzaska* | The Opinion uses *Tartaglia* at 109 for the whistleblowing standard and holds that voicing moral objections is not whistleblowing. (Op. at 30–32.) | *Tartaglia*'s heightened requirement applies to an attorney's Pierce claim founded on a Rule of Professional Conduct. The court contrasted CEPA, where it had "declined to require that a plaintiff prove an actual violation of public policy" (Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 112 (2008)). Page 109 of Tartaglia states the common-law Pierce standard, not a CEPA standard, although it says the Pierce remedy, "Like the CEPA remedy to which it gave rise," requires an expression of disagreement; the attorney-specific requirement is at 112. *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 n.4 (3d Cir. 2017), rejected the dissent's proposal to impose that | A test for a different kind of claim (a Pierce claim) is applied to my CEPA claim.<br><br>The result is that the Opinion holds that my moral objections and personal views are not whistleblowing, which sinks the 9/11 and work-assignment complaints in Count IV. |

| | | | |
|---|---|---|---|
| | | standard: "The heightened standard that the dissent would have us impose is inappropriate when considering a motion to dismiss." I did not cite *Trzaska*, but I made this distinction. (ECF No. 36 at 24.) | |
| C-8. *Dzwonar* at 469 | "a workplace social media policy is not a law, rule, regulation, or source of public policy." *See Dzwonar*, 177 N.J. at 469. (Op. at 33.) | Page 469 holds that union bylaws are not a law, rule, or regulation. It does not address workplace policies. | The Opinion uses a page about union bylaws to hold that a workplace social media policy cannot support CEPA protection, without addressing my argument that the policy was enforced unevenly as pretext or that my CEPA claim rests on USERRA.<br><br>That ruling takes my December 23, 2023 email out of CEPA, and with it the four days before my firing. |
| C-9. *Young* | The Opinion relies on *Young* for the CEPA timing standard. (Op. at 31.) | *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 467 (App. Div. 2005) (the page the Opinion cites), is an LAD case that affirmed summary judgment on all counts after discovery. It is not a CEPA decision. | A standard used after discovery is applied at the pleading stage.<br><br>The result is that the timing of my review and my email is held not "unusually suggestive," and Count IV fails on causation without discovery. |
| C-10. *McLaughlin / R.C. Maxwell* | The Opinion quotes the "strongly urging or influencing, but not 'coercing'" language from *McLaughlin* (quoting R.C. | In *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001), the quoted wording appears in McLaughlin's own text at 573. At that sentence, | The Opinion uses this coercion rule against the claims against O'Toole (Op. at 42) and Donovan (Op. at 43).<br><br>The Opinion presents McLaughlin's own words as a quotation of R.C. Maxwell, and it |

| | | | |
|---|---|---|---|
| | Maxwell Co. v. Borough of New Hope, 735 F.2d 85, 88–89 (3d Cir. 1984)). (Op. at 42 (O'Toole); id. at 43 (Donovan).) | McLaughlin cites R.C. Maxwell by plain citation, with no pincite and no "quoting" parenthetical. Later on the same page it cites R.C. Maxwell as "Id. at 88-89" for the coercion point. R.C. Maxwell Co. v. Borough of New Hope, 735 F.2d 85, 88–89 (3d Cir. 1984), found no coercion. I found no use of the words "urging" or "influencing" anywhere in R.C. Maxwell. | uses that rule to hold that the "bare act of urging" it says O'Toole is alleged to have engaged in is not retaliation.<br><br>This is the kind of error the CorMedix letter reported: words credited to a decision that does not contain them.<br><br>The result is that Counts XII and XIV are dismissed as to O'Toole and Donovan partly on a rule credited to the wrong case. |
| C-11. *Kriss / Marra* | To show a pattern of antagonism, Plaintiff "would need to show 'actual antagonistic conduct or animus' in 'the intervening period' between the protected activity and the retaliation." (Op. at 44 (citing, through "Id.," which refers to Kriss, Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)).) | *Kriss v. Fayette Cnty.*, 504 F. App'x 182, 188 (3d Cir. 2012) (nonprecedential). Kriss sets the quoted words in quotation marks and cites Marra only with "See." *Marra*, a post-verdict decision, says that where timing alone is not "unusually suggestive," courts "may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the | Marra says courts "may look" at the in-between period. The Opinion turns that into a requirement, through a case that is not binding precedent, and uses it against my claims about Donovan.<br><br>The result is that a pleading-stage claim is dismissed because I did not "show" antagonism in the in-between period, a requirement Marra does not state, while Conard says there is no bright-line rule on timing. |

| | | | |
|---|---|---|---|
| | | employee." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). Binding precedent holds that "there is no bright line rule for the time that may pass between protected speech and what constitutes actionable retaliation." *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018). | |

**APPENDIX D**
**QUOTES THAT DO NOT MATCH THEIR SOURCES**

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| D-1. Paragraph 291 | The Opinion quotes paragraph 291 as alleging termination in "retaliation for [his] protected complaints about discrimination, unequal pay, and hostile work environment." The period falls inside the quotation marks. (Op. at 28.) | "retaliation for Plaintiff's protected complaints about discrimination, unequal pay, and hostile work environment based on his veteran status." (Am. Compl. ¶ 291.) | The omitted words tie the complaints to veteran status. The shortened quotation supports dismissal of the termination theory in Count I.<br><br>Without those words the Opinion treats my firing as pleaded only as retaliation and not as discrimination based on veteran status, and that is the reason it gives for dismissing the termination part of Count I (Op. at 28). |
| D-2. "Optimal strategy" | The Opinion says I hypothesized that O'Toole Scrivo's "optimal strategy" would be to blame O'Toole alone, citing page 23 of | The phrase "optimal strategy" does not appear in my moving brief (ECF No. 19-1). The only use of "optimal" is: | The next paragraph of the brief also says that "the parties appear aligned because O'Toole's personal interests are driving the defense strategy." (Id. at 22.) |

| | | | |
|---|---|---|---|
| | my moving brief, after an introductory citation to pages 22–23. (Op. at 15–16.) | "Second, McCarter's optimal defense requires blaming O'Toole." (ECF No. 19-1 at 22 (ECF page 27).) Printed page 23, the page the Opinion cites, lists my third through ninth reasons. If the Opinion meant ECF page 23, that is printed page 18. That page says independent counsel might conclude that McCarter's strongest defense is to blame O'Toole, but it does not contain the phrase "optimal strategy." | The Opinion's quoted phrase is not in either sentence. My argument about the client's defense is restated as speculation about counsel's strategy, and then rejected as speculative.<br><br>This is the same kind of error the CorMedix letter reported: a quote credited to a party who is not alleged to have said it. (ECF No. 123 at 2.)<br><br>The result is that one of my nine reasons for disqualification is rejected as speculation on the basis of words that are not in my brief, and the motion is denied. |
| D-3. *Heller* ellipsis | "against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm." (Op. at 46.) | The ellipsis removes "in fact the jury has concluded that." *Heller*, 475 U.S. at 799. | Leaving the words out hides that the holding depended on the jury's verdict for the officer under the instructions given.<br><br>The result is that a rule that came from a verdict is used as a pleading rule, and the claim against the Port Authority is dismissed because the claims against O'Toole and Donovan were. |
| D-4. *Garrett* truncation | A district court "acts within its discretion when it dismisses an excessively prolix and overlong complaint." The quotation ends | The sentence continues: "particularly where a plaintiff declines an express invitation to better tailor her pleading." *Garrett*, | The truncated quote leaves out that Garrett's statement concerned a plaintiff who declined an express invitation to tailor her pleading, and that Garrett vacated the Rule 8 dismissal. |

| | | | |
|---|---|---|---|
| | with a period. (Op. at 51.) | 938 F.3d at 93. *Garrett* vacated the Rule 8 dismissal of the claims against the Corrections Defendants and remanded, and it held that the claims in the 15-page amended complaint there were sufficiently “short” and “plain.” | The result is that the Rule 8 warning sounds stronger than Garrett supports, and it shapes what I must file to avoid dismissal with prejudice. |

**APPENDIX E**
**STATEMENTS ABOUT MY AMENDED COMPLAINT THAT ITS TEXT DOES NOT SUPPORT**

Each entry asks one question: is the allegation in my Amended Complaint or not? Whether it is strong enough is a separate question for the Court.

Entries E-1 through E-5 are listed first. Entries E-6 through E-16 are in the table below them. Entries E-17 through E-21 follow the table and list places where the Opinion is inconsistent with itself.

**E-1. “Year-long gap” and “exactly one incident” (Counts XII, XIV).** The Opinion says the “year-long gap between Plaintiff’s 2024 lawsuit and Donovan’s 2025 text” is not “unusually suggestive.” It also says I identify “exactly one incident: Donovan’s failure to invite Plaintiff to a Swim planning meeting at some point in 2025.” (Op. at 44.) Paragraph 340 dates the text only as “In 2025, following Plaintiff’s filing of the original Complaint.” Paragraph 334 alleges the exclusion “culminated in” the text. The Port Authority’s own brief says “the NYC SEAL swim took place on August 16, 2025,” and that the text came before that Swim. (ECF No. 24-1 at 7 (printed page), which also concedes that “there are no dates referenced in the amended complaint.”) It says the meeting exclusion came before the 2025 Swim too. (Id. at 4 (printed page) (Donovan “did not initially include” me in a planning meeting “before the 2025 NYC SEAL swim”).) I filed the lawsuit on December 24, 2024 (¶ 303). From December 24, 2024 to August 16, 2025 is less than eight months. The Opinion’s own page 10 recounts two events in 2025: the call exclusion and a warning from Donovan. (Op. at 10.) At this early stage, the Opinion uses the gap and the number of incidents against me.

**E-2. Hostility evidence (Count I).** The Opinion lists “an employer’s expressed hostility towards members protected by the statute together with knowledge of the employee’s military activity” as a factor for inferring motive. (Op. at 23.) Its background section recounts that a partner asked me how many people I had killed (Op. at 3, citing ¶ 80), the “war stories” email (Op. at 4, citing

¶ 105), the implication that I was mentally unstable (Op. at 7, citing ¶ 211), and the New York Times article email (Op. at 4, citing ¶¶ 216–18). Its Count I analysis (Op. at 24–28) does not discuss any of them. The only use of "hostile" in those pages is in a quotation of paragraph 291. (Op. at 28.) The Opinion names the factor but does not apply it to the allegations that fit it.

**E-3. The process-server incident (disqualification).** The Opinion says the Port Authority called the Cedar Grove police, "requesting an officer inform the process server that he should serve paperwork to Port Authority headquarters." (Op. at 17 (citing Brown Decl. ¶ 18).) It then says: "Plaintiff does not elaborate and the record is unclear, however, as to the connection between this incident and Plaintiff's disqualification motion." (Id.) Paragraph 18 of my declaration, the same paragraph the Opinion cites, quotes the police report. The report says the Port Authority reported that "a process server was refusing to leave the property." Paragraph 19 says that was false, and it points to the officer's body-camera video. (ECF No. 19-2 ¶¶ 18–19.) My brief said the Port Authority "did not merely report a concern." (ECF No. 19-1 at 5.) The Opinion leaves out the refusal report and my claim that it was false. **How it hurts me**: the Court rejects my sixth reason for disqualification as unconnected to the motion, on an account that omits the police report's "refusing to leave" statement and my showing that it was false.

**E-4. The stated reason for my firing (Count IV).** The Opinion says the nearly two-week gap between my performance review and my firing is "not, by itself, unusually suggestive, particularly where Plaintiff made the LinkedIn post leading to his termination nearly a week after his performance review." (Op. at 34.) Paragraph 288 says McCarter's stated reason was my LinkedIn post. Paragraph 291 says the true reason was retaliation for my complaints. Paragraph 289 says the stated reason was a pretext. The Opinion treats the stated reason as the cause of my firing. It does this at the pleading stage, and it does not address my claim of pretext.

**E-5. The assignments (Count I).** The Opinion says "Plaintiff does not allege McCarter assigned him child sexual abuse cases because he was a veteran." It says I argue the cases were assigned "as retaliation, not because he was a veteran." (Op. at 27.) The Opinion quotes only part of paragraph 243, up to "recently complained publicly about pay inequality for veterans." Paragraph 243 goes on to say the assignment "was retaliatory and discriminatory." The Opinion leaves out the word "discriminatory." **How it hurts me**: the assignments part of Count I is dismissed on the ground that I plead them only as retaliation, although paragraph 243 pleads them as retaliatory and discriminatory.

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| E-6. Termination motive (Count I) | The Opinion says I do not claim McCarter fired me because I am a veteran, quoting paragraph 291 without its last words. (Op. at 28.) | Paragraph 291 ends "based on his veteran status." (Am. Compl. ¶ 291.) | The Opinion treats my firing as pleaded only as retaliation and dismisses the termination part of Count I on that basis (Op. at 28), without the words in paragraph 291 that tie my complaints to my veteran status, and without paragraph 3.<br><br>An allegation that is in the |

| | | | |
|---|---|---|---|
| | | | pleading is treated as missing. See D-1. |
| E-7. Donovan and the lawsuit (Counts XII, XIV) | "Nor does the Amended Complaint allege Plaintiff's exclusion from the meeting had any connection to his lawsuit." The Opinion also treats the interval as year-long. (Op. at 44.) | Paragraph 332 alleges the exclusion was "in retaliation for Plaintiff's filing of this lawsuit against Defendant McCarter." Paragraph 333 alleges that before the lawsuit Donovan "had never excluded Plaintiff from planning calls or attempted to marginalize Plaintiff's role in the NYC SEAL Swim." Paragraph 323 alleges: "It was only after Plaintiff filed suit against Defendant McCarter that Defendant Donovan's attitude towards cooperating with Plaintiff and supporting the swim soured." The suit was filed December 24, 2024 (¶ 303), and the call and the text are dated only to 2025 (¶¶ 324, 340). | The Opinion relies on Donovan's stated reasons (¶ 327) over my allegation that he acted to retaliate. It also assumes a time gap that my Amended Complaint does not set. The result is that the claims against Donovan are dismissed on a finding that my Amended Complaint does not allege what paragraphs 332, 333, and 323 allege. |
| E-8. O'Toole's involvement (Counts XII, XIV) | "At most, Plaintiff claims O'Toole and Donovan once appeared together at a Foundation | Paragraphs 346 through 350 allege more. Paragraph 347 alleges that Donovan told a | The Opinion does not discuss paragraphs 346, 347, 349, or 350.<br><br>It never mentions paragraphs |

| | | | |
|---|---|---|---|
| | Ceremony, which 'support[s] the inference' that O'Toole told Donovan to threaten Plaintiff." The Opinion then calls this "precisely the kind of threadbare conclusion the Court disregards on a motion to dismiss." (Op. at 42.) | named former Port Authority employee "that he was receiving directions from senior Port Authority leadership to withdraw support from the NYC SEAL Swim if Plaintiff participated in the event." Paragraph 349 alleges that O'Toole "directed, ratified, or approved Defendant Donovan's threats to Plaintiff." Paragraphs 346, 347, 349, and 350 are pleaded on information and belief. | 344, 345, or 348. Paragraph 348 alleges the retaliation was "an institutional decision."<br><br>The Opinion never mentions the witness named in paragraph 347.<br><br>The result is that the claims against O'Toole are dismissed as resting on a single ceremony, when the pleading alleges direction, ratification, and a statement to a named witness. |
| E-9. The firm's conduct (disqualificati on) | The Opinion states that I did not sue O'Toole Scrivo, "nor does the Amended Complaint make any allegation about the firm's conduct." (Op. at 16.) | Paragraph 364 alleges conduct "in conspiracy with Defendant McCarter and O'Toole Scrivo, LLC." Paragraph 353 alleges action "acting in coordination with Defendant McCarter and its defense counsel." Paragraph 349 alleges O'Toole acted "in his dual capacity as Port Authority Chairman and Managing Partner | The Opinion rejects my fifth reason for disqualification by saying the Amended Complaint makes no allegation about the firm's conduct, but paragraphs 364, 353, and 349 do refer to the firm.<br><br>The denial of my motion to disqualify O'Toole Scrivo therefore rests in part on a statement about my pleading that its text does not support, and O'Toole Scrivo remains McCarter's counsel. |

| | | | |
|---|---|---|---|
| | | of O'Toole Scrivo." | |
| E-10. Non-veteran pay comparator (Count I) | The Opinion states that I do not allege I made less than a similarly situated non-veteran Regular Associate. (Op. at 25.) At page 33 the Opinion itself quotes my allegation that I said "it was a disgrace that he was one of the few veterans at [McCarter] and that after six years of performing fully and competently in his position, [he] still received substantially less compensation than a non-veteran first-year Associate." | Paragraph 67 pleads salary figures.<br><br>Paragraph 69 alleges that McCarter "promoted multiple non-veteran Staff Attorney's to regular Associate and Special Counsel positions and hired Associates after Plaintiff with less experience and lower performance evaluation scores."<br><br>The pay analysis cites only paragraphs 65 and 66. (Op. at 24–25.) | A non-veteran comparison is pleaded and quoted elsewhere in the Opinion.<br><br>Paragraph 3 alleges pay "substantially less than similarly situated non-veteran employees."<br><br>Paragraph 68 alleges non-veterans were hired "in positions like Plaintiff's Career Associate or Staff Attorney role," and the Opinion quotes that language itself, with "Associates" in the plural and a combined cite to paragraphs 68–69. (Op. at 2–3.)<br><br>Yet the Opinion says I do not identify "whether Staff Attorney is a similar position to Career Staff Associate." (Op. at 25.)<br><br>The result is that the pay and promotion parts of Count I are dismissed for a missing non-veteran comparison that the Opinion itself quotes. |
| E-11. Promotion and veteran status (Count I) | The Opinion finds I did not adequately allege that "McCarter did not promote Plaintiff to Regular Associate because he was a veteran," a clause in a longer sentence. (Op. at 26.) | Paragraph 266 alleges that McCarter had no intention of providing a pathway "because Defendant was discriminating against Plaintiff based on his veteran status and his outspoken advocacy for veterans' rights." Paragraph 251 | The Opinion dismisses my promotion theory as not alleging that McCarter refused to promote me because I am a veteran, but paragraphs 266, 251, and 267 allege that status-based motive and describe two equity partners who told me I would not be promoted.<br><br>The status allegations are in the pleading, yet the promotion part of Count I is dismissed as if they were not. |

| | | | |
|---|---|---|---|
| | | compares my compensation to "other non-veteran attorneys performing substantially similar work." Paragraph 267 alleges two equity partners who gave me excellent evaluations privately advised me that it might be better if I left the firm because they did not believe McCarter would ever make me a regular Associate. | |
| E-12. Diversity Retreat (Count I) | "Plaintiff does not explain what the Diversity Retreat is, how many people attended, how they were selected, and whether Plaintiff asked to attend." (Op. at 27.) | Paragraph 109 alleges the DEI Committee "organized and hosted an annual Diversity Retreat for diverse attorneys and summer interns." Paragraph 110 alleges exclusion for all six years. Paragraph 119 reproduces the firm's post "together with Plaintiff's comment requesting inclusion of veteran attorneys." | The Opinion faults me for not explaining what the retreat is, how many attended, how they were selected, and whether I asked to attend. But paragraphs 109, 110, and 119 describe the retreat, my exclusion for all six years, and my comment asking for the inclusion of veteran attorneys.<br><br>The Diversity Retreat theory in Count I is dismissed for missing detail that the pleading partly supplies. |
| E-13. December 23, 2023 email (Count IV) | "Plaintiff does not identify what those concerns were," the first half of a longer | Paragraphs 283 and 284 allege that the email identified my veteran status, | My complaint that I was treated differently because of my veteran status is called a minor policy dispute. That label removes the four days from the |

| | | | |
|---|---|---|---|
| | sentence. The Opinion calls the post dispute "A complaint about a minor matter, like removing a social media post" (Op. at 33.) | complained of discrimination, and identified a colleague who was not asked to remove a comparable post.<br><br>Paragraph 285 quotes the email: "The message I received from this experience is that McCarter & English believes the son-in-law of a Federal District Judge has greater first amendment rights than an Iraq Veteran Navy SEAL." Paragraph 286 alleges the email "was a protected communication under CEPA made to upper-level supervisory personnel of Defendant McCarter." | timing analysis.<br><br>The Opinion does acknowledge the "discriminated against" allegation in paragraph 283. It also reports that the email expressed concerns about being assigned a disproportionate volume of child sexual abuse defense cases. (Op. at 33 (citing Am. Compl. ¶ 282).)<br><br>The result is that the email is taken out of CEPA, and with it the four-day timing, so Count IV is dismissed. |
| E-14. Knowledge of the Foundation contract (Counts XV, XVI) | "Plaintiff does not allege Donovan or O'Toole knew Plaintiff had a $40,000 per year contract or an expectation of receiving more contracts with the Foundation." (Op. at 47.) | Paragraph 476 identifies the contract.<br><br>Paragraph 477 alleges: "Defendants knew of Plaintiff's contractual relationship."<br><br>Paragraph 321 alleges that Donovan has been | The Opinion acknowledges that I claim Defendants knew I organized the Swim. (Op. at 47 (citing Am. Compl. ¶¶ 40, 332).)<br><br>Paragraph 477 alleges that Defendants knew of the contract. O'Toole's own brief discusses paragraph 477 as an allegation of knowledge. (ECF No. 25-1 at 21 (internal page; ECF page 28).) |

| | | | |
|---|---|---|---|
| | | involved with the SEAL Swim almost since the start of the event seven years ago. | The Opinion cites only paragraphs 40 and 332 on what Defendants knew. (Op. at 47.)<br><br>The result is that Counts XV and XVI are dismissed in part for lack of an allegation of knowledge that paragraph 477 supplies, although the Opinion's other two reasons are separate. |
| E-15. Distress from the Port Authority defendants' conduct (Count XVII) | The Opinion states that "the Amended Complaint includes no allegation about the physical or psychological effects of" those defendants' conduct. (Op. at 48–49.) | Paragraph 343 alleges that Donovan's threat "was a cause of great concern and emotional distress for Plaintiff" | The statement is incomplete.<br><br>Paragraph 343 alleges that the threat "was a cause of great concern and emotional distress," and paragraph 356 alleges "severe emotional distress, humiliation, and reputational harm." O'Toole's own brief treats paragraphs 356 and 357 as emotional-distress allegations. (ECF No. 25-1 at 28–29 (internal pages; ECF pages 35–36).)<br><br>For Count X, the Opinion says the symptoms in paragraph 300 are "exactly what Plaintiff claims he suffers from" (Op. at 40) but never mentions paragraph 301, which alleges therapeutic treatment, including the Equine Immersion Project.<br><br>The result is that Counts X and XVII are each dismissed in part on a statement that my Amended Complaint does not allege distress, when it does. |
| E-16. Donovan's awareness of the lawsuit (Counts XII, XIV) | "Indeed, the Amended Complaint does not allege Donovan was even aware of the lawsuit before | The pleading includes facts from which awareness may be inferred:<br>• Paragraph 340 dates the | Paragraph 340 says the text targeted statements critical of O'Toole "or O'Toole Scrivo, LLC."<br><br>Paragraph 344 says O'Toole's name was invoked "within the |

| | | | |
|---|---|---|---|
| | Plaintiff added him to it." (Op. at 45.) | text "following Plaintiff's filing of the original Complaint."<br>• Paragraph 341 quotes Donovan's demand that I do nothing negative toward O'Toole "or his firm," the firm defending McCarter.<br>• Paragraphs 323, 333, 344, and 345 tie the change in Donovan's conduct to the lawsuit.<br>My opposition argued the inference. (ECF No. 37 at 21.) | context of retaliatory threats premised on Plaintiff's action against Defendant McCarter."<br><br>Paragraph 345 says this "creates a causal nexus" to the lawsuit.<br><br>The Opinion never cites paragraphs 344 or 345.<br><br>The result is that the claims against Donovan are dismissed in part on a finding that awareness of the lawsuit is not alleged, although the pleading ties Donovan's demand to O'Toole's firm, the firm defending McCarter. |

**E-17. Which party I asked to disqualify (disqualification).** The Opinion says I "moved to disqualify O'Toole Scrivo from representing McCarter" (Op. at 11), and it denies "Plaintiff's motion to disqualify O'Toole Scrivo (ECF No. 19)" (Op. at 18). Its Conclusion says instead: "Plaintiff's motion to disqualify McCarter (ECF No. 19) is DENIED." (Op. at 52.) The Order describes the motion as one to disqualify O'Toole Scrivo, LLC as counsel for McCarter. (Order at 1, ECF No. 46.) The Opinion does not reconcile the Conclusion with the rest of the Opinion. **How it hurts me**: if the Conclusion controls, the Opinion denies a motion I did not make, and if the body controls, the Conclusion is wrong, so the record of what was denied is unclear on its face while O'Toole Scrivo remains McCarter's counsel.

**E-18. Donovan's message (Counts XII, XIV).** The Opinion cites paragraph 342 for Donovan's warning to me (Op. at 10), but paragraph 342 only introduces the screenshot. The words are in paragraph 341, which the Opinion cites at page 41. (Op. at 41; Am. Compl. ¶¶ 341–342.) Page 10 says Donovan "warned" me; page 44 calls it "Donovan's 2025 text." (Op. at 10, 44.) Page 10 also prints the quoted message as "send, or do," with a comma, while page 41 prints "send or do," which is how paragraph 341 reads. (Op. at 10, 41; Am. Compl. ¶ 341.) **How it hurts me**: the Opinion's two accounts of the same message carry different paragraph numbers and different punctuation, which makes it harder for anyone to check the message on which Counts XII and

XIV rest, and the Opinion dismisses those counts partly on the timing of that message (Op. at 44).

**E-19. Dates of my employment (Counts VII–IX).** The Opinion says I worked at McCarter "from 2017 to 2024" (Op. at 2), but also "from 2017 to 2023" (Op. at 19), and it says McCarter terminated me on December 27, 2023 (Op. at 9). My Amended Complaint places my employment between March 2017 and December 27, 2023. (Am. Compl. ¶ 2.) The retroactivity ruling depends on when I worked at McCarter. (Op. at 19–22.) **How it hurts me**: the NJLAD counts are dismissed with prejudice on the ground that the law did not protect veterans when I worked at McCarter, so the dates of my employment decide those claims, and the Opinion gives two different end dates.

**E-20. Time between my performance review and my LinkedIn post (Count IV).** The Opinion says I made the LinkedIn post "nearly a week after his performance review." (Op. at 34.) The Opinion dates the review to December 14, 2023 and the post to December 22, 2023. (Op. at 8–9, 34.) That is eight days. The Opinion uses the shorter gap in its causation analysis. **How it hurts me**: the shorter gap makes the post look closer to my performance review, which helps the Opinion treat McCarter's stated reason as the cause of my firing instead of my complaint (Count IV).

**E-21. Exclusion from the DEI Committee or from the Diversity Retreat (Count I).** The Opinion says I alleged that McCarter excluded me from its Diversity, Equity and Inclusion Committee, and it cites paragraphs 109–10. (Op. at 4.) Paragraph 109 alleges that the DEI Committee "organized and hosted an annual Diversity Retreat," and paragraph 110 alleges that McCarter "excluded Plaintiff from the annual Diversity Retreat for all six years of his employment." Those two paragraphs allege exclusion from the retreat. The Opinion next says I was excluded from "annual Diversity Retreats" and cites paragraphs 117–20. (Id.) Later, it describes the allegation as exclusion from the Diversity Retreat and cites paragraph 109 alone. (Op. at 26.) **How it hurts me**: the Count I ruling on the Diversity Retreat says I do not explain what the retreat is, yet the Opinion describes my allegation inconsistently, first as exclusion from the DEI Committee and from retreats and later as exclusion from the retreat alone, so the claim it tests is not the claim I pleaded.

## APPENDIX F
## CASES AND ARGUMENTS I RAISED THAT THE OPINION DOES NOT MENTION

"Not mentioned" means I searched the text of the Opinion (ECF No. 45) for each name or phrase and did not find it. I cite each brief by the page number printed on the brief. To find the same page in the court's electronic file, add 5 for ECF Nos. 19-1 and 36, add 6 for ECF Nos. 24-1 and 37, and add 7 for ECF Nos. 25-1 and 38. I mark cases that are not binding precedent as "nonprecedential."

Entries F-1 and F-2 are listed first. Entries F-3 through F-7 are in the table below them.

**F-1. ECF Nos. 36 and 38: IIED authorities (Taylor and Hill).** The Opinion cites *Taylor v. Metzger*, 152 N.J. 490, 509, 515 (1998), only for the definitions of extreme conduct and severe distress. (Op. at 39.) It does not mention *Taylor*'s holding, at 511–13, that a jury could find a

sheriff's single racial slur to a subordinate extreme and outrageous. It does not mention *Hill v. N.J. Dep't of Corr.*, 342 N.J. Super. 273, 297–98 (App. Div. 2001), which held that a jury could find a four-person conspiracy to file false charges, intended to cost the plaintiff his livelihood, sufficiently outrageous. My briefs relied on both. (ECF No. 36 at 31–32; ECF No. 38 at 35–36.) The Opinion says I did not identify conduct "so outrageous in character, and so extreme in degree" as the law requires. (Op. at 39.) **How it hurts me:** Counts X and XVII are dismissed as not outrageous without mention of the two cases my briefs relied on to show that a single abuse of power by an official, or a coordinated effort to destroy a livelihood, can be outrageous.

F-2. ECF No. 36: selective enforcement and pretext (Count IV, CEPA). The Opinion's CEPA analysis (Op. at 28–34) does not use the words pretext, selective, or enforcement. My opposition argued that McCarter enforced its Social Media Policy against me but not against others. A "pretext" is a cover story, not the real reason. Under the heading "McCarter's Selective Enforcement Confirms Retaliatory Intent," my opposition called that selective enforcement "powerful evidence of pretext." (ECF No. 36 at 24.) It also said the CEPA claim "is based on whether Plaintiff could reasonably believe the selective enforcement was motivated by veteran animus." (Id. at 26–27.) The facts are in my brief and my Amended Complaint. A partner told me to remove my December 2022 Third Circuit post. On the same day, no one asked a different partner to remove a post showing the same courtroom. (ECF No. 36 at 11; Am. Compl. ¶¶ 173–184.) The Opinion recounts the post and the request to remove it, and it recounts my allegation that McCarter applied its policy inconsistently. (Op. at 6–7 (citing Am. Compl. ¶ 182).) But in the CEPA ruling, it calls a complaint about removing a post a minor matter and says a workplace social media policy is not a source of public policy. (Op. at 33.) It then says the four days between my email and my firing are not suggestive because the email was not whistleblowing. (Op. at 34.) It does not say whether it considered pretext. Paragraph 288 says what reason McCarter gave for firing me, and paragraph 289 says that reason was a pretext. The Opinion mentions selective enforcement only in footnote 17, and only for my free-speech *Pierce* claim (Count VI), where it says selective enforcement has no bearing on whether McCarter is a state actor. (Op. at 36 n.17.) It discusses the Policy in footnote 18 only for the implied-contract claim. (Op. at 38 n.18.) Footnote 18 cites my opposition at pages 35 and 36. It does not cite pages 24 or 26–27. (Id.) I list it because the CEPA ruling does not say whether the Court considered it. **How it hurts** me: my pretext argument, which goes to why McCarter really fired me, is left unanswered while Count IV is dismissed.

| Item | Opinion text and page | Source or record | How it hurts me |
|---|---|---|---|
| F-3. ECF No. 36: pleading standard | Not mentioned. The comparator and application analysis appears at Op. 24–26. | *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (ECF No. 36 at 18) (quoted through Connelly). *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789, 791 (3d Cir. 2016) | The Opinion does not address binding authority that says a plaintiff does not have to plead a full "prima facie case" (the basic showing needed to win at trial), yet it requires comparator detail.<br><br>It also does not mention Carroll, the Third Circuit decision my brief cited on whether a plaintiff |

| | | | |
|---|---|---|---|
| | | (ECF No. 36 at 18, 19, 21), which reiterates that the prima facie case is "an evidentiary standard, not a pleading requirement" (quoting *Swierkiewicz*). My brief also cited Carroll v. Del. River Port Auth., 843 F.3d 129, 130, 132 (3d Cir. 2016) (ECF No. 36 at 19), a Third Circuit decision holding that a USERRA failure-to-promote plaintiff need not plead or prove that he was objectively qualified for the position, although an employer may still raise lack of qualifications as a nondiscriminatory justification. | must plead qualification for a promotion. The result is that Count I is tested against a standard stricter than the binding cases I cited. |
| F-4. ECF No. 36: comparability as a question of fact | Not mentioned. The Opinion does not mention *Scanlan* or the July 11, 2025 opinion quoted in my brief. The name "Sanders" does not appear in the Opinion. | *Scanlan v. American Airlines Group, Inc.*, 102 F.4th 164, 170 (3d Cir. 2024) (ECF No. 36 at 18–19), a summary-judgment decision that concerned the comparability of types of leave. My brief also quoted a July 11, 2025 opinion by Judge Sanders: "Whether | A Superior Court judge already held, on the question whether associates and career staff attorneys can be compared, that it must be left to discovery and further motion practice.<br><br>The Opinion dismisses my pay comparison without mentioning that ruling, or that the same court allowed the USERRA unequal-pay theory to go forward under CEPA and Pierce (Super. Ct. Op. at 24, 28). |

| | | | |
|---|---|---|---|
| | | there is a distinction without a difference as between associates and career staff attorneys must, at this juncture, be subject to discovery and, likely, further motion practice." (ECF No. 36 at 19 (quoting July 11, 2025 Opinion at 24).) Paragraph 398 of my Amended Complaint identifies the judge as Hon. Joshua D. Sanders, J.S.C., and says he denied McCarter's motion to dismiss my CEPA claim on July 11, 2025. Paragraph 407 says that "this Court" denied McCarter's motion to dismiss my Pierce claim on the same date. (Am. Compl. ¶¶ 398, 407.) The Superior Court order, dated July 11, 2025, granted McCarter's motion to dismiss in part and denied it in part, "consistent with the attached opinion." *Brown v. McCarter & English LLP*, No. | |

| | | | |
|---|---|---|---|
| | | ESX-L-8932-24 (N.J. Super. Ct. Law Div., Essex Cnty. July 11, 2025) (Sanders, J.S.C.) (Super. Ct. Order at 1; the attached opinion bears the legend "Decided: July 9, 2025"). The opinion dismissed several theories without prejudice, but it denied dismissal of the CEPA and Pierce claims as to a violation of USERRA regarding unequal pay. (Super. Ct. Op. at 5, 24, 28.) The sentence my brief quotes is on page 24 of that document, which numbers its pages continuously through the order (pages 1–2) and the opinion (pages 3–32). The court denied the motion "under this theory of liability" in the next sentence. (Id. at 24.) The federal Opinion says only that "The Superior Court judge dismissed most of the Complaint without prejudice" (Op. at 9), and it never mentions the | |

| | | | |
|---|---|---|---|
| | | CEPA or Pierce rulings or that the Superior Court denied dismissal of the USERRA unequal-pay theory. The Opinion cites the Superior Court opinion as ECF No. 2-1 (Op. at 9), and my Amended Complaint was filed in Superior Court Docket No. ESX-L-8932-24. | |
| F-5. ECF No. 36: causation timing | Not mentioned. The CEPA causation analysis appears at Op. 33–34. | *Conard*, 902 F.3d at 183–84 (ECF No. 36 at 24, 26). *Conard* reversed a causation dismissal as premature and observed that the timing cases largely involved summary judgment proceedings. | Conard reversed a dismissal for lack of causation as premature at the motion-to-dismiss stage. The Opinion dismisses Count IV on timing without mentioning it, so I lose that claim on a timing rule that binding authority treats as premature to apply this early. |
| F-6. ECF No. 37: timing and pattern of antagonism | Not mentioned. The Opinion relies on *Kriss*, *Scrip*, and *Roseberry* (Op. at 44). | *Conard*, 902 F.3d at 184 (ECF No. 37 at 5); id. at 183–84 (ECF No. 37 at 18). *Eric Trent v. County of Somerset*, No. 22-2891, slip op. at 9–10, 14 (3d Cir. Sept. 11, 2024) (nonprecedential) (ECF No. 37 at 16, 18, 29). | The Opinion dismisses my claims against Donovan on a "year-long gap" and a single incident without mentioning Conard, which says there is no bright-line rule on timing and that a pattern of antagonism can show causation (ECF No. 37 at 18).<br><br>The result is that Counts XII and XIV are dismissed as to Donovan on a timing finding that binding authority I cited says has no bright line. See C-11. |

| | | | |
|---|---|---|---|
| F-7. ECF No. 38: O'Toole as part of the decision-making body | Not mentioned. The Opinion applies *McLaughlin* (Op. at 42). | Trent, No. 22-2891, slip op. at 14 (3d Cir. Sept. 11, 2024) (ECF No. 38 at 21, 22), a nonprecedential decision that distinguished McLaughlin and Zaloga where the defendant was part of the decision-making body. | My brief argued that O'Toole, as Chairman, was part of the body that withdrew support. It cited a Third Circuit decision that treats such a defendant differently from the defendants in McLaughlin and Zaloga. (ECF No. 38 at 21–22.) The Opinion does not mention that decision.<br><br>The result is that the claims against O'Toole are dismissed on the McLaughlin coercion rule without considering whether, as Chairman of the agency that withdrew support, he was part of the decision-making body. |